JDN

1
2
3
4
5
6

**IN THE UNITED STATES DISTRICT COURT**

7

**FOR THE DISTRICT OF ARIZONA**

8

9   Frances Salazar,                                      No.  CV 19-01188-PHX-SRB (ESW)

10                          Plaintiffs,

11   v.                                                   **ORDER**

12   City of Phoenix, et al.,

13                          Defendants.

14

15          Plaintiff Frances Salazar brought this civil rights action under 42 U.S.C. § 1983,

16   though counsel, against the City of Phoenix, Chief of Police Jeri Williams, former Chief

17   of Police Joe Yahner, and police officer Anthony Armour ("City Defendants"), and against

18   Maricopa County, former Maricopa County Attorney Bill Montgomery, Maricopa County

19   Attorney Allister Adel, and Deputy County Attorney Elizabeth Lake ("County

20   Defendants").  (Doc. 37.)  Before the Court is County Defendants' Motion to Dismiss,

21   which seeks dismissal of the claims against Lake and Adel in Counts One and Three of

22   Salazar's Second Amended Complaint and seeks to strike two paragraphs from the

23   amended pleading.  (Doc. 39.)  The Court will grant in part and deny in part County

24   Defendants' Motion and will dismiss Montgomery as a Defendant.

25   **I.      Background**

26          After Salazar was in prison for almost two years, she was exonerated and released

27   when *Brady* impeachment material untimely disclosed by Defendants cast doubt on

28   statements made by the officer who arrested her, Defendant Armour, whose testimony and

credibility were critical to Salazar's conviction.  (Doc. 37 ¶¶ 18–19.)  Defendants disclosed the *Brady* material in a Superior Court filing 190 days after Salazar's conviction but did not provide it to Salazar and her counsel until 295 days after the Superior Court filing.  (*Id.* ¶¶ 20, 108–112.)

In her Second Amended Complaint, Salazar sets forth two counts stemming from the failure to timely disclose *Brady* material: (1) Fourteenth Amendment due process claims against Lake and Armour (Count One); and (2) a *Monell* claim for failure-to-train/failure-to-supervise against City of Phoenix, Williams, Yahner, Maricopa County, and Adel (Count Three).  (*Id.* ¶¶ 129–135, 142–157.)[1]

County Defendants move under Federal Rule of Civil Procedure 12(b)(6) to dismiss the claims against them in Counts One and Three on the grounds that (1) the individual capacity claim against Lake is barred by absolute prosecutorial immunity because her conduct prior to trial was an exercise of prosecutorial function, and (2) Salazar fails to state a *Monell* claim for failure to train or supervise because two instances of *Brady* violations 20 years apart do not constitute actual or constructive notice of deficiencies in training or supervision.  (Doc. 39.)  County Defendants also move under Rule 12(f) to strike two allegations in the amended pleading as immaterial and scandalous.  (*Id.* at 2–3.)

## II.     Federal Rule of Civil Procedure 12(b)(6)

Dismissal of a complaint, or any claim within it, for failure to state a claim under Rule 12(b)(6) may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'"  *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990)).  In determining whether a complaint states a claim under this standard, the allegations in the complaint are taken as true and the pleadings are construed in the light most favorable to the nonmovant.  *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007).  A pleading must

---

[1] There is no Count Two.  (Doc. 37.)

1    contain "a short and plain statement of the claim showing that the pleader is entitled to

2    relief." Fed. R. Civ. P. 8(a)(2).  But "[s]pecific facts are not necessary; the statement need

3    only give the defendant fair notice of what . . . the claim is and the grounds upon which it

4    rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation omitted).  To survive

5    a motion to dismiss, a complaint must state a claim that is "plausible on its face." *Ashcroft*

6    *v. Iqbal*, 556 U.S. 662, 678 (2009); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

7    (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows

8    the court to draw the reasonable inference that the defendant is liable for the misconduct

9    alleged." *Iqbal*, 556 U.S. at 678.

10          A motion to dismiss is based on the pleadings, and if a court considers evidence

11   ouside the pleadings, it must normally convert the Rule 12(b)(6) motion into a Rule 56

12   motion for summary judgment.  *See* Fed. R. Civ. P. 12(b); *United States v. Richie*, 342 F.3d

13   903, 907–08 (9th Cir. 2003).  "A court may, however, consider certain materials—

14   documents attached to the complaint, documents incorporated by reference in the

15   complaint, or matters of judicial notice—without converting the motion to dismiss into a

16   motion for summary judgment." *Id.* at 908.

17   **III.    Second Amended Complaint**

18          Salazar alleges the following facts:

19          On December 31, 2013, around 4:00 a.m., Defendant Armour was driving a marked

20   patrol car in Phoenix with one other officer when he saw a gold vehicle pass by him in the

21   opposite direction, and Armour claimed that he stuck his head out the window as the

22   vehicle passed and saw that it did not have a permanent license plate.  (Doc. 37 ¶¶ 24–26.)

23   Armour began following the vehicle, and he claimed to see that the expiration date on the

24   vehicle's registration had been altered with a black marker and that the temporary plate

25   was expired.  (*Id.* ¶¶ 28–29.)  Armour stopped the vehicle, which was driven by Rodney

26   McCullough, and Salazar was a passenger in the front seat.  (*Id.* ¶¶ 30–31.)  Armour

27   informed McCullough that he stopped the vehicle for a broken taillight.  (*Id.* ¶ 32.)

