David J. Bodney (006065)
bodneyd@ballardspahr.com
Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400
Facsimile: 602.798.5595
*Attorney for Scripps Media, Inc.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Frances Salazar, individually,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>City of Phoenix, et. al.,<br><br>　　　　　Defendants. | Case No. 2:19-CV-01188-PHX-SRB (ESW)<br><br>**SCRIPPS MEDIA, INC.'S (1) RESPONSE IN OPPOSITION TO CITY DEFENDANTS' MOTION TO COMPEL, (2) MOTION FOR PROTECTIVE ORDER AND (3) REQUEST FOR ORDER REQUIRING CITY DEFENDANTS TO PAY ABC15'S REASONABLE EXPENSES INCURRED** |

## I. INTRODUCTION

Scripps Media, Inc. owns and operates KNXV-TV, the local ABC television network affiliate station in Phoenix, and publishes abc15.com ("ABC15"). Throughout 2020 and 2021, ABC15 has reported extensively on the Phoenix Police Department in two different investigative projects: (1) *Politically Charged*, a series of news reports that exposed how the Phoenix Police Department and Maricopa County Attorney's Office colluded to falsely charge and target protestors last year;[1] and (2) *Full Disclosure*, another series of news reports that examines issues with Arizona's *Brady* list system.[2] *Politically Charged* and *Full Disclosure* were led by ABC15 investigative reporter Dave Biscobing. The *Full Disclosure* project included reporting on Ms. Salazar's criminal case, the subject of the instant lawsuit.[3] Now, Defendants City of Phoenix, Chief Jeri Williams, Retired Chief Joseph Yahner and Retired Officer Anthony Armour (the "City") seek to compel production of ABC15's privileged journalistic work product related to these news reports, including recordings of ABC15 reporters' unpublished interviews with Ms. Salazar. However, the City has failed to offer any compelling justification for dragging ABC15, a

---

[1] Further details regarding *Politically Charged*, as well as news reports related to the investigation, can be found at www.ABC15.com/protest. *Politically Charged* spurred an independent investigation into the Phoenix Police Department that confirmed ABC15's reporting and led to discipline for Chief Jeri Williams, demotion of multiple assistant chiefs and the criminal investigation of some officers. *See* Dave Biscbobing, *Phoenix PD chief disciplined, others demoted after probes into gang charges and challenge coin*, ABC 15 (Aug. 12, 2021), https://www.abc15.com/news/local-news/investigations/protest-arrests/phoenix-police-chiefs-approved-of-protest-gang-charges-outside-investigation-finds. Moreover, the U.S. Department of Justice opened a sweeping pattern-or-practice civil rights investigation into the City of Phoenix and the Phoenix Police Department based in large part on ABC15's reporting. *See Justice Department Announces Investigation of the City of Phoenix and the Phoenix Police Department*, United States Department of Justice (Aug. 5, 2021), https://www.justice.gov/opa/pr/justice-department-announces-investigation-city-phoenix-and-phoenix-police-department.

[2] Further details regarding *Full Disclosure*, as well as news reports related to the investigation, can be found at www.ABC15.com/bradylist. *Full Disclosure* won some of the most prestigious awards in journalism, including the Peabody Award. *See* Rebecca McCarter, *KNXV's 'Full Disclosure' Investigation Wins Prestigious Peabody Award*, Scripps (June 21, 2021), https://scripps.com/press-releases/knxvs-full-disclosure-investigation-wins-prestigious-peabody-award/.

[3] *See, e.g.*, Dave Biscobing, *Grandmother convicted as a Phoenix officer's lies are kept secret*, ABC15 (Aug. 10, 2020), https://www.abc15.com/news/local-news/investigations/a-grandmother-convicted-as-a-phoenix-officers-lies-are-kept-secret.

