Lori V. Berke (#015628)
Jody C. Corbett (#019718)
**BERKE LAW FIRM, PLLC**
1601 N. 7th Street, Suite 360
Phoenix, AZ 85006
Phone: (602) 254-8800
Fax: (602) 254-8808
lori@berkelawfirm.com
jody@berkelawfirm.com
Attorneys for Defendants City of Phoenix,
    Chief Jeri Williams, Retired Chief Joseph
    Yahner, and Anthony Armour

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Frances Salazar, individually,<br><br>                    Plaintiff,<br><br>    vs.<br><br>City of Phoenix, et al.,<br><br>                    Defendants. | Case No. 2:19-cv-01188-PHX-SRB (ESW)<br><br>**LODGED PROPOSED**<br><br>**REPLY IN SUPPORT OF MOTION TO COMPEL SCRIPPS MEDIA, INC. TO RESPOND TO SUBPOENA**<br><br>(Oral Argument Requested)<br><br>**ATTACHED** |

1

Lori V. Berke (#015628)
Jody C. Corbett (#019718)
**BERKE LAW FIRM, PLLC**
1601 N. 7th Street, Suite 360
Phoenix, AZ 85006
Phone: (602) 254-8800
Fax: (602) 254-8808
lori@berkelawfirm.com
jody@berkelawfirm.com
Attorneys for Defendants City of Phoenix,
    Chief Jeri Williams, Retired Chief Joseph
    Yahner, and Anthony Armour

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Frances Salazar, individually, | Case No. 2:19-cv-01188-PHX-SRB (ESW) |
| Plaintiff, | **REPLY IN SUPPORT OF MOTION TO COMPEL SCRIPPS MEDIA, INC. TO RESPOND TO SUBPOENA** |
| vs. | |
| City of Phoenix, et al., | (Oral Argument Requested) |
| Defendants. | |

Defendants City of Phoenix, Chief Jeri Williams, Retired Chief Joseph Yahner, and Retired Officer Anthony Armour ("City Defendants"), through undersigned counsel, file their Reply in support of Motion to Compel Scripps Media, Inc. ("Scripps") to respond to their subpoena requesting the unedited video footage of interviews of Plaintiff Frances Salazar ("Plaintiff") and her attorneys that were recorded after the Complaint in this case was filed. For the reasons set forth in the Motion and below, the Court should grant the motion.

**I.    THE CITY DEFENDANTS ISSUED THE SUBJECT SUBPOENA AND BROUGHT THIS MOTION IN GOOD FAITH AND NOT IN "RETRIBUTION" AGAINST ABC15.**

Initially, the City Defendants address Scripps' incorrect and inflammatory assertion in a footnote that the subpoena "appears to be . . . retribution for ABC15's extensive reporting on the Phoenix Police Department." There is absolutely no truth to this contention. Rather, ABC15 is unreasonably refusing to produce the unedited video requested in the subpoena despite its clear relevance to this case, in an effort to protect Plaintiff from being cross-examined with it, which is precisely what happened in another lawsuit involving a plaintiff who was interviewed by ABC15 reporter Dave Biscobing.

Just over a year ago, Defendants City of Phoenix and Anthony Armour served an almost identical subpoena on Scripps in that case (Anderson v. City of Phoenix, CV-16-03563-PHX-JJT) seeking the unedited video of reporter Dave Biscobing's interview of the plaintiff, JeAnna Anderson, that had been recorded while the civil case was pending. (See Subpoena to Scripps Media, Inc. in Anderson v. City of Phoenix, CV-16-03563-PHX-JJT, attached hereto as Exhibit 1). Just as occurred in this case, Scripps initially objected to the subpoena by letter. (See Letter from David Giles to Lori Berke and Jody Corbett, dated September 9, 2020, attached hereto as Exhibit 2). The City Defendants' counsel then sent a letter to Scripps' counsel, providing case law and an explanation as to how the recordings sought were not subject to the qualified journalist privilege or the media shield law and must be produced to the City Defendants. (See Letter from Jody Corbett to David Giles, dated September 13, 2020, attached hereto as Exhibit 3). After meeting and conferring with undersigned counsel, Scripps' counsel advised undersigned counsel that it determined "that the entire, unedited interview of Plaintiff JeAnna Anderson by ABC15 Investigator Dave Biscobing is newsworthy and has decided to post the interview on its website." (See E-mail from David Bodney to Lori Berke, dated September 18, 2020, attached hereto as Exhibit 4). Therefore, Scripps agreed to produce the video. However, the video ABC15 posted on its website had the ABC15 logo embedded in the video. Scripps agreed to produce the video without the ABC15 logo on the condition that a protective order be entered to limit the use of the video without the ABC15 logo to the litigation in the Anderson case. (See Stipulation for Entry of Protective Order in Anderson v. City of Phoenix, CV-16-03563-PHX-JJT, dated

