Lori V. Berke (#015628)
Jody C. Corbett (#019718)
**BERKE LAW FIRM, PLLC**
1601 N. 7th Street, Suite 360
Phoenix, AZ 85006
Phone: (602) 254-8800
Fax: (602) 254-8808
lori@berkelawfirm.com
jody@berkelawfirm.com
Attorneys for Defendants City of Phoenix,
    Chief Jeri Williams, Retired Chief Joseph
    Yahner, and Anthony Armour

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Frances Salazar, individually,<br><br>    Plaintiff,<br><br>vs.<br><br>City of Phoenix, et al.,<br><br>    Defendants. | Case No. 2:19-cv-01188-PHX-SRB (ESW)<br><br>**JOINT MOTION FOR DISCOVERY DISPUTE RESOLUTION** |

Plaintiff Frances Salazar ("Plaintiff") and Defendants City of Phoenix, Chief Jeri Williams, Retired Chief Joseph Yahner, and Retired Officer Anthony Armour ("City Defendants"), through their respective undersigned counsel, file this Joint Motion to request the Court's resolution of the following discovery disputes that arose during Plaintiff's deposition:

**City Defendants' Position:**

As a preliminary matter, the City Defendants address Plaintiff's continued attempt below to misconstrue the prior Orders of this Court. While the Court did deny the City Defendants' Motion for Leave to Amend their Answer, the Court has never ruled that the

1 City Defendants will not be permitted to present evidence at the trial regarding Plaintiff's guilt for the underlying crime in defending against Plaintiff's claim that she was damaged. Indeed, the Court denied Plaintiff's Motion in Limine on that issue as premature. (Doc. 132). Therefore, there has been no Order issued by this Court to limit discovery of evidence regarding Plaintiff's guilt for the underlying crime.

**1.  Discovery Regarding Plaintiff's Social Security Disability.**  During Plaintiff's deposition on October 25, 2021, Plaintiff was asked whether she receives disability benefits from the Social Security Administration, and she responded that she does. (See Exhibit 1, pp. 131-132). She did not previously disclose this information. When the City Defendants' counsel asked her what the disability is that is the basis for her receipt of disability benefits, her counsel objected and instructed her not to answer. (See Exhibit 1, pp. 132-137). Plaintiff followed that advice and refused to answer. (Id.) In her Second Amended Complaint, Plaintiff asserts that she is seeking "emotional and economic damages" and damages for "pain and suffering, loss of enjoyment of life, and economic loss." (Doc. 37, ¶¶ 135, 157, Prayer for Relief). Plaintiff has never provided a computation of her damages as required by the MIDP. Instead, she has only stated, "Plaintiff reserves the right to amend and supplement this section of her disclosure as discovery continues." She did testify at deposition that she is not making a claim for lost wages. She also testified at her deposition that she has suffered grief, anxiety and emotional distress as a result of her alleged wrongful incarceration.

Federal district courts have held that when the damages a plaintiff is seeking from a defendant could be similar to the basis on which the plaintiff is claiming a disability, the defendant is entitled to discover the basis for the application for disability benefits (and obtain a copy of the application which is signed under penalty of perjury) as well as the amount of monies received because that amount could possibly be subtracted from any damages received from the defendant. See Santillan v. City of Reedley, 2008 WL 62180, at *2 (E.D. Cal. Jan. 4, 2008) ("Defendants are entitled to discover whether those injuries described in the application are the same, similar, or different from the information provided in this

lawsuit, including but not limited to the social security file, all medical records and reports of reviewing doctors, the application itself, and documents showing what benefits have been received by plaintiff") see also Wesley v. Gates, 2009 WL 1955997, at *1 (N.D. Cal. July 2, 2009). Plaintiff attempts to distinguish these cases on the basis that she is not claiming "a physical or medical injury" as a result of the alleged constitutional violation. Plaintiff is claiming emotional and economic damages in this lawsuit, and because Defendants have no information regarding whether Plaintiff's claimed disability is related to the damages she is claiming in this case, they are entitled to discovery regarding the basis for her claim of disability and receipt of disability benefits. This information is proportional to the needs of this case and is relevant to Plaintiff's claim for damages. The City Defendants are not only entitled to learn the basis for her disability, but are entitled to obtain her Social Security disability records. Therefore, the City Defendants request that the Court (1) order Plaintiff to sign the authorization attached hereto as Exhibit 2 for the City Defendants to obtain her Social Security disability records and (2) issue the subpoena to the Social Security Administration attached hereto as Exhibit 3.[1]

