David J. Bodney (006065)
bodneyd@ballardspahr.com
Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone:   602.798.5400
Facsimile:   602.798.5595
*Attorney for Scripps Media, Inc.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Frances Salazar, individually,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>City of Phoenix, et. al.,<br><br>　　　　Defendants. | Case No. 2:19-CV-01188-PHX-SRB (ESW)<br><br>**NON-PARTY SCRIPPS MEDIA, INC.'S (1) SUR-REPLY IN OPPOSITION TO CITY DEFENDANTS' MOTION TO COMPEL AND (2) REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER** |

## I. INTRODUCTION

The City's reply in support of its motion to compel (the "Reply") amply demonstrates two things: First, the City cannot meet its burden to overcome the First Amendment privilege that protects ABC15's unpublished journalistic work product, and second, the City believes it is nevertheless justified in attempting to do so because ABC15 reported "negative news stories" about misconduct by government officials. Rather than explaining how the raw footage of ABC15's interviews with Ms. Salazar and her counsel are clearly relevant to an important issue in this case or showing that it exhausted all other methods of obtaining that information, the City resorts to hurling invective against ABC15 and mischaracterizing the well-settled law that renders its Subpoena unenforceable. Put simply, the Reply proves ABC15's point. The City's motion to compel should be denied, and ABC15's motion for a protective order and request for reimbursement of its attorneys' fees should be granted.

The timeline of this dispute speaks volumes. As the Court knows, this case arises from Ms. Salazar's 2013 arrest and 2016 conviction on drug charges, which was tainted by the State's failure to provide her defense team with information about lying and other misconduct by the arresting officer. After the charges were dropped, Ms. Salazar filed this lawsuit in February 2019. Ms. Salazar gave an interview to ABC15 in June 2020, and the station broadcast a news report including excerpts from that interview two months later. In February of this year, ABC15 began publishing a series of news reports that exposed how the Phoenix Police Department and Maricopa County Attorney's Office colluded to falsely charge and target protestors.[1] Shortly thereafter, on March 29, 2021, Defendants City of Phoenix, Chief Jeri Williams, Retired Chief Joseph Yahner and Retired Officer Anthony Armour (the "City") served ABC15 with a subpoena (the "Subpoena") to produce unpublished interviews ABC15 had conducted with the plaintiff in this case, Ms. Salazar,

---

[1] *See, e.g.,* Dave Biscobing, *Body camera footage shows Phoenix Police Department officers disparaging protesters*, ABC15 (Feb. 12, 2021), https://www.abc15.com/news/local-news/investigations/protest-arrests/body-camera-footage-shows-phoenix-police-department-officers-disparaging-protesters. *See generally, Politically Charged*, www.ABC15.com/protest.

2

and her counsel.[2] ABC15 promptly objected to the Subpoena on April 5, 2021, on the basis that the requested materials were protected by the journalist's privilege under applicable Ninth Circuit authority – specifically, *Shoen v. Shoen*, 48 F.3d 412 (9th Cir. 1995) ("*Shoen II*").[3] After some back-and-forth between the parties through early July 2021, the City seemingly dropped the matter.[4] Then, in August, the U.S. Department of Justice opened a sweeping pattern-or-practice civil rights investigation into the City of Phoenix and the Phoenix Police Department based on large part on ABC15's reporting.[5] Subsequently, on October 3, 2021, the City renewed its interest in the Subpoena and demanded a response from ABC15 in two days.[6] When ABC15 reiterated its position that the requested materials were protected from discovery by the journalist's privilege, the City filed the instant motion to compel.

The City's Reply, particularly in light of this timeline, only reinforces the inference that the Subpoena (and the City's aggressive attempts to enforce it, despite well-settled law rendering it unenforceable as a matter of law) is a retaliatory response to ABC15's reporting. In the Reply, the City falsely characterizes ABC15's reporting on an issue of public concern as an effort to influence this particular case.[7] Furthermore, Ms. Salazar noted in her October 25, 2021 deposition that she has also been interviewed by the *Phoenix New Times*.[8] However, there is no indication in the record that the City also subpoenaed

---

[2] *See* Declaration of David Bodney in support of the ABC15 Response (the "Bodney Decl.") ¶ 2.

[3] *See* Bodney Decl. ¶ 3.

