ALLISTER ADEL
MARICOPA COUNTY ATTORNEY

By:     MAXINE S. MAK (031158)
         ANGELA D. LANE (035963)
         Deputy County Attorneys
         makm@mcao.maricopa.gov
         lanea01@mcao.maricopa.gov

CIVIL SERVICES DIVISION
225 West Madison Street
Phoenix, Arizona 85003
Telephone (602) 506-8541
Facsimile (602) 506-4317
ca-civilmailbox@mcao.maricopa.gov
MCAO Firm No. 00032000

Attorneys for Defendant Lake

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Frances Salazar, individually,<br><br>Plaintiff,<br><br>v.<br><br>City of Phoenix, a political subdivision of the State of Arizona; Jeri Williams, Acting Chief of Police for the City of Phoenix Police Department; Joe Yahner, former Chief of Police for the City of Phoenix Police Department; Anthony Armour, a married man; Maricopa County, a political subdivision of the State of Arizona; Bill Montgomery; Elected head of the Maricopa County Attorney's Office; Elizabeth Lake, Prosecutor with the Maricopa County Attorney's Office; Black and White Companies or Entities I-X, and Jane and John Does 1-10,<br><br>Defendants. | No. CV19-01188-PHX-SRB (ESW)<br><br>**DEFENDANT ELIZABETH LAKE'S MOTION FOR SUMMARY JUDGMENT** |

Defendant Elizabeth Lake ("Lake") moves for summary judgment on Count One[1] of Plaintiff Frances Salazar's ("Salazar") Second Amended Complaint under Fed. R. Civ. P. 56 and LRCiv. 56.1 because Salazar's claim is barred by absolute prosecutorial immunity, or in the alternative, qualified immunity.

## I.      Introduction and facts.

Defendant Anthony Armour ("Armour") was on patrol with his partner on December 31, 2013, when he stopped a vehicle in which Salazar was a passenger. (Doc. 37 at 6.) After arresting the driver, Armour searched the vehicle and found a glass pipe with crack cocaine inside of it. (*Id.*) The driver of the vehicle denied knowledge of the glass pipe or its contents. (*Id*. at 7.) According to Armour, Salazar admitted that the substance inside the pipe was crack, recanted the statement, and claimed someone else left the pipe and contents in the car, but that she "take responsibility for it." (*Id.*) Salazar was arrested and subsequently charged with possession or use of narcotic drugs and possession of drug paraphernalia on January 3, 2014. (Defendant Elizabeth Lake's Separate Statement of Facts in support of Motion for Summary Judgement ("SSF") at 1.)

In April 2016, the Phoenix Police Department ("PPD") Professional Standards Bureau concluded an investigation into allegations about actions Armour took while on duty in November 2015. (SSF 2.) The PPD concluded that Armour unlawfully entered a residence, falsely arrested someone, provided a false report to a supervisor, provided false information in an incident report, and disobeyed a lawful order from a supervisor. (SSF 3.) The investigation and findings were codified in Professional Standards Bureau report PSB15-0126 (the "Report"). (*Id.*) The Report was not disclosed to the Maricopa County Attorney's Office ("MCAO"), or the prosecutor assigned to the case before Salazar's trial. (SSF 8-9.) When Lake was assigned to prosecute Salazar's case in May 2016, the Report was not disclosed to her. (SSF 5, 8-9.) Neither the MCAO nor Lake was aware of the Report before Armour testified at her trial in August 2016. (SSF 5, 8-9.) The jury found Salazar guilty on both counts on August 17. (SSF 6.)

---

[1]Count Three against the Maricopa County Attorney was dismissed on July 6, 2020. (Docs. 54.)

Salazar was sentenced on December 5. (*Id.*) Salazar's counsel of record, Christopher Doran, filed a notice of appeal. (SSF 7.) Twenty-three days after Salazar was sentenced, the PPD sent an email to Erlinda Parrish, a Legal Management Assistant at the MCAO, notifying her that Professional Standards Bureau reports were available for the MCAO's review. (SSF 8.) Ms. Parrish downloaded Professional Standards Bureau reports for several PPD officers, including the Report regarding Armour and routed them to the MCAO's Rule 15 Disclosure Database (R15DD) Committee for review. (SSF 9.) The Committee, which meets every two weeks, reviewed the Report and added Armour to the R15DD. (SSF 10.) On January 30, 2017, the MCAO notified all its prosecutors that Armour (among others) had been added to the R15DD. (SSF 11.)