28   McCullough told Armour that he did not own the vehicle and that it was owned by Antonio

Harris. (*Id.* ¶ 35.) Armour conducted a records check on McCullough and discovered that his driver's license had been suspended, so Armour arrested McCullough and placed him in the back of his patrol car. (*Id.* ¶¶ 33–34.)

Armour then spoke to Salazar and asked her if there was anything illegal inside the vehicle. (*Id.* ¶ 36.) Salazar responded that "there shouldn't be" anything illegal inside the vehicle, and she identified a brown purse and a black wallet in the front passenger seat as belonging to her. (*Id.* ¶ 37.) After providing this statement to Armour, Salazar was placed under arrest. (*Id.* ¶ 38.)

Armour conducted a warrantless search of the vehicle and found a glass pipe with a rock of crack cocaine inside it. (*Id.* ¶ 40.) He confronted McCullough about the pipe, and he told McCullough that the pipe was located under the front passenger seat. (*Id.* ¶¶ 41–42.) In his later written report, Armour wrote that the pipe and crack cocaine were found between the front passenger seat and the center console. (*Id.* ¶ 42.) Armour told McCullough, "I'm not after you, I'm really after her," referring to Salazar. (*Id.* ¶ 43.) McCullough denied any knowledge about the pipe or crack cocaine. (*Id.* ¶ 44.)

Armour then asked Salazar about the pipe and crack cocaine. (*Id.* ¶ 45.) In the police report memorializing the stop, Armour wrote that "[Salazar] admitted the substance inside the pipe being [sic] crack," and that Salazar "then tried to recant her statement and claim that someone else must have left the pipe and drugs there, but that she would 'take responsibility for it.'" (*Id.* ¶¶ 46–47.) Salazar disputes that she gave either statement to Armour, and she denied that the pipe and crack cocaine belonged to her. (*Id.* ¶ 48.)

Salazar was charged by the Maricopa County Attorney's Office for possession of drug paraphernalia and possession of a narcotic drug, both felonies. (*Id.* ¶ 50.)

On April 9, 2014, Defendant Lake filed the initial disclosure statement in Salazar's criminal case. (*Id.* ¶ 51.) This disclosure statement did not include any *Brady* material, such as internal investigation or disciplinary reports concerning Defendant Armour. (*Id.* ¶ 52.)

1    On May 21, 2014, Salazar's defense counsel specifically requested, among other

2    information, any *Brady* material.  (*Id.* ¶ 53.)  No *Brady* material was disclosed to defense

3    counsel at this time.  (*Id.* ¶ 54.)

4    In April 2015, Salazar retained new, private defense counsel, and, on October 13,

5    2015, her new attorney made his own request to Defendants for any *Brady* material.  (*Id.*

6    ¶¶ 55–56.)  In response, Defendants did not provide any *Brady* material.  (*Id.* ¶ 57.)

7    In January 2016, Salazar's defense attorney filed a Motion to Suppress evidence, in

8    which he discussed inconsistencies with Armour's statements (such as the reason for the

9    traffic stop and the location of the pipe), disputed Armour's credibility, and outlined

10    Armour's propensity for dishonesty.  (*Id.* ¶¶ 58–59.)

11    Salazar's trial began on August 10, 2016.  (*Id.* ¶ 61.)  The primary evidence against

12    Salazar at trial was Armour's testimony.  (*Id.* ¶ 122.)  At trial, Armour testified, for the first

13    time, that Salazar had admitted to the pipe and crack cocaine being hers.  (*Id.* ¶¶ 62, 123.)

14    In his statements in his police report and in prior testimony from preliminary hearings,

15    Armour had not claimed that Salazar admitted to the pipe and crack cocaine being hers.

16    (*Id.* ¶ 63.)  Salazar's defense attorney impeached Armour using these previous statements,

17    and Armour's conflicting testimony became the cornerstone of the defense attorney's

18    argument to the jury that Armour's testimony was not credible and that Armour had a

19    propensity for dishonesty.  (*Id.* ¶¶ 63–64.)  Salazar's defense attorney also presented

20    testimony from the owner of the vehicle, Antonio Harris, who admitted that the pipe and

21    crack cocaine were his.  (*Id.* ¶ 65.)

22    On August 17, 2016, the jury found Salazar guilty, and on December 5, 2016, she

23    was sentenced to six years imprisonment.  (*Id.* ¶¶ 66–67.)

24    On December 12, 2017, the Court of Appeals affirmed Salazar's conviction.  (*See*

25    CR2013-462384-001 DT, July 10, 2018 Minute Entry.[2])

26

27    ─────────────────

28    [2] *See* http://www.courtminutes.maricopa.gov/viewerME.asp?fn=Criminal/072018/
m8365374.pdf (last visited June 17, 2020).

- 5 -

Significantly, back in November 2015, Defendant Armour was involved in a different arrest, unrelated to Salazar's case, which prompted the Phoenix Police Department to initiate a complaint against Armour raising five allegations: (1) unlawful entrance of a private residence; (2) false arrest; (3) providing false testimony in a verbal report to a supervisor; (4) providing false information in an incident report; and (5) disobeying a supervisor's lawful order.  (*Id.* ¶¶ 68, 93–95; *see id.* ¶¶ 70–92.[3])  An investigation ensued, which was headed by the Phoenix Police Department's Professional Standards Bureau.  (*Id.* ¶ 96.)  The Professional Standards Bureau review board consisted of three investigators who were all members of the police department.  (*Id.* ¶ 97.)