2

third party, into this civil case and invading ABC15's journalistic privilege – which is strongly protected under the First Amendment and Ninth Circuit precedent.[4]

The City issued its subpoena to ABC15 (the "Subpoena") over six months ago, on March 29, 2021.[5] The Subpoena sought copies of ABC15's unedited video and audio recordings of its interviews of Ms. Salazar and two of her attorneys.[6] Pursuant to Rule 45 of the Federal Rules of Civil Procedure, ABC15 promptly responded to the Subpoena with an objection asserting that the requested materials are protected by the journalist's privilege under Ninth Circuit precedent, specifically *Shoen v. Shoen*, 48 F.3d 412 (9th Cir. 1995) ("*Shoen II*").[7] A month later, the City reiterated its request for the materials and cited a case from the Northern District of Illinois, *Tate v. City of Chicago*, 2020 WL 4437853 (N.D. Ill. Aug. 3, 2020), in support of its position.[8] In response to this follow-up request, ABC15 explained to the City that *Tate* is inapplicable to the instant case because the Ninth Circuit employs a different, more protective version of the journalist's privilege than that employed in the Seventh Circuit.[9] ABC15 did not hear from the City again for months and, accordingly, thought the City had come to realize that its Subpoena was unenforceable.

However, after several months of silence, the City came back to ABC15 ***again*** on a Sunday evening, requesting ABC15's response by the following Tuesday and offering no new legal argument in support of its requests aside from more inapplicable cases.[10] Again, ABC15 reiterated its position that the requested materials are privileged as a matter of

---

[4] The discovery sought by the City appears to be (or raises the disturbing possibility that it could well be) retribution for ABC15's extensive reporting on the Phoenix Police Department, rather than a genuine, legally sound need for the requested materials.

[5] *See* Declaration of David J. Bodney in support of this Response (the "Bodney Decl.") ¶ 2, Ex. A.

[6] *See id.*

[7] *See* Bodney Decl. ¶ 3, Ex. B.

[8] *See* Bodney Decl. ¶ 4, Ex. C.

[9] *See* Bodney Decl. ¶ 5.

[10] *See* Bodney Decl. ¶ 8, Ex. D.

3

law.[11] Without responding to ABC15's request for an explanation of its sudden, renewed interest in the materials, the City filed the instant motion to compel (the "Motion"). Throughout this back-and-forth, up to and including in the Motion, the City has yet to provide a compelling, legally sound justification for the requested materials. Accordingly, the Court should enter the proposed form of protective order and, in accordance with Fed. R. Civ. P. 37(a)(5)(B), order the City, its counsel, or both, to pay ABC15's reasonable expenses, including attorneys' fees, incurred in opposing the Motion.

## II. THE CITY'S SUBPOENA IS UNENFORCEABLE AS A MATTER OF LAW BECAUSE THE REQUESTED MATERIALS ARE PROTECTED BY THE JOURNALIST'S PRIVILEGE.

### A. The Journalist's Privilege Is Well-Settled in the Ninth Circuit.

Journalists in the Ninth Circuit enjoy a strong First Amendment privilege against third-party discovery. In *Shoen II*, the Ninth Circuit held that a litigant seeking even non-confidential information from a journalist must show that the material is: "(1) unavailable despite exhaustion of all reasonable alternative sources; (2) non-cumulative; and (3) clearly relevant to an important issue in the case." *Id.* at 416. The party seeking discovery must satisfy each element of the test to compel production. The Ninth Circuit has emphasized that the journalist's privilege cannot easily be defeated: "[I]n the ordinary case the civil litigant's interest in disclosure should yield to the journalist's privilege. Indeed, if the privilege does not prevail in all but the most exceptional cases, its value will be substantially diminished." *Id.* at 416 (quoting *Zerilli v. Smith*, 656 F.2d 705 (D.C. Cir. 1981). The *Shoen* test presents an insurmountable hurdle to the City's attempt to compel production of privileged materials by ABC15.

### B. The City Has Not Met Its Burden to Overcome ABC15's Claim of Journalist's Privilege.

The City has not met its burden to satisfy all three elements of the *Shoen* test. First, the City has not met its burden to "exhaust[] all reasonable alternative sources." *Id.* at 416. In the Motion, the City argues that "the unedited video and audio recordings sought from

---

[11] *See* Bodney Decl. ¶ 9, Ex. E.