2

October 9, 2020, attached hereto as <u>Exhibit 5</u>; Order Granting Protective Order in <u>Anderson v. City of Phoenix</u>, CV-16-03563-PHX-JJT, dated October 13, 2020, attached hereto as <u>Exhibit 6</u>).  At trial, clips from the unedited video of Ms. Anderson's interview with Dave Biscobing were shown to the jury and the jury ultimately issued its verdict in favor of the defendants in that case. (<u>See</u> Transcript of Trial, October 23, 2020 in <u>Anderson v. City of Phoenix</u>, CV-16-03563-PHX-JJT, pp. 640-642, attached hereto as <u>Exhibit 7</u>).

Like the interview in the <u>Anderson</u> case, the interviews conducted of Plaintiff and her attorneys were recorded after Plaintiff filed her Complaint in this case and the information contained in those recordings has been available to Plaintiff and her attorneys throughout the pendency of this case.  The recordings were used by Plaintiff and Scripps to create negative news stories about the City Defendants, likely in some part to attempt to influence the outcome of this case.   Scripps has already made the decision, by airing some of the footage from Mr. Biscobing's interview with Frances Salazar and her attorneys in published news stories, that these interviews are newsworthy.   Therefore, Scripps should be ordered to produce the unedited footage of the interviews as it did in the Anderson case.

## II. SCRIPPS MEDIA HAS WAIVED ITS QUALIFIED PRIVILEGE BY PREVIOUSLY VOLUNTARILY DISCLOSING UNEDITED VIDEO OF ITS INTERVIEWS AND BY COMMUNICATING AND INTERVIEWING BOTH PLAINTIFF AND HER ATTORNEYS DURING THE PENDENCY OF THIS CASE.

Other district courts have held that the qualified journalist privilege may be waived by the conduct of the journalist toward the parties in the case.  <u>See Ayala v. Ayers</u>, 668 F. Supp. 2d 1248, 1250 (S.D. Cal. 2009); <u>Pinkard v. Johnson</u>, 118 F.R.D. 517 (M.D. Ala. 1987).  In <u>Ayala</u>, another district court in the Ninth Circuit held, "In the interests of fairness, a journalist/author should not be permitted to disclose information to advance the interests of one litigant and then invoke the journalist's privilege to prevent discovery of this same information by another litigant."  668 F.Supp.2d at 1250, <u>citing</u> <u>Sims v. Blot</u>, 534 F.3d 117, 132 (2nd Cir. 2008) (explaining that a waiver of testimonial privileges may be implied in circumstances where it is called for in the interests of fairness, such as when the party attempts

3

1   to use the privilege both as **a shield and a sword** by making selective disclosures).  Further,

2   the party who is seeking to invoke the privilege has the burden of establishing that he or she

3   has not waived the privilege.  See United States. v. Weissman, 1996 WL 737042, *25

4   (S.D.N.Y. Dec. 26, 1996); Lozman v. City of Riviera Beach, 2014 WL 12360697, at *4 (S.D.

5   Fla. Oct. 8, 2014).

6        In this case, the City Defendants are not seeking the testimony of a reporter or even

7   notes, mental impressions or unpublished writings of a reporter.  Rather, they are seeking

8   only the unedited video of interviews of Plaintiff and her attorneys that were recorded **after**

9   the Complaint in this case had already been filed and about which Plaintiff and her attorneys

10  have complete knowledge because they were involved in their creation.   Additionally,

11  Plaintiff testified at her deposition on October 25, 2021, that she was sent a link to the

12  interview but she could not recall whether it was a link to the entire unedited interview or to

13  the published news story.  Thus, in addition to being present for the interviews that occurred