  **2.**  **Discovery Regarding Plaintiff's Counseling Records.** Plaintiff testified at her deposition that her mother passed away approximately one year after she was released from prison and that the fact that she was in prison and could not take care of her following her conviction has caused her ongoing grief. (See Exhibit 1, pp. 160-162). She testified that she has been receiving counseling for this grief, and that she has been receiving counseling at Southwest Network for her anxiety, grief and emotional distress related to her alleged wrongful incarceration. (See Exhibit 1, pp. 162-164). Plaintiff had never previously disclosed that she was receiving counseling in connection with her alleged wrongful incarceration.

---

[1] Pursuant to federal regulation CFR § 401.180, the Social Security Administration will only respond to a subpoena signed by a federal district court judge or magistrate judge that is accompanied by a signed consent for release of information from the party whose records are being sought. Additionally, Plaintiff's date of birth and Social Security number have been redacted from the copies of these documents attached as Exhibits 2 and 3. Undersigned counsel will e-mail unredacted copies to the Court.

Plaintiff was required under the MIDP to disclose all documents "which may be relevant to any party's claims or defenses" and all "persons who are likely to have discoverable information relevant to the party's claims or defenses." Counselors and other mental health providers and their records are relevant to the claims and defense in this case and should have been disclosed. Additionally, Plaintiff objected to signing medical authorizations for the City Defendants to obtain her medical and mental health records and to providing the names of her medical providers, arguing that she simply intends to introduce evidence at trial that she experienced generalized emotions of sadness and anxiety. (See Interrogatories, Requests for Production, Plaintiff's Responses, and correspondence regarding same, attached as Exhibit 4).

Federal courts have held that when a plaintiff is claiming emotional damages, a defendant is entitled to obtain her medical and mental health records to explore whether causes unrelated to the alleged wrong contributed to the plaintiff's claimed emotional distress. See; Merrill v. Waffle House, 227 F.R.D. 467, 473 (N.D. Tex. 2005); Owens v. Sprint/United Mgmt.Co., 221 F.R.D. 657, 659 (D. Kan. 2004); Fox v. Gates Corp., 179 F.R.D. 303, 306-07 (D. Colo. 1998). These records are discoverable, even if the plaintiff does not intend to call any medical providers as witnesses or seek to recover damages for the cost of counseling and other mental health services. See Garrett v. Sprint PCS, 2002 WL 181364, at *2 (D. Kan. Jan. 31, 2002); Walker v. Northwest Airlines Corp., 2002 WL 32539635, at *3 (D. Minn. Oct. 28, 2002.

Plaintiff argues below that the Ninth Circuit affords greater protection for counseling records than other circuits, so her counseling records are not discoverable in this case. This is incorrect. Numerous district courts in the Ninth Circuit (citing and analyzing cases from other circuits) have ruled that when a plaintiff is claiming emotional damages in a lawsuit, that claim is sufficient to waive the psychotherapist-patient privilege regarding the plaintiff's mental health records for treatment he or she received after the incident at issue. See Williams v. Cty. of San Diego, 2019 WL 2330227, at *11 (S.D. Cal. May 31, 2019), objections overruled, 2019 WL 3543792 (S.D. Cal. Aug. 5, 2019) (holding that the defendants were

entitled to discovery of documents that reflect the mental or emotional health treatment received from healthcare providers "for injuries that Plaintiffs attribute to the subject incident"); Doe v. City of Chula Vista, 196 F.R.D. 562, 568 (S.D. Cal. 1999) (holding that a plaintiff who seeks to recover for emotional distress damages is relying on her "emotional condition" as an element of her claim and thus has waived her psychotherapist-patient privilege).  The case cited by Plaintiff below can be distinguished because in that case the court held that the defendants were not entitled to obtain the plaintiff's mental health records primarily because the plaintiff "no longer has symptoms of her distress."  E.E.O.C. v. Serramonte, 237 F.R.D. 220, 224 (N.D. Cal. 2006).  In this case, Plaintiff testified at her deposition that she is still receiving counseling for "ongoing grief" which she claims stems from her alleged wrongful incarceration.  Therefore, by claiming to still be suffering from emotional damages, she has waived her psychotherapist-patient privilege.