[4] *See* Bodney Decl. ¶¶ 4-7.

[5] *See Justice Department Announces Investigation of the City of Phoenix and the Phoenix Police Department, United States Department of Justice* (Aug. 5, 2021), https://www.justice.gov/opa/pr/justice-department-announcesinvestigation-city-phoenix-and-phoenix-police-department.

[6] *See* Bodney Decl. ¶ 8.

[7] *See* Reply at 3 (asserting that ABC15's interview with Ms. Salazar was "used by [Ms. Salazar] and [ABC15] to create negative news stories about the City Defendants, likely in some part to attempt to influence the outcome of this case"); at 4 (arguing that ABC15's reporting has "been used as a sword against the City Defendants").

[8] An excerpt of the uncertified rough transcript of Ms. Salazar's deposition on October 25, 2021 is attached hereto as Exhibit A. *See* Ex. A at 2:5-12; *see also* Steven Hsieh, *The Cop's a Known Liar. No One Told Her. Now, She's Free From Prison*, Phoenix New Times

3

the *Phoenix New Times* for the unpublished portions of its interview with Ms. Salazar – rather, the City has targeted only ABC15. Given the City's insistence that Ms. Salazar's unpublished statements are "clearly relevant" to an important issue in this case (though, as shown below, they are not), the City's apparent lack of interest in this other known source for such statements undercuts the credibility of the City's purported need for ABC15's journalistic work product..

The City's motion to compel should be denied because it cannot meet its burden to overcome ABC15's assertion of journalist's privilege, and the Subpoena therefore is unenforceable as a matter of law. Furthermore, a protective order prohibiting future attempts to discover these materials is warranted, and the Court should award ABC15 its attorneys' fees incurred in responding to the City's meritless motion.

## II. THE CITY HAS NOT MET ITS BURDEN TO OVERCOME ABC15'S ASSERTION OF THE JOURNALIST'S PRIVILEGE.

### A. The City Still Has Not Identified an Important Issue in This Case to Which the Sought Evidence is "Clearly Relevant."

As ABC15 demonstrated in its Response in Opposition to the City's Motion to Compel ("Opp."), the City bears the burden of showing that the materials it seeks would be "clearly relevant to an important issue in the case." Opp. at 4 (quoting *Shoen II*, 48 F.3d at 416). In its Reply, the City repeats its conclusory statements that the recordings are "clearly relevant to Plaintiff's claims," but still fails to explain *how* the materials are relevant and to which *specific* important issues they relate. The closest the City comes to identifying a specific issue is to say that the materials are "clearly relevant to the **facts** in this case." Reply at 6. However, general relevance to "facts" is not the standard.

To support its argument regarding general relevance to "facts," the City analogizes to *Crowe v. City of San Diego*, 242 F. Supp. 2d 740 (S.D. Cal. 2003). There, the "clear relevance" element was met because the recording of a defendant's interview would provide the entire context of certain statements the plaintiffs claimed were defamatory. *See*

---

(Mar. 2, 2019), https://www.phoenixnewtimes.com/news/arizona-woman-freed-from-prison-because-of-cops-history-of-lies-11222176.

1  Reply at 9.  Because *Crowe* was a defamation case, the plaintiffs had to prove that the
2  defendant's *entire* statements, when considered in context, were defamatory as a matter of
3  law.  *See Crowe*, 242 F. Supp. 2d at 750 (explaining that a defamation defendant "is not
4  responsible for the subsequent editing of his interview – he is only responsible for his
5  comments in their full and complete form," so discovery of the entire interview tape is
6  "clearly relevant" to the "important issue" of whether the defendant actually committed
7  defamation).  Here, by contrast, the context of Ms. Salazar's statements *well after the*
8  *events at issue in this case* is neither legally necessary nor relevant for Ms. Salazar to prove
9  her constitutional claims nor for the City to prove its defenses.  In light of this important
10 distinction, the City's reliance on *Crowe* is misplaced.