When Lake received the MCAO's notification that Armour had been added to the R15DD, she was unsure how to proceed. (SSF 14.) While a notice of appeal had been filed, Lake did not believe that the appeal had been perfected or an appellate number assigned. (SSF 12.) Moreover, Salazar's case was not listed on the MCAO's active case list. (SSF 13.) Lake asked her Bureau Chief for guidance and was directed to contact the MCAO Appeals Division Bureau Chief, Diane Meloche. (SSF 14.)  The day after she learned of the Report, Lake emailed Ms. Meloche to determine whether it needed to be disclosed and if so, how to disclose it.  (SSF 15.) Two days after Lake emailed her, Ms. Meloche directed Lake to disclose the Report and file a State's Supplemental Motion to Disclose New Evidence Pursuant to Rule 15 and/or ER 3.8 with the trial court. (SSF 16.) Ms. Meloche was unsure whether Lake needed to file a motion for protective order to prevent dissemination of the Report outside of Salazar's criminal case per the MCAO's procedures and advised Lake that she would find out and let Lake know. (SSF 17.) On February 6, Ms. Meloche directed Lake to file a motion for protective order regarding the Report in accordance with the MCAO's practice. (SSF 18.) That same day, Lake directed her paralegal, Michael Torrez, to prepare a motion for protective order and to Bates stamp the Report for disclosure. (SSF 19.) As Ms. Meloche directed, Lake drafted the State's Supplemental Motion to Disclose New Evidence Pursuant to Rule 15 and/or ER 3.8. (SSF 20.) On February 21, Lake emailed her assistant Cheryl Mumford to file both motions and

to advise her and Mr. Torrez when the filing was complete so that Mr. Torrez could disclose the Report. (SSF 21.) Mr. Torrez was copied on Lake's February 21 email to Ms. Mumford and understood that he was to disclose the Report once Ms. Mumford confirmed the motions had been filed. (SSF 24.) The next day, Ms. Mumford confirmed via email to Lake and Mr. Torrez that the motions had been filed. (SSF 22.) Lake believed that Mr. Torrez disclosed the Report as she directed him to. (SSF 25.) While Lake did not follow-up with Mr. Torrez to confirm that the Report was disclosed, she hadn't had issues with Mr. Torrez not completing tasks that she assigned to him in the past and considered him to be an exemplary paralegal. (SSF 26.)

The Superior Court denied the State's Motion for a Protective Order on March 6 and a copy of the order denying the State's Motion for Protective Order was emailed to the MCAO and Mr. Doran, who was Salazar's attorney of record at the time. (SSF 27-28.) A couple of weeks after the Superior Court denied the State's motion, Mr. Doran filed a motion to withdraw as counsel, which was granted on April 19. (SSF 29.) About six months after Salazar filed her notice of appeal, Joseph Maziarz of the Arizona Attorney General's Office advised the MCAO that he was the attorney assigned to handle Salazar's appeal and asked the MCAO for any input they might have regarding the appeal. (SSF 30.) More than nine months after Lake directed Mr. Torrez to disclose the Report, Mr. Doran emailed Lake on December 13, and advised her that he did not receive a copy of the State's Supplemental Motion to Disclose New Evidence Pursuant to Rule 15 and/or ER 3.8." (SSF 31.) This was the first time Lake had been advised that Mr. Doran did not receive a copy of the Report. (SSF 32.) The next day, Lake emailed Mr. Torrez, asking him to find the email sent to defense counsel back in February. Mr. Torrez responded that he could not find the email. (SSF 33.)