On April 27, 2016, approximately four months before Salazar's trial, the Professional Standards Bureau released a 15-page report ("Report") sustaining every allegation against Armour.  (*Id.* ¶ 98.)  The Professional Standards Bureau investigators determined that Armour's actions constituted "intentional abuse of police powers, authority, and privileges," and that Armour "knowingly submitted a criminal investigation . . . report with false information."  (*Id.* ¶¶ 99–100.)  Armour was cited for seven violations of Phoenix Police Department policies.  (*Id.* ¶ 101.)

City Defendants did not send a copy of the Report to the Arizona Peace Officer Standards and Training Board, nor did they release a copy of the Report to the County Attorney's Office.  (*Id.* ¶¶ 102–103.)

Defendants and the County Attorney's Office did not release the Report to Salazar or her counsel before her trial.  (*Id.* ¶ 104.)  The Report would have been used by Salazar's defense attorney to impeach and undermine the credibility of Armour at trial and prove his penchant for dishonesty.  (*Id.* ¶ 107.)

On February 22, 2017, 190 days after Salazar's conviction, Defendants disclosed the Report to the Maricopa County Superior Court.  (*Id.* ¶ 108.)  Defendants did not directly

---

[3] The Second Amended Complaint sets forth detailed facts of the November 4, 2015 arrests and actions of Armour that gave rise to the allegations in the Complaint initiated by the Phoenix Police Department.  (Doc. 37 ¶¶ 70–92.)

1  send the Report to Salazar or her defense attorney; rather, Defendants filed the Report
2  under the old criminal court case number.  (*Id.* ¶ 109.)  Defendants did not otherwise send
3  any kind of notification to Salazar, her defense attorney, or any other party about the
4  disclosure to the Superior Court containing the Report.  (*Id.* ¶ 110.)

5        Salazar's defense attorney did not receive a copy of the Report until December 14,
6  2017—about 10 months after Defendants filed the Report in Salazar's criminal case.  (*Id.*
7  ¶ 112.)  Salazar was notified of the Report the following day, and she received a copy of
8  the Report on January 9, 2018.  (*Id.* ¶ 113.)

9        A Motion for New Trial and Post-Conviction Relief had already been filed on
10  Salazar's behalf based on the discrepancies and inconsistencies in Armour's testimony at
11  trial.  (*Id.* ¶ 114.)  But on March 30, 2018, Salazar's attorney filed a new Motion for Post-
12  Conviction Relief, citing Defendants' failure to disclose *Brady* material, i.e., the Report.
13  (*Id.* ¶ 115.)  In the Response to Salazar's Motion, the Maricopa County Attorney's Office
14  conceded a failure to disclose *Brady* material.  (*Id.* ¶ 116.)

15        On July 10, 2018, the Superior Court granted Salazar's Petition for Post-Conviction
16  Relief.  (*Id.* ¶ 117.)  In its Minute Entry, the Superior Court detailed Defendants' failure to
17  disclose the *Brady* material "with respect [to] Officer Armour of the Phoenix Police
18  Department, whose credibility was critical to the conviction."  (*Id.* ¶ 118; *see* Superior
19  Court No. CR2013-462384-001 DT, July 10, 2018 Minute Entry.[4])   The Superior Court
20  also detailed the timing of Salazar's trial and appeal and noted the substantial amount of
21  time Defendants had the material before disclosing it.  (Doc. 37 ¶ 119.)

22        On July 26, 2018, the Superior Court granted the State's request to vacate judgment
23  and ordered that Salazar be released from the Arizona Department of Corrections.
24  (CR2013-462384-001 DT, July 26, 2018 Minute Entry.[5])

25        On February 20, 2019, Salazar initiated this civil rights lawsuit.  (Doc. 1.)

26  _____

27        [4] *See* http://www.courtminutes.maricopa.gov/viewerME.asp?fn=Criminal/072018/
m8365374.pdf (last visited June 17, 2020).

28        [5] *See* n.3.

- 7 -

1    **IV.    Dismissal of Montgomery**

2            In her Second Amended Complaint, Salazar names former Maricopa County

3    Attorney Montgomery as a Defendant in both his individual and official capacities.  (Doc.

4    39 ¶ 14.)  But there are no individual capacity claims asserted against Montgomery.  (*See*

5    *id.*)  The only individual capacity claims are those asserted against Lake and Armour in

6    Count One.  (*See id.* ¶¶ 129–135.)  The remaining claims in Count Three are all brought

7    under *Monell* against the named Defendants in their official capacities.  (*See id.* ¶¶ 142–

8    157.)  Montgomery is not named as a Defendant in Count Three.  The current Maricopa

9    County Attorney, Adel, is the proper defendant for Salazar's official capacity claim, and

10   Count Three names her as a Defendant in her official capacity.  (*See id.*)  In a footnote in

11   their Motion to Dismiss, County Defendants stated that there were no individual allegations

12   regarding Montgomery and that Adel had been substituted as the Defendant for the official-

13   capacity claim; however, Salazar did not address Montgomery's status as a Defendant in

14   her Response.  (Doc. 39 at 2 n.1; *see* Doc. 43.)