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

Scripps in the subpoena are not available from any other source." Motion at p. 4. However, it does not appear that the City has attempted to get whatever information it hopes may exist in the unpublished interviews from another non-journalist source. For example, the City has not described any effort to ask Ms. Salazar what she said during the interviews. Indeed, this was precisely the issue in *Shoen v. Shoen*, 5 F.3d 1289 (9th Cir. 1992) ("*Shoen I*"), where the Ninth Circuit concluded that plaintiffs had not satisfied the exhaustion requirement because they had not made sufficient efforts to ask the interviewee what he said in the requested interview before seeking the journalist's notes and recordings. *See Shoen I* at 1296-97. In *Shoen I*, the plaintiffs did not dispute that the interviewee was "an obvious alternative source for discovering what he said to [the journalist] in their conversations" and the plaintiffs had therefore served written interrogatories asking the interviewee to describe the content of the conversations. *Id.* at 1296. However, the Ninth Circuit concluded that these written interrogatories were *not* sufficient to satisfy the exhaustion requirement because the plaintiffs had not taken the interviewee's deposition, which would be a more useful mechanism to discover the witness's recollection of the conversations. *Id.* at 1297. Here, where the City has shown ***no*** effort to discover the content of the interviews from Ms. Salazar or any other non-journalist source to date – much less demonstrated the requisite ***sufficient*** effort – the City has not met its burden to exhaust all reasonable alternative sources.

Second, the City has not met its burden to show that the interview recordings would not be cumulative. The City's argument on this element is merely a tautology: the recordings are not cumulative, the City says, because any statements that contradict Ms. Salazar's prior statements or "that constitute new information" are not cumulative. Motion at 4. The City's assertion that "evidentiary admissions . . . can be used to address the issue of Ms. Salazar's credibility," *id.*, neither renders whatever she said to a journalist more than a year after the filing of her lawsuit admissible nor non-cumulative. Unadorned speculation that the recordings *might* contain information different from other evidence in this case is insufficient to show that the material is non-cumulative and discoverable.

5

Third, the City also has surely not met its burden to establish that the requested evidence is "clearly relevant to an important issue" in the case. *Shoen II* at 416. In this regard, there must be a showing of "actual relevance; a showing of potential relevance will not suffice." *Id*. In clear disregard for this requirement, the City has not even specified to what "issue" the evidence is relevant: the City's argument on this element states only that Ms. Salazar's and her attorneys' statements "are clearly relevant to important issues in her lawsuit." Motion at p. 4. This conclusory statement is a far cry from meeting the City's burden to establish clear relevance. Elsewhere in the Motion, the City suggests that the interviews may be relevant to Ms. Salazar's credibility. Motion at p. 6. However, *Shoen II* explains that such speculation is not sufficient justification to overcome the journalist's privilege. In *Shoen II*, plaintiffs argued that the journalist's tapes and notes were important to their case because they might provide valuable impeachment material. *Shoen II* at 418. The court rejected this argument, explaining that, "[t]o the extent the requested materials would demonstrate that [the interviewee] was less than candid during his deposition, they do not relate to an important issue in this case." *Id*. Similarly, here, the City has provided no meaningful argument as to why Ms. Salazar's candor during her interview relates to "an important issue in this case."

### C. The City's Cited Cases Are Inapplicable to the Facts of this Case.

The district court cases cited by the City in support of its Motion are factually distinct and do not support overcoming the journalist's privilege in this case. In *Crowe v. Cty. of San Diego*, 242 F. Supp. 2d 740 (S.D. Cal. 2003), the plaintiffs had asserted a defamation claim against the defendant for statements made during an interview. *Id*. at 743. The court noted that a defendant charged with making defamatory statements "is not responsible for the subsequent editing of his interview – he is only responsible for his comments in their full and complete form, not the sound bites they became." *Id*. at 750 (quoting *Metabolife Intern., Inc. v. Wornick*, 264 F.3d 832, 837 (9th Cir. 2001)). Therefore, the court reasoned, the entire interview tape was "clearly relevant" to the "important issue" of whether the defendant's statements could be deemed defamatory.