14  over a year ago, Plaintiff and her attorneys may also have had access to the unedited

15  recordings.  Further, Plaintiff has benefited from the selective use of the recorded interviews

16  in published news stories by Scripps that are critical of the City Defendants.  Scripps has

17  waived its journalistic privilege to the unedited video footage by interviewing Plaintiff and

18  her attorneys while this case was pending about the very claims at issue in this case, and in

19  turn giving them access to what was contained in the recordings.  It is unknown whether

20  Plaintiff has disclosed all of the information she provided during the interview in her MIDP

21  disclosures because she testified at her deposition yesterday that she cannot recall all of the

22  questions that she was asked during the interview.  She could only provide the general

23  explanation that the interview was about her criminal and civil cases.  It would thus be unfair

24  to the City Defendants for Scripps to now use its claimed privilege as a shield to withhold

25  information from the City Defendants when Plaintiff and her legal team have already had

26  access to that information and the information has been used as a sword against the City

27  Defendants in part in the published news stories.

28

In the <u>Anderson</u> case, Scripps voluntarily produced the unedited interview of JeAnna Anderson in a lawsuit against two of the same defendants who are defendants in this case on the basis that it was newsworthy.  By publishing two news stories containing portions of the recorded interviews, Scripps has admitted that the unedited interviews in this case are similarly newsworthy and Scripps should be ordered by the Court to make them available to the City Defendants.

Finally, Scripps cannot meet its burden to demonstrate that it has not waived the journalist privilege because there is no dispute that the interviews at issue were recorded after the Complaint was filed in this case.  Likewise, there is no dispute that Scripps previously waived its privilege by voluntarily producing the unedited footage of its recording of JeAnna Anderson's interview.  For all of these reasons, this Court should rule that Scripps has waived the journalist privilege and must produce the items requested in the subpoena to the City Defendants.

## III. THE *SHOEN* FACTORS WEIGH IN FAVOR OF PRODUCTION OF THE UNEDITED VIDEO IN THIS CASE.

Even if the Court finds that Scripps did not waive its privilege, the three factors set forth by the Ninth Circuit in <u>Shoen v. Shoen</u>, 48 F.3d 412, 416 (9th Cir. 1995), weigh in favor of Scripps being compelled to produce the recordings at issue in this case.

### A. The Recordings are Clearly Relevant to an Important Issue in this Case.

Plaintiff is alleging in this lawsuit that she was prosecuted for crimes she did not commit—drug possession and possession of drug paraphernalia.  She testified at her deposition on October 25, 2021, that she had been in prison before, but for crimes she admits to having committed.  She testified that serving time in prison for crimes she claims not to have committed was significantly worse, i.e. more damaging.  Plaintiff is alleging that Defendant Armour lied during the criminal proceedings, including about admissions she made during the traffic stop that led to her arrest, and that her constitutional rights were violated by the City Defendants because Defendants did not timely disclose <u>Brady</u> material to the prosecutor.  In a letter she drafted following her conviction, she places blame for the

5

untimely disclosure on the prosecutor in her case.  She assesses no blame in the letter against Officer Armour or the City of Phoenix Police Department.  In the edited news story that can be found on ABC15's website, all of the statements made by Plaintiff and her attorneys are about what Plaintiff alleges occurred during her arrest by Officer Armour, her allegations about the alleged false statements of Officer Armour during her criminal case, and the timing of the disclosure of <u>Brady</u> material in this case.[1]  The statements were made after the lawsuit was filed in this case and, thus, are clearly relevant to Plaintiffs' claims.  Any other statements that were recorded, but do not appear in the published news stories, are most likely about the same topics since no other topics are discussed in the published stories with Plaintiff and her attorneys and the news stories are centered around Plaintiff's allegations against the City Defendants.  Rule 401 of the Federal Rules of Evidence states that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."  The statements Plaintiff and her attorneys made during these interviews are relevant because they have a tendency to make a fact more or less probable and are of consequence in determining Plaintiff's claims in this case.  Indeed, they could provide facts that were not provided during other discovery in this case about which the City Defendants are not aware.  Therefore, the interviews are clearly relevant to the **<u>facts</u>** in this case.  While the statements she made in the interview will likely impact Plaintiff's credibility as well, that is not the primary relevance of the interviews as Scripps attempts to argue in its Response.  Contrary to the parties seeking discovery in <u>Shoen</u>, the City Defendants are not arguing that they are seeking the unedited interviews solely for impeachment purposes.  <u>See Shoen</u>, 48 F.3d at 418 (holding that the journalist's tapes and notes were not clearly relevant to the plaintiffs' case solely because they "might provide valuable impeachment material" against the defendant).  Rather, in this case, Defendants are