Therefore, this Court should order Plaintiff to sign authorizations for the City Defendants to obtain all of her counseling and other mental health records from any counselor or mental health provider she has seen since her arrest on December 31, 2013, including Southwest Network.

**3.     Discovery Regarding Plaintiff's Use of Drugs Prior to Her Arrest.**  Plaintiff is alleging in this case that Defendant Armour lied in his police report and at trial when he stated that Plaintiff told him she had recently relapsed from her drug recovery.  Plaintiff testified at her deposition that she has not used drugs since 2007, six or seven years prior to her arrest on December 31, 2013.  (See Exhibit 1, pp. 109-110).  However, attached to her Sentencing Memorandum is a letter from a case manager at Southwest Network (attached as Exhibit 5) which states, "She has now been clean and sober for at least 8 or 9 months."  While the letter is undated, because it is attached to the sentencing memorandum dated October 20, 2016, and is referred to as a letter in support of Plaintiff and states that Plaintiff began receiving services from Southwest Network in October 2015 and received them for over 8 or 9 months, it is clear that the letter was written after the jury found Plaintiff guilty.  Plaintiff testified this was a typo because she had been clean for seven (7) years preceding her arrest.

5

(See Exhibit 1, pp. 109-110, 119-120).  The issue of whether Plaintiff relapsed is directly relevant to her claim in this case that Officer Armour lied in his police report and at trial, and goes to Plaintiff's credibility.  Thus, the City Defendants are entitled to obtain all of her records from Southwest Network.  Additionally, these mental health records are discoverable for the same reasons set forth above in Section 2.

Plaintiff's argument that Defendants are attempting to discover evidence regarding Plaintiff's drug use at the time of the incident to show her guilt of the crime for which she was arrested is incorrect.  Rather, Defendants are seeking the records to demonstrate two things.  First, that Officer Armour did not lie as Plaintiff contends when he stated in his report that and at trial that Plaintiff told him she had recently relapsed from her drug recovery.  Second, to demonstrate that Plaintiff gave false testimony at her deposition.  Plaintiff again misconstrues the Court's prior rulings.  This Court has never ruled that discovery cannot be conducted regarding Plaintiff's guilt of the underlying crime or regarding her credibility.  The only case cited by Plaintiff is not relevant because the procedural issue in that case was whether the trial court should have bifurcated the jury trial between liability and damages because since whether the plaintiff's decedent was high on drugs at the time the defendant officer allegedly used force against him was relevant to damages, but was inflammatory regarding the issue of liability.  Est. of Diaz v. City of Anaheim, 840 F.3d 592, 600 (9th Cir. 2016).  The court in that case was not considering whether discovery could be conducted regarding the decedent's prior drug use and credibility regarding the same.  Therefore, this Court should order Plaintiff to sign an authorization for the City Defendants to obtain all of her records from Southwest Network.

**4.    Plaintiff's Request to Reopen Chief Williams' Deposition.**  Plaintiff requests in the section below that she be allowed to reopen Chief Williams' deposition to ask more questions to support her Monell claim against the City of Phoenix.  Plaintiff already deposed Chief Williams.  A moving party must show good cause to obtain an order from a federal court to reopen a deposition when a party already had the chance to "fairly examine the witness."  Scott v. Multicare Health Sys., 2019 WL 1505880, at *1–2 (W.D. Wash. Apr. 5,