11         The City also appears to argue that the requested materials satisfy the *Shoen* test
12 because they qualify as "relevant" under the Federal Rules of Evidence.  *See* Reply at 6.
13 However, "relevance" under the FRE is not the applicable standard to overcome the
14 journalist's privilege.  *Shoen* does not require the party seeking discovery to prove that the
15 materials are merely "relevant."  *Shoen* requires the City to show that the evidence is
16 ***clearly*** relevant ***to an important issue*** in this case.  *Shoen II*, 48 F.3d at 416.  This is a
17 significantly higher standard than relevance – and rightly so, because the FRE relevance
18 standard generally governs the admission of any type of evidence, while the *Shoen* factors
19 govern the ability of litigants to overcome a constitutional privilege and discover
20 journalistic work product protected by the First Amendment.  As an illustrative example,
21 evidence regarding a witness's credibility is often relevant under the FRE standard, but this
22 type of relevance is legally *insufficient* to satisfy the *Shoen* standard.  *See id.* at 418 ("[t]o
23 the extent the requested materials would demonstrate that [the interviewee] was less than
24 candid during his deposition, they do not relate to an important issue in this case.").  And
25 to the extent the City argues that the unpublished interview "could" provide facts not
26 otherwise provided via discovery in this case, Reply at 6, this also does not meet *Shoen*'s
27 requirement to show "actual relevance," because "a showing of potential relevance will not
28 suffice." *Shoen II*, 48 F.3d at 416.

5

Lastly, the City attempts to shift the burden to ABC15, complaining that ABC15 "has provided no avowal to the Court that the recordings do not contain relevant information" and arguing that ABC15 "has failed to demonstrate that the unedited recordings are not relevant." Reply at 7. Aside from the fact that, as explained above, simple relevance is not the required standard here, ***ABC15 does not bear <u>any</u> burden to demonstrate the materials are irrelevant***. *See Shoen v. Shoen*, 5 F.3d 1289, 1296 (9th Cir. 1993 ("*Shoen I*") ("Once the privilege is properly invoked, the burden shifts to the requesting party to demonstrate a sufficiently compelling need for the journalist's materials to overcome the privilege."). The *City* therefore has the burden to affirmatively prove that the requested materials are "clearly relevant" to an "important issue" in this case. *Shoen II*, 48 F.3d at 416. The City has not even come close to meeting its burden.

### B. The City Has Failed to Demonstrate that the Subpoenaed Materials Are Not Cumulative.

Attempting to meet its burden to show that the outtakes are not cumulative, the City theorizes that "there are likely statements in the [unpublished interview] recordings that were not provided to the City Defendants during discovery." Reply at 7. Such unadorned speculation is insufficient as a matter of law to meet this prong of the *Shoen* test. *See, e.g.*, *Jimenez v. City of Chicago*, No. C10-459MJP, 2010 U.S. Dist. LEXIS 122946, at *5 (W.D. Wash. Nov. 12, 2010) (rejecting motion to compel where, inter alia, defendants seeking discovery of plaintiff's communications with journalists had nothing indicating the materials contained anything different from evidence in the record).

Moreover, during her deposition, Ms. Salazar specifically denied that she said anything to ABC15 that she hadn't "already said at some point […] in court or in some hearing or with my attorneys." Ex. A at 12:5-19. This statement indicates that the unpublished recordings would be cumulative, and the City has not offered anything that "elevates this element of their current proof out of the realm of speculation." *Jimenez*, 2010 U.S. Dist. LEXIS 122946, at *5. Therefore, the City has not met its burden to prove that the unpublished interview recordings would not be cumulative.

6

### C. The City Has Not Exhausted All Reasonable Alternative Sources.

The City's Reply also demonstrates that it failed to exhaust alternative sources for the interview footage it seeks from ABC15. The City points to its deposition of Ms. Salazar, taken only one day before it filed the Reply, as an attempt to exhaust potential alternative sources for this information. That was not a good-faith attempt to meet this requirement for a number of reasons.

First, the obvious purpose of the exhaustion requirement is for parties to seek out alternative sources ***before*** subpoenaing journalists. Instead, the City issued the Subpoena to ABC15 ***seven months*** before deposing Ms. Salazar. Rather than looking elsewhere for the information (much less exhausting such efforts), the City went directly to ABC15 in clear defiance of this requirement.

Second, when the City finally did depose Ms. Salazar after filing its motion to compel, its counsel did not ask Ms. Salazar what she said in her interview about any particular relevant issue. Rather, counsel for the City asked specific questions regarding what ABC15 reporter David Biscobing asked, but only a few general questions regarding what Ms. Salazar said in response. *See, e.g.*, Ex. A at 3:7-13, 4:3-4.