## II.     Applicable law.

### A.     Summary judgment standard.

When the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," summary judgment must be granted. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23

(1986).  The moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.  The moving party's burden "may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the moving party meets this initial burden, the burden is shifted to the opposing party, who must demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

## III.     Salazar's claim is barred by absolute immunity.

### A.     Lake performed prosecutorial functions as an advocate for the State.

Salazar alleges that Lake suppressed the Report and is liable under § 1983 for violating her Fourteenth Amendment right to due process. Her claim fails, however, because Lake is "absolutely immune from liability under section 1983" for conduct that is "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); *see also*, *Kalina v. Fletcher*, 522 U.S. 118, 131 (1997) (prosecutors absolutely immune "when performing the traditional functions of an advocate"). "Absolute immunity also protects those functions in which the prosecutor acts as an "advocate for the State," even if they "involve actions … apart from the courtroom." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 912 (9th Cir. 2012), citing *Burns v. Reed*, 500 U.S.478, 486 (1991). Whether a prosecutor is entitled to absolute prosecutorial immunity depends "the nature of the function performed," not the identity of the actor. *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988)), *see also*, *Burns*, 500 U.S. at 486 (collecting functional analysis cases). Both the Supreme Court and the Ninth Circuit have held that in the § 1983 context, the disclosure or suppression of exculpatory evidence is a prosecutorial function that is entitled to absolute prosecutorial immunity. *Imbler*, 424 U.S. at 431-32 n. 34 (explaining that the deliberate

suppression of exculpatory evidence falls within "the legitimate exercise of prosecutorial discretion), *see also*, *Broam v. Bogan*, 320 F.3d 1023, 1030 (9th Cir. 2003) (while suppression of exculpatory evidence before and during trial, or after conviction is a due process violation, "[i]t is nonetheless, an exercise of the prosecutorial function and entitles the prosecutor to absolute immunity from a civil suit for damages.").

Salazar attempts to sidestep Lake's absolute immunity by asserting that Lake was not involved in the appeal when she learned of the Report and directed her paralegal to disclose the information. Salazar's reliance on the lack of personal participation in the post-trial proceedings is misplaced, however, because personal participation in the proceedings is not dispositive of whether absolute immunity applies. In *Van de Kamp v. Goldstein*, the plaintiff brought a § 1983 claim against the district attorney and his assistant, alleging "that they failed to adequately train and supervise deputy district attorneys on [*Giglio* obligations] … and … failed to create any system for the Deputy District Attorneys handling criminal cases to access information pertaining to … impeachment information." 555 U.S. 335, 344 (2009) (cleaned up). Assuming the supervising prosecutors had the obligation that the plaintiff claimed, the Supreme Court held that the supervisors would have absolute immunity because the plaintiff's claim focused on an "administrative obligation … directly connected with the conduct of a trial," fulfillment of which required "legal knowledge and the exercise of related discretion." 555 U.S. at 344. Using a hypothetical case where the plaintiff sued not only the trial prosecutor but the supervising prosecutor or the prosecutor's colleagues for failing to locate and disclose impeachment evidence, the Supreme Court explained that under *Imbler*, all the prosecutors would be absolutely immune because "[t]he prosecutors' behavior, taken individually or separately, would involve [p]reparation … for … trial … and would be intimately associated with the judicial phase of the criminal process because it concerned the evidence presented at trial." *Id.* at 345 (internal citation and quotation marks omitted). Thus, it is the function being performed, not the personal involvement in the proceedings that is dispositive.

Two cases, *Fields v. Wharrie*, 672 F.3d 505 (7th Cir. 2012) and *Warney v. Monroe Cnty.*, 587 F.3d 113 (2nd Cir. 2009) illustrate why Lake is entitled to absolute prosecutorial

immunity even though she acted post-conviction and was not personally involved in Salazar's appeal.