15           Because there are no allegations against Montgomery in either his individual or

16   official capacity, the Court will dismiss Montgomery as a Defendant.  *See Omar v. Sea-*

17   *Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987) ("a trial court may dismiss a claim sua

18   sponte under [Rule] 12(b)(6).  Such a dismissal may be made without notice where the

19   claimant cannot possibly win relief.")

20   **V.    County Defendants' Motion to Dismiss**

21           **A.    Individual Capacity Claim against Lake**

22                   **1.    Parties' Contentions**

23           In Count One, Salazar alleges that Lake violated her Fourteenth Amendment due

24   process rights when she failed to timely disclose *Brady* evidence.  (*Id.* ¶¶ 129–133.)  In the

25   pending Motion to Dismiss, Lake asserts absolute prosecutorial immunity to the extent

26   Salazar claims that she failed to disclose *Brady* evidence before trial.  (Doc. 59 at 5–6.)

27           In her Response, Salazar notes that the Court addressed and rejected Lake's absolute

28   immunity argument when it ruled on the Motion to Dismiss Salazar's First Amended

1    Complaint, and the facts alleged in Count One against Lake were not altered in the Second

2    Amended Complaint.  (Doc. 43 at 5.)  Salazar argues that because Lake reasserts the same

3    arguments in the pending Motion to Dismiss, the Court should deny this portion of the

4    Motion under the "law of the case" doctrine.  (*Id.*)  Salazar also states that the claim against

5    Lake is based on her conduct that occurred post-conviction.  (*Id.* at 2.)

6         In the Reply, Lake states that she is not revisiting the issue previously addressed by

7    the Court—namely, whether absolute immunity applies to Lake for a post-conviction

8    *Brady* violation.  (Doc. 44 at 2.)  Instead, Lake is asserting absolute immunity only as to a

9    claim that she committed a pretrial *Brady* violation.  (*Id.* at 2.)  Lake points to one paragraph

10   in Count One stating that Defendants' failure "to produce evidence (the Report) material

11   to Ms. Salazar's guilt or innocence prior to trial constitutes a violation of Ms. Salazar's due

12   process rights."  (*Id.*, citing Doc. 37 ¶ 133.)  Lake argues that, based on this assertion, it is

13   not clear whether Salazar asserts a claim based on pretrial or post-conviction disclosure,

14   and the Court previously addressed only the issue of Lake's liability for a post-conviction

15   *Brady* violation.  (Doc. 39 at 2–3.)

16              **2.    Discussion**

17        At the outset, the Court notes that an "amended complaint supersedes the original,

18   the latter being treated thereafter as nonexistent."  *Forsyth v. Humana, Inc.*, 114 F.3d 1467,

19   1474 (9th Cir. 1997), *overruled in part on other grounds, Lacey v. Maricopa Cnty.*, 693

20   F.3d 896, 928 (9th Cir. 2012).  "Courts in this Circuit therefore have permitted defendants

21   moving to dismiss an amended complaint to make arguments previously made and to raise

22   new arguments that were previously available."  *Gundy v. Cal. Dep't of Corrs. & Rehab.*,

23   No. 1:12-cv-01020-LJO-MJS, 2013 WL 522789, at *6 (E.D. Cal. Feb. 11, 2013) (citing

24   cases).  In this case, Salazar's Second Amended Complaint supersedes the First Amended

25   Complaint, and the First Amended Complaint is considered nonexistent.  Because the

26   Second Amended Complaint is a new round of pleadings, County Defendants may raise

27   any arguments, even if previously raised, in their new Motion to Dismiss.

28

1    Lake's argument is limited to an assertion of absolute immunity with respect to her

2    role in any alleged pretrial *Brady* violation.   (Doc. 39 at 5.)  Although the paragraph in the

3    "Count One" section of the amended pleading cited by Lake refers to a failure to produce

4    evidence *prior* to trial, this section of the Second Amended Complaint applies to the due

5    process claims against both Lake and Armour.  (Doc. 37 ¶ 133.)  Importantly, the Count

6    One section of the Second Amended Complaint realleges all foregoing paragraphs, which

7    include specific allegations that the City Defendants did not release the *Brady* evidence to

8    the Maricopa County Attorney's Office before trial, and that, thereafter, disclosure of the

9    *Brady* evidence was untimely and did not occur until 190 days after Salazar's conviction

10   and after almost two years of her confinement in prison.   (*Id.* ¶¶ 18, 103, 108.)  Although

11   the Count One section could have spelled out the due process claims against Lake and

12   Armour more precisely, with the incorporated allegations, the Second Amended Complaint

13   sufficiently states a due process claim against Lake based on the untimely disclosure of

14   *Brady* material post-conviction.  *See* Fed. R. Civ. P. 8(a)(2).  In her Response, Salazar

15   clarifies that the claim against Lake is based on her alleged failure to timely disclose *Brady*

16   evidence post-conviction.

17          Accordingly, there is no claim alleged against Lake related to her role in an alleged

18   *Brady* violation prior to trial, and Defendants' request to dismiss such a claim based on

19   absolute immunity will be denied as moot.