6

*Id*. at 751.  *Crowe* is therefore meaningfully distinct from this case because the recording sought was legally necessary for the plaintiffs to prove their defamation claim.  Here, by contrast, the City has not explained – nor can it possibly explain – how Ms. Salazar's statements in an interview conducted *16 months after the filing of her claim* in this case (and even longer after the occurrences at issue) would affect the merits of her constitutional due process claim or the City's defenses.

The same distinction arises in the City's other cited case, *Planned Parenthood Fed'n of Am., Inc. v. Ctr. For Med. Progress*, 2018 U.S. Dist. LEXIS 91336 (N.D. Cal. May 31, 2018).[12]  In *Planned Parenthood*, the plaintiff alleged that the defendant had engaged in a highly complex and sophisticated conspiracy to gain access to the plaintiff's meetings and secretly record conversations, and eventually release videos alleging that the plaintiffs violated federal law related to tissue donation.  *Id*. at *5.  When the plaintiff sought discovery of the defendants' communications regarding the publication of the videos, the defendants asserted journalist's privilege over all their communications related to the challenged activities.[13]  *Id*. at *41.  The court reasoned that the defendants' communications regarding the videos and other activities may reflect discussion of the strategy and goals of the alleged conspiracy.  *Id*. at *46-48.  Thus, the communications were directly relevant to an "important issue in the case" – *i.e.*, whether a conspiracy existed.  *Id*.  Again, the discovery in *Planned Parenthood* is materially distinct from the City's requests here because the evidence sought directly affected the merits of the underlying claims.

A review of the City's cited cases only emphasizes the City's failure to meet its burden under the *Shoen* test.  The City has not explained how anything said in the requested

---

[12] The City has also cited *Tate* in support of its Motion. However, *Tate* is inapplicable because the Seventh Circuit has expressly taken a more narrow view of the journalist's privilege than the Ninth Circuit. ABC15 has previously explained this jurisdictional difference to the City, *see* Bodney Decl. ¶¶ 5-6, so it is unclear why the City continues to base its argument on *Tate*.

[13] Though there was some doubt about whether the defendants could properly assert the journalist's privilege, the court assumed that they could for purposes of analyzing whether the privilege could be overcome under the *Shoen* test. *Id*. at *43-44.

interviews could possibly be crucial to its defense of Ms. Salazar's constitutional claims. Furthermore, the City has not disclosed any efforts to obtain the evidence from non-journalist sources. Absent these required showings, the requested materials are protected by the journalist's privilege and not subject to discovery.

### III.  THIS COURT SHOULD ENTER A PROTECTIVE ORDER PROHIBITING DISCOVERY OF ABC15'S JOURNALISTIC WORK PRODUCT.

Pursuant to Federal Rule of Civil Procedure 26(c), ABC15 hereby requests that this Court enter a protective order prohibiting discovery of ABC15's journalistic work product. There is good cause for a protective order because ABC15's interviews of and relating to Ms. Salazar are protected by the journalist's privilege as articulated by the Ninth Circuit in *Shoen II*. A protective order is necessary to protect ABC15, a non-party, from undue burden and expense responding to the City's repeated attempts to discover this privileged (and, as explained herein, irrelevant) information.[14] ABC15 certifies that, as discussed *supra*, it has engaged in good-faith efforts over the past six months to persuade the City's counsel to withdraw the Subpoena, and has supported its position with applicable case law within the Ninth Circuit.[15] However, the City's latest attempts to seek the materials yet again – without justification – indicates that the City intends to continue demanding the materials from ABC15 absent a contrary order from this Court.

A protective order is further warranted due to the important First Amendment concerns implicated in this dispute. Not only is there a First Amendment interest in protecting journalistic work product, there is an even greater need to protect unpublished material that is also subject to a promise of confidentiality between the journalist and one or more of these sources. In light of these important constitutional concerns, in addition to the well-settled Ninth Circuit precedent cited herein, there is ample justification for this

---

[14] *See Jimenez v. City of Chicago*, 733 F. Supp. 2d 1268, 1273-74 (W.D. Wa. 2010) (granting journalist's request for a protective order prohibiting discovery of materials determined by the court to be protected by the journalist's privilege and awarding attorneys' fees to the journalist for fees and costs incurred in connection with her opposition to the discovery).