---

[1]<u>See</u>   https://www.abc15.com/news/localnews/investigations/a-grandmother-convicted-as-a-phoenix-officers-lies-are-kept-secret   and   https://www.abc15.com/news/local-news/investigations/full-disclosure-arizona-fails-to-properly-track-problematic-brady-list-cops.

seeking the recordings during discovery as relevant evidence concerning Plaintiff's substantive claims in this case.  Finally, the City Defendants are not speculating about everything that is on the recordings.  They know some of what is on the recordings because some of the footage was included in the published news story.  Because all of the footage in the published news story is relevant to Plaintiff's substantive claims in this case, it follows that the unpublished portions are also relevant—but until they are produced, only Scripps knows the content and Scripps has provided no avowal to the Court that the recordings do not contain relevant information.[2]  Therefore, this prong weighs in favor of production.

**B.      The Recordings are Not Cumulative.**

The statements made by Plaintiff and her attorneys during the recorded interviews are not also cumulative.  First, the recorded interviews took place more than a year ago and are closer in time to when the events at issue occurred than Plaintiff's deposition—which was just taken yesterday.  Second, the recordings were made for the purpose of a negative news story about the City Defendants, not for discovery of facts in the lawsuit.  Therefore, there are likely statements made in the recordings that were not provided to the City Defendants during discovery and Defendants are entitled to obtain any evidentiary admissions regarding the facts at issue in this case.  Again, a secondary issue is Plaintiff's credibility, to the extent her statements or her attorneys' statements on the recording are contrary to prior or subsequent statements or admissions she has made.  As set forth above, the primary purpose for the City Defendants seeking the recordings is to gather facts regarding Plaintiff's substantive claims and the more sources from which the City Defendants can obtain this

---

[2]Should the Court wish to determine whether the unedited recordings contain relevant facts, the Court could review the unedited recordings *in camera* to make that determination. However, because Scripps has provided no information whatsoever to the Court to refute the City Defendants' argument that relevant evidence is contained on the recordings, it follows that the same type of information is contained in the unedited recordings as was published with the news story.  Therefore, Scripps has failed to demonstrate that the unedited recordings are not relevant.

information, the better they will be able to defend against Plaintiffs' claims.   Thus, the recordings sought are not cumulative and weigh in favor of production.

### C.   The Recordings Cannot Be Obtained from Alternative Sources.

Scripps argues in its Response that the City Defendants could have conducted other discovery to determine what Plaintiffs and her attorneys said during the interviews, including taking Plaintiff's deposition and asking her what she said during the unedited portion of the recorded interviews.  However, this argument is not realistic in this case because unlike the recorded interviews in Shoen, a portion of the interview was already published and it is clear from the published statements that they are relevant to the facts in this case.  Plaintiff testified at her deposition yesterday that her interview with Mr. Biscobing was "a bit lengthy" and that it was "about her case," but she does not remember every question that he asked her.  While she testified that she does not think Mr. Biscobing asked her anything "that I hadn't already said at some point with – in court or in some hearing with my attorneys . . . it was all just part of my story and my case," she testified that she could not remember the specifics of any questions Mr. Biscobing asked.  When asked if she recalled the questions she was asked about her criminal trial, the traffic stop, or the Brady disclosure issue, she testified that she did not remember.  She testified, "I'm a little bit rusty" as to the questions that were asked during the interview.  She also recalls that a link of the interview was sent to her, but she does not recall if it was the entire unedited interview or just what was published in the news story.  Therefore, all of the statements Plaintiff made during her unedited interview cannot be obtained from any other source.  Plaintiff's criminal attorney, Christopher Doran was asked about the interview during his deposition and he testified that his interview with Mr. Biscobing occurred on February 14, 2020, lasted an "hour or two," and they discussed "the criminal aspects of the case" and "the civil aspects of the case.  (See Transcript of Christopher Doran Deposition, dated March 23, 2021, pp. 118, 120-121, attached hereto as Exhibit 8).  Again, it would have been impossible during Mr. Doran's deposition to ask him everything he talked about during the interview that had occurred over a year before the deposition and for him to recall what he said that was included in the published news story and what was not.