1    2019), citing Notes of the Advisory Committee on the 2000 Amendment to Fed. R. Civ. P.
2    30(d)(2).  To demonstrate good cause, the moving party must demonstrate that she "was
3    unable to fairly examine" the witness during the deposition. Id. at *2.  The "wish to develop
4    further areas of inquiry, without more, is not good cause to reopen a deposition." Id.  Plaintiff
5    has not demonstrated good cause for re-opening Chief Williams' deposition because she has
6    not shown (or even alleged) that she was unable to fairly examine Chief Williams.
7    Additionally, Plaintiff fails to cite any case law that would support her argument that the
8    questions she wants to ask are relevant to her claims.  That is because there is not any.  The
9    pages of the deposition that Plaintiff attaches as Exhibit 9 demonstrate that the question
10   Plaintiff's counsel asked was beyond the scope of this lawsuit.  Chief Williams was asked,
11   "Are you aware of any ongoing investigations that may undermine the public's approval in
12   the City of Phoenix Police Department?" (Exhibit 9, p. 152). **All** investigations against the
13   Phoenix Police Department regarding **any issue** are **not** relevant to Plaintiff's claims in this
14   case against the City of Phoenix and Chief Williams.  In order to prove her Monell claim
15   against the City of Phoenix and Chief Williams, Plaintiff needs to produce evidence of "[a]
16   pattern of **similar** constitutional violations by untrained employees." Connick v. Thompson,
17   563 U.S. 51, 62 (2011) (emphasis added).  In Connick, the United States Supreme Court held
18   that evidence of a single Brady violation is insufficient to establish a policy for Monell
19   liability, even though there was evidence in the record that there had been four other Brady
20   violations in the past ten years by same prosecutor's office. Id. at 66.  This was because the
21   other Brady violations did not involve the failure to turn over the same type of evidence to
22   the defense that were involved in the present case. Id.  The Supreme Court did not hold that
23   evidence of any other type of constitutional violation was sufficient to prove a Monell claim.
24   At Chief Williams' deposition, Plaintiff's counsel could have asked about any prior findings
25   that the same type of Brady material at issue in this case was not disclosed to prosecutors.
26   However, Plaintiff's counsel made the decision not to do that.  Also, if Plaintiff believed that
27   Chief Williams did not have sufficient knowledge of whether there has been any findings of
28   another similar Brady violation by the Phoenix Police Department, Plaintiff could have taken

depositions of other City of Phoenix witnesses. Indeed, Plaintiff originally noticed the deposition of a Fed. R. Civ. P. 30(b)(6) deponent for the City of Phoenix Police Department (see Exhibit 6) and also advised that she planned to take the deposition of Assistant Chief Steve Martos (see Exhibit 7), who was disclosed to testify "regarding PSB's process for conducting PSB investigations, determining which PSB investigation reports to submit to the Maricopa County Attorney's office for a determination as to whether an officer will be added to the Maricopa County Attorney's Office's Law Enforcement Rule 15 Disclosure Database, and PSB's procedures for submitting PSB reports to the Maricopa County Attorney's Office for a determination as to whether an officer will be added to the Maricopa County Attorney's Office's Law Enforcement Rule 15 Disclosure Database. He is also expected to testify regarding his involvement in reviewing PSB Investigation 15-0126 and determining whether it should be forwarded to the Maricopa County Attorney's Office for review." (See Exhibit 8). However, Plaintiff elected not to take those depositions. Plaintiff had her opportunity to take the deposition of Chief Williams and has failed to provide the Court with any authority to support her request to reopen the deposition. Therefore, the request should be denied.

**Plaintiff's Position:**

Preliminarily, Plaintiff would note Defendants' above disputes primarily revolve around their continuing exploration into Plaintiff's guilt. This is an issue that has been exhaustively briefed.[2] Summarized, while Plaintiff's guilt/innocence is unrelated to City Defendants' failure to turn over *Brady* material in this case, City Defendants' untimely defense was already denied by this Court in a previous ruling (Doc. 145). Nevertheless, City Defendants' requests call for private information unrelated to claims at issue in this case and not proportionally related to their defenses. Last, Plaintiff requests Chief Williams' deposition be re-opened so Plaintiff can examine City Defendants' knowledge of other investigations which may support her *Monell* claim.

---

[2] *See* (Doc. 115, Doc. 118, Doc. 125, Doc. 137).