The City asserts that it deposed only one other witness with first-hand knowledge of Ms. Salazar's interview: her former attorney, Christopher Doran (who also gave an interview to ABC15, the recording of which also is sought by the Subpoena). Reply at 8-9. Although the City now claims "it would have been impossible during Mr. Doran's deposition to ask him everything he talked about during the interview," *id.* at 8, the transcript shows that counsel for the City did not even bother to try, *id.* Ex. 8. Not only did counsel for the City fail to ask Mr. Doran a single question regarding anything he said in his interview with Mr. Biscobing, she also did not ask him any questions regarding what Ms. Salazar said in her interview, even though Mr. Doran testified he was present for that interview as well. *See id.* And, although Mr. Doran identified another eyewitness to Ms. Salazar's interview, *id.* at 117:4-6, the City has not disclosed any effort to depose her.

In sum, the City has not exhausted its opportunities to elicit testimony regarding the content of the interviews at issue from the two interview subjects it has deposed, let alone pursue additional witnesses identified as having relevant information. The City has altogether failed to meet its burden on this prong of the *Shoen* test as well.

### III.   ABC15'S CONDUCT IN A SEPARATE CASE HAS NO BEARING ON ITS PRIVILEGE CLAIM IN *THIS* CASE.

The City attempts in its Reply to make much of a prior case in which the City sought journalistic work product from ABC15, *Anderson v. City of Phoenix*, No. CV-16-03563-PHX-JJT, but the parties' course of dealing in a separate case, involving a different plaintiff, is entirely irrelevant to ABC15's privilege claim in this case. In fact, ABC15's journalist's privilege was *not* overcome in *Anderson*, and no court ever ordered ABC15 to produce any evidence in that case. Rather, ABC15 ***voluntarily*** published the requested materials on its website after ABC15 decided they were newsworthy.[9] *See* Reply, Ex. 4. The City has identified no precedent or principle that would cause ABC15's conduct in an entirely separate case to operate as a waiver of its First Amendment privilege in this case, nor could it. Editorial decisions regarding what is newsworthy and warrants publication by a news organization are not appropriate for court intervention, whether in the context of a motion to compel enforcement of a subpoena or otherwise. *See, e.g.*, *Preferred Comm'ns, Inc. v. Los Angeles*, 754 F.2d 1396, 1410 n.10 (9th Cir. 1985) ("Editorial judgment is entitled to First Amendment protection.").

### IV.   ABC15 HAS NOT WAIVED ITS FIRST AMENDMENT PRIVILEGE.

The City has been on notice of ABC15's assertion of journalist's privilege since last April. However, in the Reply, the City argues for the first time that ABC15 has waived the privilege.[10] The City claims ABC15 waived the privilege by interviewing the plaintiff and

---

[9] After ABC15 posted the footage of the entire Anderson interview on its website, and because of ABC15's concerns regarding protecting its copyright, the parties entered into a stipulated protective order allowing ABC15 to produce a copy of that interview without its station logo, which the court in that case approved. *See* Reply, Exs. 6 & 7.

[10] This Court need not consider this argument because it was raised for the first time in a reply brief. *See, e.g., Giunta v. City of Phx.*, No. CIV-07-1647-PHX-MHB, 2008 U.S. Dist. LEXIS 10156, at *6 (D. Ariz. Jan. 29, 2008) ("The general rule is that a party cannot raise a new issue for the first time in its reply brief."). Recognizing this issue, the Court issued

8

her counsel while this lawsuit was pending and then using portions of those interviews "in published news stories by Scripps that are critical of the City Defendants." Reply at 4. In other words, the City asserts that ABC15 waived its First Amendment privilege simply by engaging in journalism.

If accepted, the City's position would eviscerate any journalist's privilege. If the privilege were waived by interviewing one party in litigation or publishing a report that could be seen as helpful to one side or the other, there would be no privilege at all. Indeed, the constitutional interests protected by the privilege include avoiding "the threat of . . . judicial intrusion into the newsgathering and editorial process" and "the disadvantage of a journalist appearing to be an investigative arm of the judicial system or a research tool of government or of a private party." *Shoen II*, 48 F.3d at 416 (citation omitted).