In *Fields*, the Seventh Circuit held that a defendant trial prosecutor was entitled to absolute immunity for suppressing exculpatory evidence even though he was not involved in the appeal or the plaintiff's retrial when the suppression occurred. *Fields*, 672 F.3d at 512, 516. In so holding, the Seventh Circuit overruled its prior decision in *Houston v. Partee*, 978 F.2d 362 (7th Cir. 1992), which held that personal involvement in the proceedings was required for absolute immunity to apply. Rejecting the assertion that absolute immunity ceases to apply to a prosecutor's actions once they cease to be directly involved in the appeal or retrial, the Seventh Circuit noted that the *Brady* obligation is "inherently prosecutorial in nature," because "*Brady* and *Giglio* violations breach a defendant's trial rights." *Id*. at 514. The Seventh Circuit concluded that if the trial prosecutor owes a continuing obligation to disclose *Brady* evidence to the criminal defendant after they are no longer a part of the trial team—which the Seventh Circuit held that they do—then suppression of evidence is a prosecutorial function and "[i]t follows that the immunity attendant to his prosecutorial disclosure obligation survives his departure from the courtroom as well." *Fields*, 672 F.3d at 515-16 (citing *Imbler*, 424 U.S. at 427 n. 25); *cf.*, *Kamienski v. Ford*, 844 Fed.Appx. 520 (3rd Cir. 2021) (holding that if defendant police officers were personally required to disclose *Brady* evidence to the criminal defendant during discovery, then the officers were entitled to absolute immunity). Although it is not binding, *Fields* is instructive and on point.

In *Warney*, the plaintiff's criminal conviction was vacated when prosecutors tested DNA evidence that eventually led to the plaintiff's exoneration. 587 F.3d at 118-119. The testing occurred while plaintiff was appealing the denial of his request for post-conviction DNA testing and while his habeas petition was pending. *Id*. The district court denied absolute immunity to the prosecutors, holding that they were acting as investigators when they had the DNA tested and withheld the results for 72 days. *Id*. at 120. The Second Circuit reversed and in granting absolute immunity to the prosecutors, explained that "[t]he advocacy function of a prosecutor includes seeking exoneration and confessing error to

1  correct an erroneous conviction. Thus prosecutors are under a continuing ethical obligation
2  to disclose exculpatory information discovered post-conviction. Any narrower conception
3  of a prosecutor's role would be truly alarming." *Id*., at 125. While *Warney* is not binding, it
4  illustrates how in the post-conviction context, the disclosure of evidence still falls within
5  scope of prosecutorial advocacy, and therefore, within the scope of absolute immunity.

6     Here, Lake is entitled to absolute prosecutorial immunity because her actions,
7  considered in context, were indisputably prosecutorial and undertaken in the role of an
8  advocate. Lake learned of the Report, not while engaged in traditional police work such
9  investigating to establish probable cause, but when she was notified by the MCAO that law
10  enforcement officers had been added to R15DD and directed to check her cases so that she
11  could fulfill prosecutorial disclosure obligations. (SSF 11.) Even if reviewing the MCAO's
12  notification that new officers had been added to the R15DD and checking those officers
13  against her case list could be classified as administrative, the purpose of her review was to
14  ensure that she fulfilled prosecutorial disclosure obligations connected to the judicial
15  process. After learning of the Report, Lake analyzed the Report's contents against the
16  evidence presented at Salazar's trial, which required legal analysis and discretion. *Cf.*
17  *Buckley*, 509 U.S. at 273 (evaluating evidence in preparation for trial is advocacy and
18  entitled to absolute immunity). (SSF 13-16.) Lake filed the motions regarding the Report as
19  counsel for the State. (SSF 23.) Lake directed Mr. Torrez to disclose the Report to fulfill
20  her duties as counsel for the State and her ethical duties as an officer of the court. (SSF 23.)
21  When Lake discovered, analyzed and directed disclosure, the judicial phase of Salazar's
22  criminal case was still underway. (SSF 7.) That Lake was not the attorney of record for the
23  State on the appeal is not transformative. Lake's status when disclosing the Report did not
24  convert a traditional prosecutorial function of disclosing evidence to the defense into
25  investigative police work or an administrative act unrelated to the judicial phase of Salazar's
26  criminal case. *See Cousin v. Small*, 325 F.3d 627, 636 (5th Cir. 2003) (holding that the "test
27  for absolute immunity is functional rather than temporal.") The Seventh Circuit's reasoning
28  that the immunity follows the duty—is sound; disclosing exculpatory evidence to the
   defendant is a prosecutorial function and such actions are entitled to absolute immunity.