20

21          **B.    Official Capacity Claims Against Maricopa County and Adel**

22                 **1.    Parties' Contentions**

23          In Count Three of the Second Amended Complaint, Salazar alleges that County

24   Defendants failed to adequately train and supervise employees when handling requests or

25   dealing with the production of *Brady* material, and, as a result, Salazar suffered a

26   deprivation of her constitutional rights.  (Doc. 37 ¶¶ 142–145.)  Salazar alleges that Lake

27   and other prosecutors working for the Maricopa County Attorney's Office have engaged

28   in withholding or untimely disclosing *Brady* material in cases other than Salazar's, and, in

support, Salazar cites to *Milke v. Ryan*, 711 F.3d 998 (9th Cir. 2013); *Canion v. Cole ex rel. County of Maricopa*, 91 P.3d 355 (Ariz. Ct. App. 2004); *State of Arizona v. Ronnie Camacho*, Maricopa County Superior Court Case No. CR2018-005994; and *ACLU v. Montgomery*, Maricopa County Superior Court Case No. CV2019-007636.  (*Id.* 146–147.) Finally, Salazar alleges that in October 2019, Adel announced at a press conference the County's recommitment to "transparency" in dealing with public disclosures, and Salazar alleges that the newly announced policy of increased transparency will result in the release of previously withheld evidence confirming a pattern or practice of failure to make *Brady* disclosures.  (*Id.* 151–152.)[6]

In their Motion, County Defendants argue that a pattern of similar constitutional violations by employees is ordinarily necessary to support a failure-to-train claim, and they contend that Salazar has failed to show such a pattern.  (Doc. 39 at 6.)  County Defendants concede that the *Brady* violation in *Milke v. Ryan* is like the allegation in Salazar's case; however, they submit that it is insufficient to support a failure-to-train or failure-to-supervise claim because over 20 years elapsed between *Milke* and Salazar's prosecution. (*Id.* at 7.)  County Defendants argue that another case on which Salazar relies, *Canion v. Cole*, fails to support her claim because Salazar does not allege what kind of evidence was not disclosed in *Canion* and there was no express finding of a *Brady* violation in *Canion*. (*Id.* at 8.)   County Defendants contend that the other cases cited by Salazar are also insufficient because they postdate Salazar's prosecution, do not concern *Brady* violations, or do not relate to *Brady* violations by Maricopa County prosecutors.  (*Id.* at 8–10.)  Lastly, County Defendants assert that Adel's comments during a press conference regarding transparency related to how the office would respond to public records requests, and any claim that forthcoming policy changes related to transparency will somehow show a pattern of *Brady* violations is conjecture and speculation.  (*Id.* at 11.)

## 2. *Monell* Standard

---

[6]  The Second Amended Complaint cites to the press conference at https://wwwyoutube.com/watch?v=rBqzsc-ItM8.  (Doc. 37 ¶ 151.)

A local government may be held liable under § 1983 for a constitutional violation if that violation occurred as a result of the municipality's official policy or custom. *Monell*, 436 U.S. at 694. "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). A municipality may also be liable if it has a policy of inaction and such inaction amounts to a failure to protect constitutional rights. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

"[A] local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick*, 563 U.S. at 60. To support a *Monell* claim for failure to train under § 1983, a plaintiff must allege facts demonstrating that the local government's failure to train amounts to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Connick*, 563 U.S. at 61 (citing *Canton*, 489 U.S. at 388). Similarly, to properly allege a claim for failure to supervise, a plaintiff must allege facts demonstrating that the supervision was "sufficiently inadequate" to amount to "deliberate indifference." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).

Deliberate indifference may be shown "if the need to train was obvious and the failure to do so made a violation of constitutional rights likely." *Canton*, 489 U.S. at 390. The plaintiff must allege facts to support that "in light of the duties assigned to specific officers or employees, the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policy-makers . . . can reasonably be said to have been deliberately indifferent to the need." *Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002). It is "ordinarily necessary" to allege facts demonstrating a pattern of similar constitutional violations by untrained employees to demonstrate deliberate indifference for purposes of showing a claim for failure to train and supervise. *Connick*, 563 U.S. at 62. By showing a pattern of similar violations, a plaintiff

1    can establish that policymakers were on "actual or constructive notice that a particular

2    omission in their training program causes employees to violate citizens' constitutional

3    rights." *Id.*   Thus, a *Monell* claim generally must be based on more than "a single

4    constitutional deprivation, a random act, or an isolated event."  *Castro v. Cnty. of Los*

5    *Angeles*, 797 F.3d 654, 671 (9th Cir. 2015).

### 3.   Discussion

7    To support *Monell* liability, the plaintiff must first allege an underlying

8    constitutional violation.  *See Quintanilla v. City of Downey*, 84 F.3d 353, 355 (9th Cir.

9    1996).  Here, Salazar alleges a violation of her constitutional right to due process under

10   *Brady*.  (*See* Doc. 37 ¶ 133.)  "To state a [§ 1983] claim under *Brady*, the plaintiff must

11   allege that (1) the withheld evidence was favorable either because it was exculpatory or

12   could be used to impeach, (2) the evidence was suppressed by the government, and (3) the

13   nondisclosure prejudiced the plaintiff."  *Smith v. Almada*, 640 F.3d 931, 939 (9th Cir.