[15] *See* Bodney Decl. ¶¶ 3-9.

8

Court to protect ABC15, a socially valuable journalistic enterprise, from the time and expense of further responding to the City's repeated requests for information that is privileged as a matter of law.[16]

## IV. THE COURT SHOULD ORDER THE CITY TO PAY THE REASONABLE EXPENSES INCURRED BY ABC15, INCLUDING ATTORNEYS' FEES, IN OPPOSING ITS MOTION TO COMPEL.

Pursuant to Federal Rule of Civil Procedure 37(a)(5)(B), if the Court denies the City's Motion, the Court "must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees." Fed. R. Civ. Pro. 37(a)(5)(B). The only exceptions to this rule are (i) if the Motion was "substantially justified" or (ii) if "other circumstances make an award of expenses unjust." *Id*. As explained herein, the Motion is not substantially justified because ABC15 has explained to the City on multiple occasions why the Subpoena is unenforceable as a matter of law and the Motion offers no new or otherwise compelling argument to rebut ABC15's assertion of journalist's privilege. Moreover, there are no circumstances that would make an award of expenses unjust. Indeed, the situation is analogous to *Jimenez v. City of Chicago*, where, after concluding that the defendants had not met their burden to overcome the journalist's privilege, the court granted the journalist's motion to quash the subpoena, issued a protective order prohibiting the defendants from seeking further discovery from her, and awarded her attorneys' fees. 733 F. Supp. 2d at 1274. In awarding attorneys' fees to the journalist, the court emphasized, as is equally the case here, that the defendant "had subpoenaed [the journalist] before attempting any kind of discovery beyond written interrogatories with Plaintiff." *Id*. Therefore, the Court should deny the City's Motion and, after giving the City and its lawyers an opportunity to be heard, order the City, its attorneys, or both, to pay ABC15's reasonable expenses incurred, including attorneys' fees, in accordance with Federal Rule of Civil Procedure 37(a)(5)(B).

---

[16] *See generally Shoen I* at 1292 (recognizing that the journalist's privilege is "rooted in the First Amendment" and reflects society's interests in "protecting the integrity of the news gathering process" and "ensuring the free flow of information to the public.")

## V. CONCLUSION

For the foregoing reasons, ABC15 respectfully requests that the Court (i) deny the City's Motion; (ii) issue a protective order (in the form of proposed Order attached) prohibiting discovery of the materials requested in the Subpoena; and (iii) order the City, its attorneys, or both, to pay ABC15's reasonable expenses, including attorneys' fees incurred, in opposing the Motion.

RESPECTFULLY SUBMITTED this 19th day of October, 2021.

BALLARD SPAHR LLP

By: /s/ David J. Bodney
David J. Bodney
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555

Matthew E. Kelley (*pro hac vice* application forthcoming)
1909 K Street, NW, 12th Floor
Washington, DC 20006

*Attorneys for Scripps Media, Inc.*

**CERTIFICATE OF SERVICE**

I certify that on October 19, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants noted below:

Lori V. Berke
Jody C. Corbett
Berke Law Firm, PLLC
1601 N. 7th Street, Suite 360
Phoenix, Arizona 85006
*Attorneys for Defendants City of Phoenix, Chief Jeri Williams, Retired Chief Joseph Yahner and Anthony Armour*

Benjamin J. Rundall
Abbie L. Godles
Honor Law Group, PLLC
4450 S. Rural Road, Suite C-220
Tempe, Arizona 85282
*Attorneys for Plaintiff*

Maxine S. Mak
Maricopa County Attorneys Office
225 W. Madison St.
Phoenix, Arizona 85003
*Attorney for Defendant Elizabeth Lake*

Angela Dawn Lane
Maricopa County Attorney Civil Services Division
225 W. Madison St.
Phoenix, Arizona 85003
*Attorney for Defendant Elizabeth Lake*

/s/ Christina M. Kinsey