8

Therefore, what Mr. Doran stated in his ABC15 interview cannot be obtained from any other source.  Finally, Defendants cannot take the deposition of Plaintiff's attorney, Benjamin Rundall, who was one of the interviewees because he is counsel of record in this case. Therefore, there is no other source from which to obtain the information about what Mr. Rundall said during the unedited recording than the recording itself.

   **D.**  **The _Shoen_ Case is Distinguishable from This Case.**

   Scripps relies solely on the <u>Shoen</u> case to argue that the unedited recordings in this case should be protected by the qualified journalist privilege.  However, the facts of that case are distinguishable from this case.  Therefore, the holding does not apply.  In <u>Shoen</u>, the claim at issue was defamation and the plaintiffs admitted that they did not believe that the unpublished tape recordings and notes of an interview with the defendant they were seeking to obtain from the investigative journalist who had written a book about the plaintiffs' and defendant's family contained any libelous statements.  48 F.3d at 413-414.  Rather, the plaintiffs were seeking the tapes and notes to see if they contained evidence of the defendant's "ill will" toward them and whether he was "less than candid" in his deposition.  <u>Id.</u> at 417-418.  The journalist signed three affidavits stating that he and the defendant did not discuss the allegedly defamatory statements during the taped interviews.  <u>Id.</u>  Therefore, the court in <u>Shoen</u> determined that the information sought by the plaintiffs was not clearly relevant to the issues in the case.  <u>Id.</u>  In this case, by contrast, Scripps does not dispute that the only topics discussed in the recorded interviews of Plaintiff and her attorneys were aspects of her criminal case and this civil case.  This is supported by the deposition testimony of Christopher Doran (<u>see</u> <u>Exhibit 8</u>) as well as the portions of the interviews that have been published by ABC15. The statements made about the facts of the criminal case and this case are clearly relevant to Plaintiff's substantive claims in this case.  Therefore, <u>Shoen</u> is distinguishable.

   **E.**  **The Cases Cited by the City Defendants Have Analogous Facts and Are Instructive.**

   Scripps attempts to distinguish the cases cited by the City Defendants in their Motion by arguing that since the facts are not on all fours with this case or they are not from the Ninth

9

Circuit, they do not apply.  The City Defendants cited these cases because they have analogous facts and because there are very few cases that address the issue of whether unedited video recordings are protected by the federal qualified journalist privilege.  The ruling of the court in Crowe v. Cty. of San Diego, 242 F. Supp. 2d 740, 743 (S.D. Cal. 2003), is instructive because one of the defendants participated in a three-hour interview with CBS and only three minutes were actually aired.  The plaintiffs brought a 42 U.S.C. § 1983 federal civil rights and state law defamation claim against that defendant.  Id. at 743.  The defendant then subpoenaed from CBS the full unedited video recording of her three-hour interview with CBS.  Id.  The court ruled that the recording was clearly relevant to the claims at issue in the case because the entire recording would "provide relevant information as to the context and content" of the defendant's statements; the entire interview could not be obtained from any other source and the "*only* means of determining the precise context and content of defendant Stephan's statements is to review the videotape;" and the requested material was not cumulative because there was no other evidence that would provide the complete context of the defendant's statements other than the entire recording of the interview.  Similarly, in this case, according to attorney Christopher Doran's testimony, Plaintiff's interview with Mr. Biscobing was one to one and half hours and his and Benjamin Rundall's interview was one to two hours.  (See Exhibit 8, pp. 117-118, 120-121).  The portions of the interviews that were aired in the published stories were only several minutes each.  The entire unedited interview cannot be obtained from any other source and is not cumulative of other discovery. Therefore, the motion to compel should be granted because it is important for the City Defendants to obtain the entire context of Plaintiff's and her attorneys' statements in the interviews to defend against her claims in this civil case alleging violations of her constitutional rights.