1. **Plaintiff's SSD:** Plaintiff's social security disability is not at issue in this case because Plaintiff's damages arise from a constitutional wrong, not physical injury. Moreover, the cases cited by City Defendants are inapposite to the facts here. In *Santillan v. City of Reedley*, 2008 WL 62180 (E.D. Cal. Jan. 4, 2008), the plaintiff's 42 U.S.C. § 1983 claim involved excessive force causing injury to his back and shoulder. At the time of these injuries, plaintiff was receiving SSD benefits for a "similar injury prior to the [excessive force]." *Id.* at *2. Because the injury suffered in the excessive force claim was similar to the injury resulting in SSD benefits to the plaintiff, the court found the city was entitled to "discover whether those injuries described in the [SSD] application are the same, similar, or different from the information provided in this lawsuit." *Id.*

Similarly, *Wesley v. Gates*, 2009 WL 1955997 (N.D. Cal. July 2, 2009) involves a request for SSD records in relation to a plaintiff's disability discrimination claims. While *Wesley* itself lacks deep factual context, it does cite to *Johnson v. State, Oregon Dept. of Human Res., Rehab. Div.*, 141 F.3d 1361, 1367 (9th Cir. 1998), which notes SSD records in such claims are useful to note contradictions potentially provided about those claims to the social security administration.

Unlike *Reedley*, here Plaintiff has not claimed a physical or medical injury resulting from the violation of her constitutional right to *Brady* material (and a fair trial). And unlike *Wesley*, Plaintiff has not made any claim related to employment discrimination which would open the door to statements made to the Social Security Administration. Defendants' argument to the contrary is unpersuasive, and stems from City Defendants' refusal to recognize the implicit damage caused to Plaintiff by their failure to ensure *Brady* material was made available to her prior to her criminal trial.[3]

2. **Plaintiff's Medical Counseling Records:** Defendant City of Phoenix cannot justify an open exploration into Plaintiff's private healthcare information simply because Plaintiff admitted mentioning to her therapist at some point in the past three years the sadness

---

[3] I.e., Plaintiff was denied her right to a fair trial (resulting in her incarceration for nearly two years).

9

she experienced missing life events during her incarceration.[4] Importantly, the Supreme Court has recognized a limited privacy interest in the confidentiality of one's medical records. *Whalen v. Roe*, 429 U.S. 589, 599–600 (1977); *see also Planned Parenthood of Southern Arizona v. Lawall,* 307 F.3d 783, 789–90 (9th Cir. 2002). That privacy interest is only waived "by the filing of a lawsuit that puts the individual's medical condition at issue." *Thomas v. Carrasco*, 2010 WL 4024930, at *4 (E.D. Cal. Oct. 13, 2010), aff'd, 474 Fed. Appx. 692 (9th Cir. 2012). Accordingly, the privacy interest in such records should be protected where "[t]he mental suffering [p]laintiff claims does not exceed the suffering and loss an ordinary person would likely experience in similar circumstances and constitutes matters that are within the everyday experience of the average juror." *Fritsch v. City of Chula Vista*, F.R.D. 614, 632 (S.D. Cal. 1999).

Here, Plaintiff has not put any medical condition at issue in this case. Rather, Plaintiff has argued her damages are non-medical (garden variety) in nature and arise from City Defendants' failure to turn over *Brady* material. *See* **Exhibit 3 at Plaintiff's Responses to Defendant City of Phoenix' Interrogatories Nos. 7–8.** So, while Plaintiff has received psychological/medical care and treatment for medical issues unrelated to her *Brady* claim (and which began well before her incarceration in 2016), Plaintiff has never argued this care is connected to her case. Plaintiff mentioning her incarceration (and the general stress resulting from that experience) to any medical provider is not sufficient to allow City Defendants open access to extract Plaintiff's private healthcare information from those providers.

Notably, in support of Plaintiff's position above, all of the cases cited by City Defendants are from district courts outside of the Ninth Circuit. But even examining those cases, the factual distinctions become evident. *See Merrill*, 227 F.R.D. at 471 (involving emotional distress damages in racial discrimination claim brought under 42 U.S.C. § 1981

---

[4] Plaintiff has been seeing and treating with the provider referenced by City Defendants since before her incarceration (i.e., before her claims against City Defendants even became ripe).

against private business); *Owens*, 221 F.RD. at 659 (involving emotional damages in Title VII sex discrimination claim); *Fox*, 179 F.R.D. at 304 (involving emotional distress damages in connection to disability discrimination claim).