The City's argument also finds no support in the case law. For example, a district court within the Ninth Circuit rejected a similar argument in *Michael v. Estate of Kovarbasich*, 2015 U.S. Dist. LEXIS 168901 (C.D. Cal. Dec. 11, 2015). In *Michael*, the court held that the journalist's privilege was *not* waived when the third-party journalist provided the same information to both parties, even if information still protected by the privilege may have been more favorable to one party. *Id*. at *14-15.

The cases the City cites are of no help to it, either. The City relies in part on *Ayala v. Ayers*, 668 F. Supp. 2d 1248 (S.D. Cal. 2009), where the court found an implied waiver of the journalist's privilege. *Ayala* is inapposite, however. In that death penalty habeas action, the government had subpoenaed a manuscript of a non-fiction book about the underlying murder case by a former investigator for the defense. *Id.* at 1249. The court held that the journalist's privilege applied but was waived because, years earlier, the author had provided a draft of the manuscript to the murder defendant's appellate counsel. *Id.* at 1250. Similarly unavailing is *Pinkard v. Johnson*, 118 F.R.D. 517 (M.D. Ala. 1987). There, the court ordered a newspaper reporter to testify regarding a conversation he had

---

an order on October 29, 2021, allowing ABC15 to file this sur-reply to respond to the City's waiver argument and to address other new evidence in the Reply.

9

1 with one of the defendants – a conversation about which he had previously given a
2 statement to plaintiff's counsel. *Id.* at 521-22. But the court denied defendants' motion to
3 compel, which the court characterized as a fishing expedition into journalists' records
4 relating to the underlying dispute. *Id.* at 519. The City is simply scrambling to find cases
5 of waiver, long after its subpoena of ABC15, without regard to whether they bear even the
6 remotest relevance to the factual circumstances here.

7 Here, by contrast, ABC15 provided neither the unedited interview footage nor any
8 statement regarding its contents to either party. The City attempts to plug this hole in its
9 argument by claiming that ABC15 "voluntarily disclos[ed] unedited video of its
10 interviews" to Ms. Salazar and her counsel. Reply at 3-4. But this contention is based on
11 Ms. Salazar's testimony that even the City admits was equivocal – that "she was sent a link
12 to the interview but she could not recall whether it was a link to the entire unedited
13 interview or to the published news story." *Id.* at 4. ABC15 did not provide access to the
14 unedited interview footage to Ms. Salazar, and will provide a sworn declaration to that
15 effect should the Court request it. But the privilege would not be waived even if ABC15
16 had allowed Ms. Salazar to view the recording. Showing Ms. Salazar footage *of her own*
17 *interview* would not provide any information she did not already have. Ms. Salazar did not
18 say she had a copy of the full interview recording, nor did the City's counsel ask if she did.

19 The City obviously does not like what ABC15 disclosed to the public. But ABC15's
20 airing of portions of its newsworthy interview with Ms. Salazar – and its reporting about
21 the misconduct by police and prosecutors that gave rise to this lawsuit – is fully protected
22 by the First Amendment and cannot amount to a waiver of the journalist's privilege. If it
23 decides to consider it, this Court should reject the City's belated and meritless assertion
24 that ABC15 waived the journalist's privilege.

25 **V.  THERE IS GOOD CAUSE FOR THE COURT TO ISSUE A PROTECTIVE ORDER PROHIBITING DISCOVERY OF ABC15'S JOURNALISTIC WORK PRODUCT.**
26

27 Pursuant to Federal Rule of Civil Procedure 26(c), there is "good cause" to issue a
28 protective order prohibiting discovery of ABC15's journalistic work product. The City has

utterly failed – despite multiple arguments (both in and out of court) over many months – to meet its legal burden to overcome ABC15's assertion of journalist's privilege. Because the City has failed to meet its burden, the Subpoena is unenforceable as a matter of law. It is wholly appropriate for the Court to enter an order prohibiting the City from discovering this information from ABC15, a third party. A protective order is necessary to protect ABC15 from further undue burden in having to respond to such discovery.