Accordingly, if Lake had an ongoing prosecutorial duty to disclose the Report to Salazar even when she was not personally involved in the post-trial proceedings, then she is entitled to absolute immunity. Moreover, as *Warney* illustrates, when a prosecutor discloses evidence discovered post trial that might correct an erroneous conviction, they function as an advocate. This is exactly what Lake did. She disclosed the Report, which Salazar used to challenge her conviction. As an advocate who performed a traditional prosecutorial function, Lake is entitled to absolute prosecutorial immunity.

**B.    Application of absolute prosecutorial immunity furthers the Supreme Court's reasons for adopting absolute prosecutorial immunity.**

Applying absolute prosecutorial immunity in this case promotes a functioning prosecutor's office, which was why the Supreme Court adopted absolute immunity in the first instance. In *Imbler*, the Supreme Court explained that absolute prosecutorial immunity was necessary because concerns over litigation might deflect a prosecutor from the duties of their office to handle civil litigation brought by those they failed to convict and affect a prosecutor's decision making because the fear of litigation might cause the prosecutor to "shade his decisions instead of exercising the independence of judgment required by his public trust." *Imbler*, 424 U.S. at 423. The Court's first concern is moot at this point. But if a trial prosecutor could be held liable for disclosing potentially exculpatory evidence that she learns of post-conviction although she is not handling the appeal, she might be hesitant to disclose such evidence. *See id*., at 427 n. 25 ("The possibility of personal liability also could dampen the prosecutor's exercise of his duty to bring to the attention of the court or of proper officials all significant evidence suggestive of innocence or mitigation.") Applying absolute immunity to disclosure of potentially important evidence discovered post-conviction regardless of whether the trial prosecutor is personally involved in the post-conviction proceedings disincentivizes concealment and promotes a properly functioning criminal justice system. *See e.g.*, *Warney*, 587 F.3d at 125-126. Although the application of immunity might deny a plaintiff such as Salazar a monetary remedy, the "remedial powers of the trial judge, appellate review, and state and federal post-conviction collateral remedies" were available to Salazar to determine whether she received a fair trial. *Imbler*,

424 U.S. at 427. Denying Lake absolute immunity for functionally prosecutorial acts because she (or the MCAO) was not handling the direct appeal when she learned of the Report emphasizes identity or status—being on the prosecutorial team or attorney of record—over function. Doing so undermines the criminal process by "prevent[ing] the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system." *Imbler*, 424 U.S. at 427.

Although some courts have held that prosecutors were not entitled to absolute prosecutorial immunity for post-trial conduct, they are not controlling and not on point. For example, in *Spurlock v. Thompson*, 330 F.3d 791, 799 (6th Cir. 2003), the Sixth Circuit denied absolute immunity to a prosecutor who had threatened/coerced a witness to maintain false testimony after the adversarial proceedings had concluded for over a year. The Sixth Circuit noted that the adversarial proceedings had ended a year before the prosecutor threatened/coerced the witness, that the threats/coercion occurred during an administrative investigation which the prosecutor injected himself into and the prosecutor's actions were undertaken "to hinder the investigation into the wrongdoing [] and to defeat Plaintiffs' civil rights suit." *Spurlock*, 330 F.3d at 798. That case is inapposite. Here, Lake's actions were not undertaken to thwart a civil lawsuit, but a result of her relationship to Salazar's criminal case as the trial prosecutor.

In another example, *Yarris v. Cnty. of Delaware*, 465 F.3d 129 (3rd Cir. 2006), the Third Circuit held that the defendant prosecutors were not entitled to absolute immunity on claim of withholding evidence where the prosecutors had not demonstrated "personal involvement as the state's advocate" because the requests for the evidence started a month before the direct appeal was argued in front of the state supreme court and continued for months after the direct appeal had been decided. *Id.* at 137. The Third Circuit noted that under the facts of that case, the defendant prosecutors acted more like a "custodian of evidence" when they did not respond to the discovery requests. *Id*. Unlike *Yarris*, however, Salazar's Notice of Appeal had only been filed about two months earlier. When Lake acted, Salazar's case had proceeded beyond the trial phase, but was only in the beginning phases of a direct appeal. Lake's disclosure of evidence potentially relevant to whether a defendant

she prosecuted received a fair trial is advocacy connected to the proceedings, not acting as a custodian of records.