14   2011).  "Any evidence that would tend to call the government's case in to doubt is favorable

15   for *Brady* purposes."  *Milke*, 711 F.3d at 1012.  Salazar alleges that the evidence at issue—

16   the Report—was impeachment evidence favorable to her; that the Report was suppressed

17   and untimely disclosed by government officials; and that the untimely disclosure resulted

18   in her continued imprisonment, thereby prejudicing her.  (*See* Doc. 37 ¶¶ 18–22, 98–104,

19   107, 108–113, 116–117, 120–121, 124–127, 134.)  These allegations sufficiently state a

20   claim under *Brady* and support that Salazar was deprived of the constitutional right to due

21   process.  *See Brady*, 373 U.S. at 87 (suppression of evidence favorable to an accused

22   violates due process).

23   As mentioned, "[a] pattern of similar constitutional violations by untrained

24   employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of

25   failure to train."  *Connick*, 563 U.S. at 62 (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520

26   U.S. 397, 409 (1997)).  Salazar alleges that the County Attorney's Office has or should

27   have policies, procedures, practices, and/or customs that govern the disclosure of *Brady*

28   material and that the County failed to train or supervise their employees when dealing with

1   the production of *Brady* material, which resulted in the deprivation of Salazar's

2   constitutional rights to a fair trial and due process.  (Doc 37 ¶¶ 143–145.)  Salazar alleges

3   that the Maricopa County Attorney's Office has a documented history of disclosure and

4   *Brady* violations by prosecutors in its office.  (*Id.* ¶¶ 146–147.)  In support, Salazar cites to

5   *Milke v. Ryan*, a 2013 Ninth Circuit decision that vacated the murder conviction of Debra

6   Milke.  711 F.3d at 1000.  At the 1990 trial, the interrogating police detective testified that

7   Milke confessed to murder, but she denied confessing, and the judge and jury believed the

8   detective.  *Id.*  The Ninth Circuit found that the Maricopa County Attorney's Office failed

9   to disclose evidence of the detective's long history of lying under oath and other

10  misconduct, and because suppression of this evidence qualified as prejudicial for purposes

11  of *Brady*¸ habeas relief was granted.  *Id.* at 1000–01, 1019.

12       In its opinion, the Ninth Circuit noted that some of the evidence of the detective's

13  misconduct was not disclosed until the *Milke* case got to federal court years later, and even

14  as of 2013, some relevant evidence still had not been produced, "perhaps because it's been

15  destroyed."  *Id.* at 1001.  Relying on this, Salazar argues that *Milke* supports a pattern of

16  failure to disclose because the criminal component of *Milke* did not end until 2013, and it

17  therefore shows a decades-long pattern of conduct of the Maricopa County Attorney's

18  Office.  (Doc. 43 at 7.)  Although there was a continuing failure to disclose in *Milke*, the

19  disclosure failure was part of one case.  Salazar does not cite to, and the Court has not

20  found, case law supporting that one case would be sufficient to put officials on notice of a

21  systemic failure within the County Attorney's Office to withhold *Brady* material.  Indeed,

22  in *Connick*, the Supreme Court rejected the plaintiff's argument that alleged *Brady*

23  violations in his case should not be considered "a single incident" because up to four

24  prosecutors may have been responsible for nondisclosures of evidence; "contemporaneous

25  or subsequent conduct cannot establish a pattern of violations that would provide 'notice

26  to the cit[y] and the opportunity to conform to constitutional dictates . . . .'"  563 U.S. at

27  62 n.7 (quoting *Canton*, 489 U.S at 395).

28

*Milke* represents an instance of a *Brady* violation similar to Salazar's allegation; however, the *Milke* trial was more than twenty years before Salazar's trial. "Agedness alone is not problematic, so long as the aged cases fall into a pattern of sufficient duration, frequency, and consistency." *Estate of Mendez v. City of Ceres*, 390 F. Supp. 3d 1189, 1209 (E.D. Cal. 2019). Thus, Salazar must allege facts supporting that there were additional instances of similar *Brady* violations post *Milke.*

Salazar cites to *Canion v. Cole ex rel. County of Maricopa*, a 2004 state court case where the petitioner argued that the State failed to disclose documents after his 1997 trial in violation of *Brady*. 91 P.3d at 357. The Arizona Court of Appeals held that the duty of disclosure does not end with a verdict, and it found that the petitioner raised a meritorious claim under *Brady*; "Canion has shown good cause and made colorable allegations of newly discovered materials suggesting that evidence that should have been disclosed to him was not." *Id.* at 362–62. County Defendants maintain that *Canion* constitutes a "generalized allegation" of a *Brady* violation and that there was no finding that the prosecutor in fact failed to disclose *Brady* material. (Doc. 39 at 8.) But County Defendants do not explain why the *Canion* decision would not have sufficed to give officials actual or constructive notice of a problem with *Brady* disclosures. *See Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984) ("[a]ctual knowledge may be shown by such means as discussions at council meetings or receipt of written information. Constructive knowledge may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as, for example, where the violations . . . were the subject of prolonged public discussion or of a high degree of publicity"); *M.N.O. v. Magana*, Nos. Civ. 03-6393-TC, Civ. 04-1021-TC, et al., 2006 WL 559214, at *8–10 (D. Ore. March 6, 2006) (for purposes of *Monell* liability, the Chief of Police can fairly be said to have had actual or constructive knowledge of a practice of sexual misconduct in the police department where he was aware of at least one citizen complaint; the complaint "was a red flag and presented an opportunity to discover the pattern").