Likewise, even though the court in Tate v. City of Chicago, 2020 WL 4437853, at *3–4 (N.D. Ill. Aug. 3, 2020), is not in the Ninth Circuit, it considered factors similar to the Shoen factors to determine whether CBS would be required to produce the unedited recordings of interviews of the plaintiffs regarding the incidents at issue in the lawsuit against the

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

defendants.  Similar to this case, the plaintiffs had brought claims under 42 U.S.C. § 1983 for violation of their constitutional rights.  The court ruled that the unedited recordings were clearly relevant to the issues in the lawsuit and not available from any other source.  Tate, 2020 WL 4437853, at *3–4.  Therefore, the court ruled that CBS was required to produce the unedited recordings.

Scripps has failed to cite any case to this Court in which portions of recorded interviews regarding the very claims at issue in the case were published and a Court ruled that the entire unedited interviews were still protected by the qualified journalist privilege. Therefore, the City Defendants have demonstrated that the recordings they are seeking from Scripps are not protected by the qualified journalist privilege set forth in Shoen and Scripps should be ordered by the Court to produce the requested documents.

## VI.   THERE IS NO BASIS FOR THE COURT TO ENTER A PROTECTIVE ORDER PROHIBITING DISCOVERY OF THE ITEMS SOUGHT BY THE CITY DEFENDANTS IN ITS SUBPOENA TO SCRIPPS.

In its Response to the Motion to Compel, Scripps also argues that this Court should enter a protective order pursuant to Fed. R. Civ. P. 26(c) "prohibiting discovery of ABC15's journalistic work product."  However, Scripps has failed to meet its burden of showing "good cause" for the issuance of a protective order under Fed. R. Civ. P. 26(c).  Under Fed. R. Civ. P. 26(c), a party may move for a protective order to seek protection from "annoyance, embarrassment, oppression, or undue burden or expense."   However, the Ninth Circuit has held that the party seeking a protective order bears the burden of demonstrating good cause for each particular document it seeks to protect and of showing that specific prejudice or harm will result if no protective order is granted.  Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1130–31 (9th Cir. 2003).  All that Scripps argues in its Response is that the Court should grant it a protective order against the City Defendants regarding unspecified documents and other discovery on the basis that "the City intends to continue demanding materials from ABC15 absent a contrary order from this Court."  (Doc. 177, p. 8).  There is nothing in the record before the Court to support this assertion.  The City Defendants have sought only to

obtain through subpoena the very specific unedited recordings of Plaintiff and her counsel that are relevant to the claims and defenses in this case.  As set forth above, this Court should order that the documents sought in the subpoena be produced.  However, even if this Court rules to the contrary, Scripps has failed to demonstrate that the City Defendants should be precluded from ever seeking any documents from Scripps again in this case or in any other case.  Scripps has failed to meet its burden of demonstrating good cause for a protective order for any other document.  The fact that in <u>Jimenez v. City of Chicago</u>, 733 F. Supp. 2d 1268, 1274 (W.D. Wash. 2010), in ruling on the journalist's motion to quash, the district court issued a protective order to preclude the defendants from deposing the journalist or seeking further discovery from her does not support a protective order in this case.  In <u>Jimenez</u>, the court was analyzing the specific facts before it, including the fact that the defendants had issued a subpoena for the journalist's deposition in addition to requesting her correspondence with the plaintiff.  There has been no request for any documents in this case beyond what is sought in the City Defendants' subpoena to Scripps—the unedited interviews of three individuals.  Scripps has not even attempted to demonstrate that there is a basis under Rule 26(c) for a broad protective order to preclude any other discovery.  Finally, Scripps makes an unsupported statement in its Response that it is seeking to protect "a promise of confidentiality between the journalist and one of more of these sources."  (Doc. 177, p. 8). There has been no assertion of confidentiality in this case and, in fact, the <u>Shoen</u> factors, which Scripps claims apply here, apply only to non-confidential materials.  <u>See</u> <u>Shoen</u>, 48 F.3d at 416.  Plaintiff and her attorneys knowingly went on camera and gave recorded interviews to an ABC15 reporter.  They have not sought to keep their identities confidential and there is no basis for Scripps to assert that it is attempting to protect a confidential source. Therefore, Scripps' request for a protective order should be denied.