As City Defendants are likely aware given their citation to out-of-jurisdiction opinions, garden variety claims for emotional damages in the Ninth Circuit do not waive a party's right to privacy in their medical records. *See E.E.O.C. v. Serramonte*, 237 F.R.D. 220, 224 (N.D. Cal. 2006) (noting "delving into a plaintiff's medical or psychiatric records is even more invasive than conducting a medical or psychological examination"). Accordingly, Plaintiff respectfully moves this Court to deny the City Defendants' request and grant an order of protection regarding her private healthcare information.

3. **Discovery Regarding Plaintiff's Alleged Drug Use**: City Defendants raise this dispute as a backdoor argument tied to their denied defense regarding Plaintiff's guilt/innocence. (Doc. 145). Preliminarily, the issue of Plaintiff's alleged drug use is not relevant to her claim for relief/damages based on Defendants' failure to turn over *Brady* material. *See Estate of Diaz v. City of Anaheim,* 840 F.3d 592, 600 (9th Cir. 2016) (ordering a new trial where evidence of drug use was found of limited relevance to the plaintiff's §1983 claim, but exposed jury to "inflammatory testimony…of limited relevance…"). And Plaintiff has not been found guilty of a drug offense in over ten years (excluding the 2016 conviction which was overturned). As Plaintiff has argued exhaustively in other briefings, City Defendants continue to distort the nature of Plaintiff's claim and raise the issue of her "guilt" to distract from their (now) obvious failure to turn over *Brady* material in her 2016 criminal case. In other words, instead of arguing/discussing the merits of Plaintiff's claims, the City has adopted a new strategy: disparage Plaintiff, convert her civil rights case into a retrial of her criminal case, harass Plaintiff's counsel with subpoenas demanding their privileged work-product communications, and pester local media outlets who dared report on the City's misconduct related to this case. At this stage of the litigation, Plaintiff respectfully requests the Court deny the City Defendants' request for this immaterial information so the parties may focus on the substantive briefing related to the approaching dispositive motion deadline.

1  **4.** **Plaintiff's Request for Information from Chief Williams**: Chief Jeri Williams ("Chief Williams") is the chief executive of the City of Phoenix Police Department responsible for establishing departmental rules and policies. *See* Phoenix, Arizona, Municipal Code § 2-119(a). During her deposition, undersigned counsel asked Chief Williams about other investigations she is aware of regarding the City of Phoenix Police Department.[5] *See* **Exhibit 9 – Excerpt of Williams Deposition.** Undersigned counsel asked this question (and had related questions) because Plaintiff has brought a *Monell* claim against the City of Phoenix for policies or practices that resulted in a deprivation of her constitutional rights. *See* (Doc. 37). Plaintiff is entitled to inquire about other investigations into the City of Phoenix Police Department for potential constitutional violations which may support her own claims against the City.

Additionally, Plaintiff has a separate claim against Chief Williams. Plaintiff's question is therefore also appropriate to better understand Chief Williams' knowledge of investigations into the City of Phoenix Police Department for constitutional violations that may impact the department's integrity. If Chief Williams is unable to answer questions about these investigations because she is not aware of them, Plaintiff believes that further supports her argument the City's policies and/or training are deficient and directly lead to constitutional deprivations supporting liability under *Monell*.

DATED this 12th day of November, 2021.

                         BERKE LAW FIRM, PLLC

                         By   s/ Jody C. Corbett
                              Lori V. Berke
                              Jody C. Corbett
                              Attorneys for Defendants City of Phoenix,
                                 Chief Jeri Williams, Retired Chief Joseph
                                 Yahner and Anthony Armour

---

[5] It is no secret the Department of Justice has opened an investigation into the City of Phoenix Police Department for patterns and practices that may violate the United States Constitution.

**CERTIFICATE OF SERVICE**

I hereby certify that on November 12, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Benjamin L. Rundall
Abbie L. Godles
rundall@honorlawgroup.com
godles@honorlawgroup.com

Maxine S. Mak
Angela Lane
makm@mcao.maricopa.gov
lanea01@mcao.maricopa.gov

By:   s/ Jody C. Corbett

13