The City suggests that it would be inappropriate for the Court to preclude the City from "ever seeking any documents from Scripps again in this case or in any other case." Reply at 12. ABC15 has not requested anything so broad. The proposed protective order filed with the ABC15 Response (the "Proposed PO") would only apply to this case and would only prohibit discovery of the materials requested in the Subpoena. *See* Proposed PO (prohibiting Defendants "from discovering [the materials requested in the Subpoena] from ABC15"). If the Court concludes, as ABC15 urges, that the materials requested in the Subpoena are protected by the journalist's privilege and that the City has failed to overcome this privilege, the Proposed PO would be an appropriate exercise of this Court's authority to protect ABC15 from further demands to produce these privileged materials.

The City also mischaracterizes ABC15's argument regarding promises of confidentiality to sources. *See* Reply at 12. ABC15 simply noted in its Opposition that sometimes, during interviews, ABC15 will promise confidentiality to sources regarding particular topics. The practical reality that a journalist may promise confidentiality to a source regarding some topics but not others is one reason the First Amendment privilege applies to all unpublished materials, regardless of whether their source was promised confidentiality. *See Shoen I*, 5 F.3d at 1295 (compelled disclosure of non-confidential information harms the news media's ability to gather information by damaging confidential sources' trust in journalists' ability to maintain confidentiality).

## VI. THE COURT SHOULD ORDER THE CITY TO PAY ABC15'S REASONABLE EXPENSES INCURRED IN CONNECTION WITH ABC15'S MOTION FOR PROTECTIVE ORDER AND THE CITY'S MOTION TO COMPEL.

Rule 26(c)(3) of the Federal Rules of Civil Procedure provides that the fee-shifting provision in Rule 37(a)(5) applies to the award of expenses regarding a motion for protective order. Therefore, if ABC15's Motion for Protective Order is granted, the Court "must … after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5). None of the relevant exceptions applies. *See generally* Fed. R. Civ. P. 37(a)(5)(i)-(iii).

Rule 45(d)(1) also allows the Court to award attorneys' fees against a party that fails to comply with its duty to "take reasonable steps to avoid imposing undue burden or expense on a person subject to a subpoena." The City imposed an undue burden on ABC15 by requiring ABC15 to explain, and re-explain, its position multiple times over the course of many months. *See generally* Bodney Decl. ¶¶ 2-9. Even when the City finally deposed the plaintiff and one of her lawyers, it made no good-faith attempt to uncover the supposedly important evidence contained in plaintiff's interview with the station, long after this case was filed. In sum, this burden is particularly undue in light of the City's utter failure to satisfy the *Shoen* test. Therefore, under the applicable Federal Rules of Civil Procedure, the Court should award attorneys' fees to ABC15.

## VII. CONCLUSION

For the foregoing reasons, and for the reasons set forth in ABC15's Opposition, ABC15 respectfully requests that the Court (i) deny the City's Motion to Compel; (ii) issue a protective order prohibiting discovery of the materials requested in the Subpoena (in the form of the Proposed Protective Order); and (iii) order the City, its attorneys, or both, to pay ABC15's reasonable expenses, including attorneys' fees, incurred in opposing the City's Motion to Compel and advancing ABC15's Motion for Protective Order.

RESPECTFULLY SUBMITTED this 12th day of November, 2021.

BALLARD SPAHR LLP

By: /s/ David J. Bodney
David J. Bodney
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555

Matthew E. Kelley (admitted *pro hac vice*)
1909 K Street, NW, 12th Floor
Washington, DC 20006

*Attorneys for Scripps Media, Inc.*

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

**CERTIFICATE OF SERVICE**

I certify that on November 12, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants noted below:

Lori V. Berke
Jody C. Corbett
Berke Law Firm, PLLC
1601 N. 7th Street, Suite 360
Phoenix, Arizona 85006
*Attorneys for Defendants City of Phoenix, Chief Jeri Williams, Retired Chief Joseph Yahner and Anthony Armour*

Benjamin J. Rundall
Abbie L. Godles
Honor Law Group, PLLC
4450 S. Rural Road, Suite C-220
Tempe, Arizona 85282
*Attorneys for Plaintiff*

Maxine S. Mak
Maricopa County Attorneys Office
225 W. Madison St.
Phoenix, Arizona 85003
*Attorney for Defendant Elizabeth Lake*

Angela Dawn Lane
Maricopa County Attorney Civil Services Division
225 W. Madison St.
Phoenix, Arizona 85003
*Attorney for Defendant Elizabeth Lake*

/s/ Christina M. Kinsey