The one analogous case to this litigation is *Faulkner v. Cnty. of Kern*, No. 1:04-CV-05964 OWWTAG, 2006 WL 1795107 (E.D. Cal. June 28, 2006), where the sole basis for the district court's denial of absolute immunity was that the trial prosecutor was not counsel of record or involved in the appeal. But the district court in *Faulkner* followed the Seventh Circuit's personal involvement requirement articulated in *Houston*. Had *Faulkner* been decided after *Van de Kamp* and *Fields*, the result might have been different. In any event, *Faulkner* is not controlling precedent on whether absolute prosecutorial immunity applies here. Because a prosecutor is entitled to absolute immunity based on the function performed, and because Lake was acting as an advocate as an officer of the court when she disclosed the evidence, Lake's actions are protected by absolute immunity.

**IV.    Salazar's claim is barred because Lake is entitled to qualified immunity.**

"Prosecutors are entitled to qualified immunity, rather than absolute immunity, when they perform administrative functions, or 'investigative functions normally performed by a detective or police officer.'" *Genzler v. Longanbach*, 410 F.3d 630, 636 (9th Cir. 2005) (quoting *Kalina*, 522 U.S. at 126). "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). The Court may address either prong first. *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009). If Lake is not entitled to absolute prosecutorial immunity, the Court should grant Lake summary judgment on Count One because she did not violate Salazar's right to due process and the right Salazar alleges was not clearly established.

**A.    Lake did not violate Salazar's right to due process.**

Salazar must show that Lake acted with deliberate indifference in suppressing the Report. *See*, *Tennison v. City and Cnty. of S.F.*, 570 F.3d 1078, 1089 (2009) (holding that in the § 1983 context, the plaintiff must demonstrate "that police officers acted with

deliberate indifference to or reckless disregard for an accused's rights or for the truth in withholding evidence from prosecutors."), *see also*, *Daniels v. Williams*, 474 U.S. 327, 328 (1986) ("the Due Process Clause is simply not implicated by the negligent act of an official causing unintended loss of or injury to life, liberty, or property") and *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 834 ("[l]iability for negligently inflicted harm is categorically beneath the constitutional due process threshold"). "Deliberate indifference is the conscious or reckless disregard of the consequence of one's acts or omissions. It entails something more than negligence but is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Gantt v. Cnty. of L.A.*, 717 F.3d 702, 708 (9th Cir. 2013).

Lake was not deliberately indifferent. After learning of the Report, Lake reviewed its contents and ascertained whether she had to disclose the Report by asking her bureau chief and Ms. Meloche. (SSF 13-15.) Once she was directed to disclose the Report, Lake prepared motions regarding the Report as directed. (SSF 16-19.) Lake then directed her staff to complete the ministerial tasks of filing motions and sending the Report to Salazar's counsel. (SSF 19, 21.) Delegating clerical or repetitive legal tasks is not a constitutional violation, indeed, the Ninth Circuit accepts that it is necessary. *See Pincay v. Andrews*, 389 F.3d 853, 856 (9th Cir. 2004) ("In the modern world of legal practice, the delegation of repetitive legal tasks to paralegals has become a necessary fixture."). Lake's staff understood her directives. (SSF 19, 21-22, 24.) As directed, Ms. Mumford filed the motions and advised Lake and Mr. Torrez. (SSF 22.) Mr. Torrez understood that Lake had directed him to disclose the Report once Ms. Mumford confirmed the filings. (SSF 24.) There is no evidence that Lake delegated to an incompetent or unreliable individual. Lake had worked with Mr. Torrez before and never had a problem with him not completing tasks that she assigned to him. (SSF 26.) Viewing the facts in the light most favorable to Salazar, Lake might be faulted for not confirming with Mr. Torrez that he completed the disclosure as she directed. While failing to confirm with a reliable subordinate to see that an assigned task was completed might be classified as negligence, negligence doesn't implicate the due process clause. *Daniels*, 474 U.S. at 328. And even if we assume that

Mr. Torrez failed to send the disclosure as Lake directed, Mr. Torrez isn't a defendant and there is no respondeat superior liability in § 1983 claims. *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) ("Under § 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability."). Finally, the motions were filed with the court and Mr. Doran was copied on the motions. Even if Mr. Doran didn't receive the motions from the State because of an anomaly, the Superior Court automatically sent a copy of the Minute Entry denying the State's motion to Mr. Doran, so it was reasonable for Lake to assume that if Mr. Doran didn't receive the motions or the Report, that he would have contacted her. (SSF 28.) But even after the Minute Entry was sent to Mr. Doran, he did not tell Lake that he did not receive the Report until December 13. (SSF 32-33.) Lake acted reasonably and had no reason to believe that Salazar did not receive the Report. Because there is no evidence that Lake was deliberately indifferent, she is entitled to qualified immunity.