1    The similarity between *Canion* and Salazar's case is clear; both concern the

2    Maricopa County Attorney's Office failure to disclose evidence post-conviction, and the

3    type of evidence at issue in both cases was a Professional Standards Report and documents

4    to impeach the police officer involved in the case.  *See Canion*, 91 P.3d at 358 (evidence

5    not disclosed included the police officer's personnel file and the Professional Standards

6    Report on the officer); *cf. Connick*, 563 U.S. at 62–63 (finding that incidents cited by the

7    plaintiff did not put officials on notice that training was inadequate with respect to the

8    *Brady* violation at issue because those incidents did not involve the failure to disclose the

9    same type of evidence).  Thus, *Canion* constitutes another instance of a *Brady* violation

10   similar to Salazar's case.

11   As noted by County Defendants, the remaining two cases to which Salazar cites,

12   *State v. Camacho* and *ACLU v. Montgomery*, both postdate Salazar's prosecution and trial.

13   Even assuming these cases shared similarities with the violation in Salazar's case, they

14   could not have served to put officials on actual or constructive notice of a need for more

15   *Brady*-related training or supervision before the violation in Salazar's case.  *See Connick*,

16   563 U.S. at 62 ("[w]ithout notice that a course of training is deficient in a particular respect,

17   decisionmakers can hardly be said to have deliberately chosen a training program that will

18   cause violations of constitutional rights").  Because Salazar's *Monell* claim is strictly a

19   failure-to-train/failure-to-supervise cause of action, she must allege facts to show that

20   incidents of similar violations put officials on notice of the problem; in other words, those

21   incidents must predate the violation in Salazar's case.  *See id.*; *NeSmith v. Cnty. of San*

22   *Diego*, No. 15cv629 JLS (JMA), 2016 WL 4515857, at *16 (S.D. Cal. Jan. 27, 2016)

23   (finding that, although the complaint referred to the county's high suicide rate, the

24   complaint did not show that the county had notice of a pattern of suicides such that failure

25   to provide additional training would lead to constitutional violations because it was not

26   clear what the time period the suicide statistics applied to; "for purposes of [a failure-to-

27   train] cause of action, the statistics would need to predate [the decedent's] suicide").

28

Salazar's allegation that Adel's public statements regarding a recommitment to transparency will result in the release of previously withheld evidence confirming a pattern or practice of failing to make *Brady* disclosures is speculative.  (Doc. 37 ¶¶ 151–152.)  In the October 2019 press conference, Adel referred to a commitment to improvement and transparency with regard to public disclosures, and she specifically referenced body cam procedures.  (*See id.* 151 & n.6, supra.)  Without more, there are no facts from which the Court could infer that Adel's statements related to a policy on *Brady* disclosures or that her statements were made in response to Salazar's case or to other cases involving *Brady* violations by the County Attorney's Office.

Salazar's Second Amended Complaint therefore sufficiently alleges facts showing instances of similar *Brady* violations in 1990 and 1997.  As stated, Salazar's trial was in 2016, and the untimely disclosure of *Brady* material occurred in 2017.  Even at the motion-to-dismiss stage, two incidents of similar violations that occurred well before Salazar's case are insufficient to support an inference that there was a pattern of similar *Brady* violations.  *See Bagley v. City of Sunnyvale*, No. 16-cv-02250-JSC, 2017 WL 5068567, at *5 (N.D. Cal. Nov. 3, 2017) ("Plaintiff cites no cases suggesting that vague reports of two incidents are sufficient to deny a motion to dismiss a *Monell* claim.  Where courts have allowed *Monell* claims to proceed at the motion to dismiss stage, plaintiffs have pled multiple incidents of alleged violations"); *Wilkins v. City of Tempe*, No. CV 09-00752-PHX-MHM, 2010 WL 94116, at *4 (D. Ariz. Jan. 6, 2010) (granting the defendants' motion to dismiss and stating that "even assuming the truth of these allegations, it is unreasonable to infer a policy or custom . . . based on the filing of two lawsuits").

Consequently, Salazar's allegations fail to state a plausible *Monell* claim for failure to train or failure to supervise, and the claims asserted in Count Three against Maricopa County and Adel will be dismissed without prejudice.

**VI.   Request to Strike**

County Defendants move to strike two paragraphs in Salazar's Second Amended Complaint under Rule 12(f) as immaterial and scandalous.  (Doc. 39 at 2.)

Under Rule 12(f), the "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."  Immaterial matters are those that have no essential or important relationship to the claim being pleaded.  *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993). "Scandalous matters are allegations that unnecessarily reflect[ ] on the moral character of an individual or state[ ] anything in repulsive language that detracts from the dignity of the court, and include[ ] allegations that cast a cruelly derogatory light on a party or other person." *Consumer Sols. REO, LLC v. Hillery*, 658 F. Supp. 2d 1002, 1020 (N.D. Cal. 2009) (internal quotations omitted).  Rule 12(f) motions to strike are generally disfavored, and courts "grant[] them only when necessary to discourage parties from making completely tendentious or spurious allegations." *Sapiro v. Encompass Ins.*, 221 F.R.D. 513, 518 (N.D. Cal. 2004).  When addressing a Rule 12(f) motion to strike, the court must view the pleading in the light most favorable to the nonmovant.  *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1245 (C.D. Cal. 2011).