## V.     <u>SCRIPPS IS NOT ENTITLED TO AN AWARD OF ATTORNEYS' FEES TO RESPOND TO THE MOTION TO COMPEL.</u>

As set forth above, the Court should grant the Motion to Compel and order Scripps to comply with the City Defendants' subpoena.  However, even if the Court denies the motion,

in whole or in part, Scripps is not entitled to an award of attorneys' fees for several reasons. First, the rule Scripps cites in support of its request for attorney's fees is inapplicable. Scripps cites Fed. R. Civ. P. 37(a)(5)(B), arguing that if a motion brought pursuant to that rule is denied, the Court "must" award reasonable expenses or attorneys' fees. The City Defendants' motion to compel was not brought pursuant to Fed. R. Civ. P. 37, but was brought pursuant to Fed. R. Civ. P. 45(d)(2)(B)(i). Pursuant to Rule 45(d)(1), the court may only award attorneys' fees to the subpoenaed party if the party that issued the subpoena did not "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." In Mount Hope Church v. Bash Back!, 705 F.3d 418, 427–29 (9th Cir. 2012), the Ninth Circuit was considering the exact procedure at issue here. In that case, a plaintiff in a lawsuit (Mount Hope Church) brought in the Western District of Michigan served a subpoena on a Seattle-based online service provider (Riseup) seeking the names of seven anonymous e-mail account holders. Riseup objected to the subpoena, arguing among other things, that the names of the account holders were protected by the First Amendment. Id. at 423. The efforts of Mount Hope Church and Riseup to meet and confer regarding the subpoena were not successful, so Mount Hope Church filed a motion to compel the names of the account holders from Riseup. Id. The district court denied the motion to compel, finding that the First Amendment balancing test it conducted favored protection of the names, and it awarded attorneys' fees and costs to Riseup. Id. The Ninth Circuit affirmed the denial of the motion to compel, but reversed the award of attorneys' fees and costs, holding that under Fed. R. Civ. P. 45(c)(1)[3] Riseup had not demonstrated that the subpoena had imposed an undue burden or expense on it, even though it had to respond to the motion to compel. In so holding, the Ninth Circuit stated:

> It would not be correct in law to say that there is undue burden every time a subpoena calls for privileged information. For privileges can be waived, and,

---

[3]After Mount Hope Church was decided in 2012, Rule 45 was amended and the subsection that was (c)(1) is now (d)(1). Therefore, the court's discussion in that case of subsection (c)(1) applies to what is now Fed. R. Civ. P. 45(d)(1).

even when not waived, there is often a balancing of interests before resolution of a dispute. . . .

. . . [T]he burdens of complying with the subpoena are the ones that count. Because the district court found that the subpoena requesting information about seven e-mail addresses was "not a logistical burden or the result of a failure to narrowly tailor requests," the scope of the subpoena did not cause an undue burden. This finding is supported by the record, which indicates that the Church only requested a limited amount of information that was easily accessible by Riseup.

Given that the "undue burden" language is limited to harms inflicted by complying with the subpoena, it follows that other Rule 26(g) duties, acting consistent with existing law or with good reason to change it and absent bad faith, relate to the subpoena process and not to the adjudication of related follow-on issues, such as whether the subpoenaed information is potentially protected by a privilege.

. . . Mount Hope's subpoena was facially valid under Rule 45. . . . [B]ecause we already held that Mount Hope fulfilled its Rule 45(c)(1) duties to narrowly tailor the subpoena and issue it in compliance with existing law, in the circumstances of this case bad faith would be necessary to uphold the sanction. The district court did not find bad faith and the record shows that none existed. Mount Hope did not believe the subpoenaed information was protected by the First Amendment and raised legal issues, such as Riseup's potential lack of standing, in its communications with the company. There is nothing sanctionable in such advocacy, even if it turns out that Mount Hope had a losing legal position.