### 2.    It was not clearly established that Lake's actions were unconstitutional.

"[C]learly established law should not be defined at a high level of generality." *White v. Pauly*, 137 S.Ct. 548, 552 (2017) (per curiam) (quotations marks omitted). "To be clearly established, a right must be sufficiently clear "that every 'reasonable official would [have understood] that what he is doing violates that right.'" *Reichle v. Howards*, 566 U.S. 658, 664 (2012). To meet her burden on this element, Salazar must "identify a case where a[] [prosecutor] acting under similar circumstances as [Lake] was held to have violated the Fourt[eenth] Amendment." *Pauly*, 137 S. Ct. at 552. Citing to existing Circuit precedent is insufficient. *See Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 591 n. 8 (2018) ("We have not yet decided what precedents—other than our own—qualify as controlling authority for purposes of qualified immunity.") (citing *Reichle*, 566 U.S. 665–666); *see also, Rivas-Villegas v. Cortesluna*, 595 U.S. ___ at 5 (2021) ("to show a violation of clearly established law, [the plaintiff] must identify a case that put [the defendant] on notice that his specific conduct was unlawful. [Plaintiff] has not done so. Neither [the plaintiff] nor the Court of Appeals identified any Supreme Court case that addresses facts

like the ones at issue here.") Lake has not found any Supreme Court precedent holding her actions unconstitutional in the § 1983 context. And assuming arguendo that Circuit precedent can clearly establish law for the purposes of qualified immunity, Lake has not found any Ninth Circuit holding that a prosecutor acting in the same manner as her violated the law. *See*, *Rivas-Villegas*, 595 U.S. ___ at 5 (2021) (per curiam) (assuming Circuit precedent can clearly establish law for purposes of § 1983 analysis). Accordingly, Salazar cannot establish that Lake violated clearly established law and she is entitled to qualified immunity.

## V.    Conclusion.

For the foregoing reasons, the Court should grant summary judgment on Count One of Salazar's Second Amended Complaint because her claim is barred by absolute prosecutorial immunity and/or qualified immunity.

RESPECTFULLY SUBMITTED this 20th day of January 2022.

ALLISTER ADEL
MARICOPA COUNTY ATTORNEY

BY: /s/ Maxine S. Mak
    MAXINE S. MAK
    ANGELA LANE
    Deputy County Attorneys
    *Attorneys for Defendant Lake*

CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2022, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Honorable Susan R. Bolton
United States District Court
Sandra Day O'Connor U.S. Courthouse, Ste. 522
401 W. Washington St., SPC 50
Phoenix, AZ 85003-2153

Honorable Eileen S. Willett
Magistrate Judge

United States District Court
Sandra Day O'Connor U.S. Courthouse, Ste. 325
401 W. Washington St., SPC 13
Phoenix, AZ 85003-2120

Benjamin L. Rundall, Esq.
James M. Cool, Esq.
HONOR LAW GROUP, PLLC
4450 S. Rural Rd., Ste. C-220
Tempe, AZ 85282
rundall@aztrialattorneys.com
*Attorneys for Plaintiffs*

Lori V. Berke, Esq.
Jody C. Corbett, Esq.
BERKE LAW FIRM, PLLC
1601 N. 7th St., Ste. 360
Phoenix, AZ 85006
lori@berkelawfirm.com
jody@berkelawfirm.com
*Attorneys for Defendants City of Phoenix,*
*Chief Jeri Williams & Anthony Armour*

/s/ S. R.

S:\CIVIL\CIV\Matters\RM\2019\Salazar v. City of Phoenix RM19-0048\Pleadings\MSJ.docx