County Defendants move to strike the following allegations in paragraph 147:

> *Foor v. Smith*, 243 Ariz. 594, 597, ¶ 11, 416 P.3d 858, 861 (App. 2018) (even though Plaintiff was denied relief on other grounds, Court found that MCSO failed to disclose *Brady* material about Phoenix Police Officer in civil forfeiture action); Min. Entry at 4, *State of Ariz. v. Ronnie Camacho*, CR2018-005994 (Maricopa Cnty. Super Ct. July 31, 2019) (ordering "no other remedy" other than dismissal in criminal action appropriate for State's "willful violation of disclosure" in failing to disclose potential Brady information to criminal defendant's lawyer).

(Doc. 39 at 2.)  County Defendants assert that the parenthetical describing *Foor* is immaterial or scandalous because it was the City Attorneys' Office, not the Maricopa County Attorneys' Office, that was involved in the *Foor* case; thus, the citation to *Foor* does not support Salazar's *Monell* claim.  (*Id.* at 9.)  County Defendants further assert that the allegation regarding *Camacho* is immaterial because Camacho was prosecuted after Salazar and because the violation in *Camacho* can be distinguished from the alleged

1   violation in Salazar's case given that in *Camacho*, the County Attorney failed to ensure

2   that court orders regarding disclosure were followed.  (*Id.* at 9–10.)

3          In Response, Salazar concedes that the Maricopa County Attorney's Office was not

4   involved in *Foor* and agrees to amend that portion of the paragraph accordingly.  (Doc. 43

5   at 9.)  But Salazar asserts that *Foor* is relevant to her *Monell* claim against City Defendants

6   because it supports that City Defendants engaged in a process to frustrate discovery of

7   evidence.  (*Id.*)  Salazar also argues that *Camacho* is relevant because in both *Camacho*

8   and her case, the County Attorney failed to obtain information from the police.  (Doc. 43

9   at 10.)

10         Salazar's reference to the "MCAO" instead of to the City Attorney's Office in the

11  parenthetical describing the *Foor* case is akin to a typographical error.  The Court will take

12  judicial notice of the *Foor v. Smith* opinion and the fact that it concerned an alleged *Brady*

13  violation against the City Attorneys' Office and not against the Maricopa County

14  Attorneys' Office.  *Foor*, 416 P.3d at 596; *see Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,

15  442 F.3d 741, 746 n.6 (9th Cir. 2006) (courts may take judicial notice of court filings and

16  other matters of public record).  The Court will deny the request to strike this portion of

17  paragraph 147 because it agrees with Salazar that *Foor* is relevant to her *Monell* claim

18  against City Defendants.

19         The request to strike the reference to *Camacho* as immaterial due to the timing of

20  the prosecution is duplicative of the argument raised in the Rule 12(b)(6) Motion to

21  Dismiss, and nothing in Salazar's citation to *Camacho* is incorrect.  *See Consumer Sols.*

22  *REO*, 658 F. Supp. 2d at 1020 ("[t]he proper medium for challenging the sufficiency of

23  factual allegations in a complaint is through Rule 12(b)(6), not Rule 12(f)").  The Court

24  will therefore deny the request to strike the allegations in paragraph 147.

25         County Defendants also move to strike the following allegation in paragraph 149:

26         As recently as 2019, Defendant MCAO was challenged by the American
        Civil Liberties Union for delaying/refusing to submit information about
27         MCAO's policies and procedures in response to the ACLU's request for such
        information under Arizona's Public Records Laws.  *See* Press Release,
28

ACLU of Arizona and ACLU Criminal Law Reform Project, We're Suing Maricopa County Attorney Bill Montgomery to Release the Records He's Hiding From Arizonans (May 22, 2019) (https://www.aclu.org/blog/smart-justice/prosecutorial-reform/were-suing-maricopacounty-attorney-bill-montgomery release).

(Doc. 39 at 2–3.)   County Defendants assert that the allegation regarding *ACLU v. Montgomery* is so immaterial it should be stricken.  (*Id.* at 10.)

This argument duplicates the relevancy argument already addressed in the analysis on the Rule 12(b)(6) Motion, and nothing in Salazar's citation to *ACLU v. Montgomery* is incorrect.  The request to strike paragraph 149 will also be denied.

**IT IS ORDERED:**

(1)   The reference to the Magistrate Judge is withdrawn as to County Defendants' Motion to Dismiss (Doc. 39).

(2)   County Defendants' Motion to Dismiss (Doc. 39) is **granted in part** and **denied in part** as follows:

> (a)   the Motion is **granted** as to the *Monell* failure-to-train/failure-to-supervise claims against Maricopa County and Adel in Count Three, and these claims are dismissed; and

> (b)   the Motion is otherwise **denied**.

(3)   Montgomery, Adel, and Maricopa County are dismissed as Defendants.

(4)   Within **10 days** from the date of this Order, Defendant Lake must file an answer to the Second Amended Complaint.

Dated this 6th day of July, 2020.

Susan R. Bolton
United States District Judge