The subpoena issued in the present action was narrowly tailored and did not at all pose an undue burden on Riseup. To the contrary, **what Riseup is complaining about is essentially the advocacy of its opponent, which it says improperly added to its burdens. But we do not think that the mere need to respond to an opponent's advocacy in our civil justice system should be viewed as unduly burdensome when legal arguments are advanced in good faith. For our legal system to improve, to respond to current needs and not stagnate in the face of change and new requirements, lawyers should not have their advocacy efforts stifled and chilled.**

Id. at 427-29 (emphasis added, internal citations omitted). Therefore, the Ninth Circuit has held that if a party has a good faith basis to believe that the documents it is seeking by subpoena are not privileged and the subpoena is narrowly tailored, then the party should not be sanctioned, even if it loses a legal argument regarding whether the documents sought by subpoena were privileged. In this case, Scripps has not demonstrated to the Court that it

14

would be an undue burden for it to comply with the subpoena if the Court was to find that the qualified privilege does not apply to the requested documents. Indeed, it will not cost Scripps anything to provide the unedited interviews to the City Defendants electronically via a file sharing service. Therefore, there is no basis under Rule 45 for an award of attorneys' fees.

The only case Scripps cites to support its argument that it should be awarded attorneys' fees is not applicable here because it has a different procedural posture than this case. In Jimenez v. City of Chicago, 733 F.Supp.2d 1268, 1270 (W.D. Wash. 2010), the non-party journalist moved to quash the subpoena served on her by the defendants and for a protective order to preclude any further subpoena or deposition notice being served on her. The journalist also moved pursuant to Fed. R. Civ. P. 37(a)(5)(A) for an award of attorneys' fees and costs for bringing the motion to quash and motion for protective order. Id. In ruling on the request for attorneys' fees, the district court held that under that rule when a motion to quash was granted and the non-moving party's conduct was not substantially justified an award of attorneys' fees was appropriate. In this case, Scripps did not move to quash the subpoena, it just objected it. The City Defendants brought the instant motion because they have a good faith argument that Scripps has waived its qualified privilege and that they have met their burden of demonstrating that the qualified privilege does not apply in this case to preclude production of the unedited interviews.

Regardless, even if the Court was to consider the attorneys' fees that can be awarded under Fed. R. Civ. P. 37(a)(5)(B), there is no basis for an award under that rule either. Under Fed. R. Civ. P. 37(a)(5)(B), if a motion to compel is denied the court "must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. **But the court must not order this payment if the motion was substantially justified** or other circumstances make an award of expenses unjust." (Emphasis added). A request for discovery is substantially justified "if reasonable people could differ as to [the appropriateness of the contested action]." Pierce v. Underwood, 487 U.S. 552, 565 (1988) (internal citations and quotation marks omitted; brackets in

original); see also Fed. R. Civ. P. 37(a)(4) 1970 advisory committee note ("On many occasions . . . the dispute over discovery between the parties is genuine, though ultimately resolved one way or the other by the court.  In such cases, the losing party is substantially justified in carrying the matter to court.").  This Court has discretion to evaluate the justification proffered by a party that brings a motion to compel.  See Marquis v. Chrysler Corp., 577 F.2d 624, 642 (9th Cir. 1978).  In this case, the City Defendants were substantially justified in bringing their Motion to Compel based on both Scripps' waiver of its privilege and the relevance of the information in the recordings sought to Plaintiff's claims in this case.  Therefore, an award of attorneys' fees must not be made against the City Defendants.

**V.    CONCLUSION.**

For the reasons set forth in the City Defendants' Motion and above, the Court should compel Scripps to produce the documents requested in the subpoena served on it by the City Defendants because Scripps has waived its journalistic privilege as to the recordings at issue and the Shoen factors weigh in favor of production of the recordings.  The Court should also deny Scripps' request for a protective order and should deny Scripps' request for an award of attorneys' fees.

DATED this 26th day of October, 2021.

BERKE LAW FIRM, PLLC

By    s/ Jody C. Corbett
      Lori V. Berke
      Jody C. Corbett
      Attorneys for Defendants City of Phoenix,
      Chief Jeri Williams, Retired Chief Joseph
      Yahner and Anthony Armour

**CERTIFICATE OF SERVICE**

I hereby certify that on October 26, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Benjamin L. Rundall

16

Abbie Godles
rundall@honorlawgroup.com
godles@honorlawgroup.com

Maxine S. Mak
Angela Lane
makm@mcao.maricopa.gov
lanea01@mcao.maricopa.gov

David J. Bodney
Matthew E. Kelley
bodneyd@ballardspahr.com
kelleym@ballardspahr.com
Counsel for Scripps Media, Inc.

By:   s/ Jody C. Corbett