1  **HONOR LAW GROUP, PLLC**
   Benjamin L. Rundall, State Bar No. 031661
2  Abbie L. Godles, State Bar No. 036003
   4450 S. Rural Rd., Suite C-220
3  Tempe, AZ 85282
   (602) 282-0223
4  Attorney E-mail: rundall@honorlawgroup.com
                    godles@honorlawgroup.com
5
6  *Attorneys for Plaintiff*

7                UNITED STATES DISTRICT COURT
                   DISTRICT OF ARIZONA
8

9  Frances Salazar, individually,          Case No. CV-19-01188-PHX-SRB (ESW)

10                  Plaintiff,
11                                          **PLAINTIFF'S RESPONSE TO**
                                            **DEFENDANT ELIZABETH LAKE'S**
12       vs.                                **MOTION FOR SUMMARY**
                                            **JUDGMENT**
13 Phoenix, City of, et al.,

14                  Defendants.

15

16       While Frances Salazar ("Ms. Salazar" or "Plaintiff") remained behind bars as a legally

17 innocent woman, the prosecutor responsible for putting her there ("Defendant Lake")

18 inexplicably withheld post-conviction *Brady* material for 295 days which ultimately led to

19

20 Plaintiff's release from prison (and exoneration). Defendant Lake now moves to avoid civil

21 accountability for her misconduct by invoking the protections of both absolute and qualified

22 immunity. Neither, however, provide refuge from suit because Defendant Lake's actions were

23 "custodial" in nature and because she acted in reckless disregard of Ms. Salazar's

24

25 constitutional rights.

26

27 / / /

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**I.    Facts**

**A.  Plaintiff's Criminal Trial**

On August 10, 2016, Elizabeth Lake ("Defendant Lake"), a prosecutor working for the Maricopa County Attorney's Office ("MCAO"), tried Frances Salazar ("Plaintiff") in connection with two felony drug counts related to a 2013 arrest.[1] At trial, Defendant Lake's case was built around arresting officer Anthony Armour's testimony, who made statements inconsistent with his police report and told the jury that Plaintiff had "admitted" possession of drugs and drug paraphernalia to him during the 2013 arrest. (PSOF ¶ 1 & 2). Even though Plaintiff's criminal trial counsel Christopher Doran ("Attorney Doran") impeached Defendant Armour with his police report and produced a separate witness who admitted possession of the drugs, Defendant Lake argued in her closing to the jury:

> You have a number of witnesses, all of them have an incentive to lie…You have an officer who got on the stand and testified, I went, I confronted [Plaintiff] and she said I'll take responsibility for it. That's it. End of inquiry. There's no reason to engage in additional investigation.

(PSOF ¶ 3 & 4). Plaintiff was found guilty by the jury and her sentencing hearing was on December 5, 2016.[2] Despite numerous mitigating factors in a victimless crime, Ms. Salazar was sentenced to 6 years in prison.

---

[1] On December 31, 2013, Plaintiff was travelling as a passenger in a vehicle pulled over and searched by the Phoenix Police Department. During the search, one of the officers found a glass pipe with a rock of crack cocaine inside it. (PSOF ¶ 2).

[2] Plaintiff has included a timeline as **Exhibit 1** to her PSOF to help better track the pertinent dates relevant to this Court's review.

On December 28, 2016, only 23 days after Plaintiff's conviction and incarceration, the City of Phoenix Police Department ("PPD") disclosed findings of an investigation about Defendant Armour (the "PSB Report") confirming allegations of dishonesty that had never been disclosed to Defendant Lake or Plaintiff before trial.[3] (PSOF ¶ 5 & 10). On January 30, 2017, Defendant Lake was sent an email by her office advising her Defendant Armour had been placed on its internal Rule 15/Brady List by MCAO's Rule 15 Committee.[4] (PSOF ¶ 6). No party can credibly dispute the material disclosed by PPD to MCAO constitutes *Brady* evidence that would have been material to Plaintiff's defense at trial. (PSOF ¶ 10).[5]

**B. Defendant Lake's Actions Following MCAO's *Brady* Determination**

At the time Defendant Lake received the PSB Report (56 days following Plaintiff's conviction) and was made aware Defendant Armour had been added to the *Brady* list based on findings of dishonesty, her role as the prosecutor in Plaintiff's case had ended. (PSOF ¶ 11). Defendant Lake knew the PSB Report was material to Plaintiff's criminal case because

---

[3] The investigation was performed by PPD's Professional Standards Bureau and found that on November 4, 2015, Defendant Armour disobeyed the commands of a superior officer, lied in a police report, and provided false information during a police follow-up to a domestic violence call. *See* **Exhibit 8 to PSOF**.

[4] Rule 15 is a local term used by MCAO to describe its version of a *Brady* list, i.e., a list of officers that have committed misconduct which must be disclosed to criminal defendants and their counsel. MCAO makes these *Brady* determinations via its Rule 15 Committee. Defendant Lake is not a member of the Rule 15 committee and was not involved in the determination to put Defendant Armour on the *Brady* list. (PSOF ¶ 7).

[5] Indeed, in a subsequent memo created by Defendant Lake post-disclosure she acknowledged "given the officer's credibility problems not known at the time of the first trial, the state no longer had a reasonable likelihood of conviction." (PSOF ¶ 10).

she sent an email to a supervising attorney on January 31, 2017, noting "at trial and after trial, there was a great deal of argument and litigation about the veracity of [Defendant Armour's] testimony." (PSOF ¶ 12 & 13). Despite knowing Defendant Armour's credibility had been a central defense issue both at and after trial, Defendant Lake made no effort to directly contact Plaintiff's trial counsel about the PSB Report.[6] (PSOF ¶ 14 & 15). Indeed, at the time Defendant Lake was made aware of the PSB Report, she was not even certain if Plaintiff was still represented by counsel. (PSOF ¶ 21).

Nevertheless, on February 6, 2017, Defendant Lake sent an email to her staff and instructed them to prepare the disclosure and file two motions post-conviction even though the case was between jurisdictions: (1) State's Supplemental Motion to Disclose New Evidence Pursuant to Rule 15 and/or E.R 3.8 (the "Disclosure Motion"); and (2) State's Motion for Protective Order Pursuant to Rule 15 (the "Protective Order"). (PSOF ¶ 16) (DSOF ¶ 21).[7] Defendant Lake's one-sentence Disclosure Motion did not include the PSB Report as an attachment and never described the material other than to note "…the state has disclosed newly discovered evidence…pertaining to the state's witness, Officer Anthony Armour…" *Id.*[8] And in her Protective Order which tried to limit access to the PSB Report, Defendant

---

[6] In response to Request for Admissions, Defendant Lake agreed she did not have any direct communication with [Attorney Doran] between January 30, 2017, and his December 2017 email. (PSOF ¶ 14).

[7] At the time she was instructed to file these Motions, Defendant Lake did not believe doing so would be successful because the criminal case had ended. (PSOF ¶ 16).

[8] Plaintiff believes Defendant Lake was waiting to submit the material following a ruling on the Protective Order.

4

Lake ignored its evidentiary weight to Plaintiff's criminal defense, instead characterizing the information within as "personal and sensitive material relating to [Defendant Armour]." (PSOF ¶ 17).

Inexplicably, Attorney Doran was never mailed a hard copy of the Motions and never received them. (PSOF ¶ 18 & 19). Inexcusably, though Defendant Lake could not be certain if Plaintiff was represented by counsel, she did not mail or otherwise notify Plaintiff about the Motions or PSB Report (and did not attempt to locate Plaintiff's whereabouts in prison). (PSOF ¶ 22 & 24).[9] On March 6, 2017, the Maricopa County Superior Court appropriately rejected Defendant Lake's Protective Order noting the "matter is on appeal and the Court has no jurisdiction to enter further orders in this case." (PSOF ¶ 25). And even though Defendant Lake should have been aware of the name of Plaintiff's appellate counsel ("Tenni Martin") shortly following the Court's denial of her Protective Order (and at latest on March 23, 2017, when Attorney Doran indicated such in his Motion to Withdraw), she made no efforts to send the PSB Report to Ms. Martin. (PSOF ¶ 26).

So, in sum, while Plaintiff suffered the indignity of incarceration resulting from an unfair trial, Defendant Lake could not be bothered to confirm whether Plaintiff was represented by counsel, locate her address in prison so she could be sent a copy of the Motions, pick up a phone and call Attorney Doran to inform him of the PSB Report, or properly confirm

_____

[9] Plaintiff is not included directly on the mailing receipt of either motion even though her Notice of Appeal identified her ADOC mailing address. (PSOF ¶ 23).

5

with her staff the PSB Report had been disclosed to Plaintiff's appellate counsel after her Protective Order was denied by the Court.

### C. Plaintiff's Discovery of the PSB Report

Nearly a year following Plaintiff's conviction, Attorney Doran was ordered by the Maricopa County Superior Court to turn over a copy of his entire file to Ms. Salazar's appointed PCR counsel. (PSOF ¶ 27). In preparing a copy of the file, Attorney Doran's paralegal pulled Plaintiff's criminal docket history and first noticed the Protective Order filed by Defendant Lake post-sentencing. (PSOF ¶ 28). On December 13, 2017, Attorney Doran contacted Defendant Lake via email and requested she turn over any information in connection with the Disclosure Motion. (PSOF ¶ 29). Defendant Lake did not send the PSB Report to Attorney Doran, instead curtly noting "I can send it directly to new counsel of record." (PSOF ¶ 30). Attorney Doran persisted, warning Defendant Lake if the material was not disclosed he would "file an emergency motion with [the criminal trial judge] about exculpatory *Brady* material being withheld…" (PSOF ¶ 31).

Two minutes after this email from Attorney Doran, Defendant Lake, seemingly worried her failure to turn over material information had been uncovered, sent an email to her paralegal, Michael Torrez ("Paralegal Torrez"), asking "[c]an you find me the email we sent to defense in February [2017] with the original disclosure?…Idk [sic] if you remember this case but he is sort of a difficult defense attorney to work with." (PSOF ¶ 33). Nineteen minutes later, Paralegal Torrez responded "I cannot find it whatsoever." *Id.* Paralegal Torrez never

6

found that email because Defendant Lake never had an email sent to Attorney Doran disclosing the PSB Report.

Despite confirming Attorney Doran had never received a copy of the PSB Report which ultimately led to Ms. Salazar's exoneration, Defendant Lake refrained from any kind of dialogue with Attorney Doran until after July 10, 2018. On July 23, 2018, Defendant Lake filed a motion to dismiss (without prejudice) Plaintiff's criminal case "in the interest of justice." (PSOF ¶ 34). On July 26, 2018, the Maricopa County Superior Court vacated Plaintiff's judgment, and ordered her release from the Arizona Department of Corrections. (PSOF ¶ 35). In August 2018, nearly two years after the guilty verdict, Plaintiff was released from prison as a legally innocent woman. *Id.*

Even though Defendant Lake's only role in providing the PSB Report was a custodial one, her reckless disregard for Plaintiff's constitutional right to *Brady* material invariably (and needlessly) increased Plaintiff's suffering.

## II.   Legal Standard

When there is a genuine dispute of material facts "[a]t the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party…" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing Fed. R. Civ. P. 56(c)).  "A factual issue is 'genuine' if 'it may reasonably be resolved in favor of either party' and, therefore, requires the finder of fact to make 'a choice between the parties' differing versions of the truth at trial.'" *Rigau v. Pfizer Caribbean Corp.*, 525 F.Supp.2d 272, 276 (D.P.R. 2007), *quoting Depoutot v. Raffaelly*, 424 F.3d 112, 116 (1st Cir. 2005). "A fact is 'material' when its resolution might affect the

1    outcome of the suit under the governing law, and is determined by looking to the substantive

2    law." *Marquez v. United States*, 2015 WL 12672743, at *1 (C.D. Cal.), *citing Anderson v.*

3    *Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).[10]   The "court's ultimate inquiry is to determine

4    whether the 'specific facts' set forth by the nonmoving party, coupled with the undisputed

5    background or contextual facts, are such that a rational or reasonable jury might return a

6    verdict in its favor based on that evidence." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*

7    *Ass'n,* 809 F.2d 626, 631 (9th Cir. 1987) (citing *Anderson*, 477 U.S. at 254). When making

8    such a determination, "[i]nferences must…be drawn in the light most favorable to the

9    nonmoving party." *Id.* And, in the context of immunity issues, ambiguities must be resolved

10   in favor of the plaintiff. *Genzler v. Longanbach,* 410 F.3d 630, 642 (9th Cir. 2005).

### III.   Absolute Immunity

#### A.   Defendant Lake's actions were "custodial" in nature and cannot benefit from the protection of absolute immunity.

Defendant Lake was not entitled to absolute immunity when she moved to dismiss

Plaintiff's claims at the outset of this lawsuit, and the evidence discovered since then only

strengthens Plaintiff's argument Defendant Lake was acting in a non-advocacy role at the

time she failed to turn over the PSB Report. Although prosecutors are afforded broad

---

[10] Importantly, a party opposing summary judgment can show a material fact is genuinely disputed in a number of ways including: "(i) citing to materials in the records, (ii) showing the moving party's materials are inadequate to establish an absence of genuine dispute, or (iii) showing that the moving party lacks admissible evidence to support its factual position." *Marquez*, 2015 WL 12672743, at *2 (citing Fed. R. Civ. P. 56(c)(1)(A)-(B)).

protection under the law, "the actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor." *Genzler*, 410 F.3d at 636. Rather, the prosecutor "seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993). When the function is "administrative or investigative…only qualified immunity is available." *Botello v. Gammick*, 413 F.3d 971, 976 (9th Cir. 2005); *see also Broam v. Bogan*, 320 F.3d 1023, 1031 (9th Cir. 2003). And "[a]fter a conviction is obtained, the challenged action must be shown by the prosecutor to be part of the prosecutor's continuing personal involvement as the state's advocate in adversarial post-conviction proceedings to be encompassed within that prosecutor's absolute immunity from suit." *Yarris v. Cty. of Delaware*, 465 F.3d 129, 137 (3d Cir. 2006).

In requesting immunity, Defendant Lake circles back to arguments previously examined (and thoroughly addressed) by this Court surrounding a series of cases from the 7th Circuit in conjunction with the Supreme Court case *Van de Kamp v. Goldstein*, 555 U.S. 335 (2009). *See* (Doc. 36 at 7-12). Summarized, Defendant Lake argues *Van de Kamp* makes her absence from Plaintiff's appeal less relevant, that the 7th Circuit's holding in *Houston v. Partee* has been "overruled," and that case law from the 2nd Circuit (*Warney v. Monroe*) establishes Defendant Lake's role was *de facto* related to her role as an advocate because it involved disclosure of *Brady* material. These arguments fail because *Van de Kamp* notably involves facts/hypotheticals directly related to prosecutor participation in judicial proceedings

(and not post-conviction)[11], *Partee* is still good law[12], and Defendant Lake's interpretation of *Warney* is so broad it would upend the Supreme Court's holding that absolute immunity does not apply simply because the conduct was performed by a prosecutor. *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997).

As this Court previously highlighted, the essential inquiry for consideration regarding Defendant Lake's request for absolute immunity in the present matter is "the nature of *her role* in the process at the time she disclosed the [PSB] Report." (Doc. 36 at 12). Importantly, and contrary to Defendant Lake's argument, her absence (and the absence of MCAO) from Plaintiff's appeal after Plaintiff was convicted is dispositive to this inquiry. While *Brady* (and its progeny) certainly create prosecutorial considerations pre-trial, such considerations are limited post-conviction when the prosecutor has no direct involvement with the criminal defendant's case. *Spurlock v. Thompson*, 330 F.3d 791, 799 (6th Cir. 2003) ("…absolute immunity applies to the adversarial acts of prosecutors during post-conviction proceedings…where the prosecutor is personally involved…and continues his role as an

---

[11] Specifically considering whether supervisory prosecutors could be held responsible for a prosecutor's decision to withhold impeachment material pre-trial. *Van de Kamp*, 555 U.S. at 345.

[12] *Fields v. Wharrie, 672 F.3d 505, 510 (7th Cir. 2012)* ("*Wharrie I*") found participation on appellate team informative (not dispositive) as to prosecutor's function. Moreover, Defendant Lake conveniently ignores *Wharrie II*, wherein the 7th Circuit subsequently denied absolute immunity to the same prosecutor in both *Partee* and *Wharrie I* connected to a claim involving misconduct that occurred prior to the prosecutor's role as an advocate preparing for trial began. *Fields v. Wharrie*, 740 F.3d 1107, 1111 (7th Cir. 2014) ("*Wharrie II*").

10

advocate," but "where the role as advocate…has concluded, absolute immunity does not apply.").[13] Indeed, "a prosecutor acting merely as a custodian of evidence after conviction serves the same non-adversarial function as police officers, medical examiners, and other clerical state employees and—just as with certain police investigative work—it is neither appropriate nor justifiable that, for the same act, [absolute] immunity should protect the one and not the other[s]." *Yarris*, 465 F.3d at 138, *quoting Buckley,* 509 U.S. at 273 (internal quotations omitted).

Plaintiff believes *Faulkner* and *Yarris* illuminate the limits of immunity as it applies to Defendant Lake's role in Plaintiff's prosecution. In *Faulkner v. Cty. of Kern,* 2006 WL 1795107 (E.D. Cal. June 28, 2006), for example, a prosecutor discovered impeachment material post-conviction helpful to a convicted defendant's case. The material was discovered months following the defendant's conviction, but after the defendant had filed a notice of appeal. *Id.* at 27. Even though the prosecutor was not involved in the appeal, he never disclosed the material directly to the defendant's appellate lawyer. *Id.* at 27-28. In examining the prosecutor's failure, the district court succinctly noted "he was no longer prosecuting the case and absolute immunity would not apply to this particular conduct." *Id.*

Similarly, in *Yarris*, prosecutors received requests from an incarcerated defendant post-conviction to turn over certain information for DNA examination (and used at trial to

---

[13] *See also Carter v. Burch,* 34 F.3d 257, 263 (4th Cir. 1994); *Long v. Satz*, 181 F.3d 1275, 1277-79 (11th Cir. 1999).

1
2
3
4
5
6
7
8
convict him of rape and murder). 465 F.3d at 132. Even though the trial prosecutors did not participate as counsel in the appeal, they allowed some of the information to be destroyed and withheld other information from the incarcerated defendant. *Id.* Ultimately, the incarcerated defendant was exonerated using DNA evidence. *Id.* at 132-133. In denying the prosecutors' request for absolute immunity based on withholding evidence post-conviction, the 3rd Circuit noted the prosecutors' role was "custodial" and did not constitute advocacy.

9
10
11
12
13
14
15
16
17
18
19
20
21
Like the prosecutors in *Faulkner* and *Yarris*, here the evidence confirms Defendant Lake's role post-conviction was "custodial," and not advocacy. Indeed, Defendant Lake did not make a determination the PSB Report constituted *Brady* material, did not participate as counsel in Plaintiff's appeal, and was instructed to provide the information to Plaintiff (or Plaintiff's counsel) by a supervising attorney. In other words, like the prosecutors in *Faulkner* and *Yarris,* Defendant Lake's role was to supply information in her possession as a keeper of that information, not determine its impact on a trial she had already won. Despite several opportunities to do so after being notified about the PSB Report, Defendant Lake failed in this function repeatedly for 295 days, never turning the information over to Plaintiff, Plaintiff's trial counsel Attorney Doran, or Plaintiff's appellate counsel.

22
23
24
**B.**   **Shielding Defendant Lake with Absolute Immunity would upend the Supreme Court's functional analysis and afford prosecutors immunity because they are prosecutors.**

25
26
27
Defendant Lake warns that prosecutors such as herself will be disincentivized to turn over *Brady* information post-conviction if she is not provided the shelter of absolute

28

immunity.[14] Yet, the Supreme Court's holdings make clear "the prosecutor's role as an advocate is not grounded in any special esteem for those who perform these functions, and certainly not from a desire to shield abuses of office, but because any lesser degree of immunity could impair the judicial process itself." *Kalina* 522 U.S. at 127, *quoting Malley v. Briggs*, 475 U.S. 335, 342 (1986). "Judicial process" is the key axiom of this advisal, which is why the Supreme Court also adopted a categorical analysis to weigh the prosecutor's role at the time the conduct occurs to determine if it is "intimately associated with the judicial phase of the criminal process" such that it constituted advocacy. *Imbler v. Pachtman*, 424 U.S. 409, 430 (1997).

This is precisely the situation examined in in *Partee,* where prosecutors became aware of exculpatory *Brady* evidence regarding criminal defendants convicted of participating in a gang-related drive-by shooting/killing post-conviction. *Houston v. Partee*, 978 F.2d 362, 363 (7th Cir. 1992). In reaching its decision immunity did not apply, the 7th Circuit found any other conclusion would result in absolute immunity that attaches at trial and "continues indefinitely" in circumvention of the functionary analysis required when reviewing claims of absolute immunity. *Id.*

So, setting aside the slippery slope implied by Defendant Lake, the real harm posed by extending absolute immunity to acts outside of the "judicial process" would be to further

---

[14] Impliedly, Defendant Lake does not fear ethical reprisal for such suppression under ER 3.8, Ariz. R. Prof'l. Cond.

shelter prosecutorial misconduct completely unrelated to the prosecutor's role as an advocate. Indeed, according to a recent report by the National Registry of Exonerations, prosecutor misconduct in part based on concealing exculpatory evidence and misconduct at trial contributed to 30% of 2,400 exonerations examined. *See* Samuel R. Gross et al., *Government Misconduct and Convicting the Innocent: The Role of Prosecutors, Police and Other Law Enforcement*, The Nat'l Registry of Exonerations 1, 12 (Sept. 1, 2020), https://www.law.umich.edu/special/exoneration/Documents/Government_Misconduct_and_Convicting_the_Innocent.pdf. While this significant rate of misconduct may be tolerated to protect other ethical prosecutors from fear of reprisal when exercising discretion in criminal cases, it should not be tolerated when the prosecutor is performing a function unconnected to her role as an advocate in the "judicial process." *See Collins v. Cty. of Alameda*, No. 20-CV-05477-EMC, 2021 WL 254262, at *6 (N.D. Cal. Jan. 26, 2021) (reasserting absolute immunity does not apply "simply because a prosecutor uses her legal knowledge or acts in her capacity as an attorney").

## IV.   Qualified Immunity

"Qualified immunity affords limited protection to public officials faced with liability under 42 U.S.C. § 1983, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Shafer v. Cnty of Santa Barbara*, 868 F.3d 1110, 1115 (9th Cir. 2017), *quoting Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The immunity balances "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment,

distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. Importantly, officials are therefore only protected from suit when they "make a *reasonable* mistake of law or fact." *Lacey v. Maricopa County*, 693 F.3d 896, 915 (9th Cir. 2012) (emphasis added).

As such, prosecutors like Defendant Lake are not entitled to qualified immunity if "(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 138 S.Ct. 577, 580 (2018), *quoting Reichle v. Howards*, 566 U.S. 658, 664 (2012). The Court may address either prong first. *Pearson*, 555 U.S. at 230-32. Importantly, however, where "entitlement to qualified immunity depends on the resolution of disputed issues of fact in their favor, and against the non-moving party, summary judgment is not appropriate." *Wilkins v. City of Oakland*, 350 F. 3d 949, 956 (9th Cir. 2003); *see also Jeffers v. Gomez*, 267 F.3d 895, 903 (9th Cir. 2001) (holding "where disputed facts exist, however, we can determine whether the denial of qualified immunity was appropriate by assuming that the version of the material facts asserted by the non-moving party is correct.").

### A.    Defendant Lake violated Plaintiff's Due Process Rights

Plaintiff agrees with Defendant Lake that a prosecutor does not enjoy qualified immunity when they "acted with deliberate indifference or reckless disregard for an accused's rights or for the truth in withholding evidence from prosecutors." *Tennison v. City & Cty. of San Francisco*, 570 F.3d 1078, 1089 (9th Cir. 2009). Notably, however, Defendant Lake over-emphasizes deliberate indifference as the appropriate standard when *Tennison* applied "a

reckless indifference standard to due process claims because the decision whether to disclose or withhold exculpatory evidence is a situation in which 'actual deliberation is practical.'" *Id.*, *quoting Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008).[15] "Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's rights, or the defendant acts in the face of a perceived risk that his actions will violate the plaintiff's rights under federal law." *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005), *citing* Model Civ. Jury Instr. 9th Cir. 7.5 (2004) (used for punitive damages assessments in due process claims).

Turning again to *Faulkner*, even though the Court denied absolute immunity to the prosecutor, it examined his non-advocacy conduct under the recklessness standard described above. 2006 WL 1795107, at *34-35. Though the prosecutor failed to turn over the information directly to Plaintiff's appellate lawyer it was undisputed he turned the *Brady* material over directly to Plaintiff's trial counsel. *Id.* As the Court appropriately recognized, that could not be considered an "unreasonable or intentionally deficient method of disclosure" for the purposes of a due process claim. *Id.*

Unlike *Faulkner*, here Defendant Lake did not disclose the *Brady* material to Plaintiff's lawyers directly, instead filing motions post-sentencing (and while between jurisdictions) that did not attach the PSB Report:

---

[15] Explaining "[w]here state officials have the opportunity to deliberate various alternatives prior to selecting a course of conduct, such action violates due process if it is done recklessly." *Id., citing Amrine v. Brooks*, 522 F.3d 823 (8th Cir. 2008).

Q. When you file the [protective order] with the court, do you actually attach the *Brady* material itself?

A. No.

Q: So the only way that it would have been transmitted to Mr. Doran, if it was, would have been in the form of an email. Right?

…

A. Yes.

*See* **Ex. 2 to PSOF at 110:5–14.** No such email exists. And, even after the Protective Order was denied for lack of jurisdiction, Defendant Lake made no effort to send the material to Plaintiff (or Attorney Doran).[16] Even worse, Defendant Lake seemingly acknowledged during her deposition she was not even certain Plaintiff was represented by counsel at the time the PSB Report was uncovered:

Q. So am I correct in hearing you say that at the time you instructed Michael Torrez to e-mail the *Brady* materials to Chris Doran, you were not clear whether Chris Doran had withdrawn from the case?

A. Correct.

Q: You thought it was possible he was no longer counsel?

A. Correct.

Q. And if he was no longer counsel for Ms. Salazar, he might not be checking the online docket for the case?

A. I don't – I have no idea what Mr. Doran's practice is.

Q. Sure. But he – if a court – an attorney was no longer involved in a case, you wouldn't reasonably expect him to still be checking the docket, would you?

A. I've never been in private criminal practice. I don't know.

Q. Fair enough. So you didn't know if he'd be checking the docket. Is that fair?

A. Correct.

Q. Because you don't know if he – at that time, you didn't know if he still had responsibilities in the case?

---

[16] Defendant Lake was also aware of the identify of Plaintiff's appellate lawyer at latest on March 23, 2017, when Attorney Doran clearly noted Ms. Martin's appointment in his Motion to Withdraw (i.e., a maximum of 17 days following the Superior Court's denial of her Protective Order), yet admitted during her deposition to taking no actions to send the PSB Report to Ms. Martin. (PSOF ¶ 26).

17

A. Correct.

*See* **Ex. 2 to PSOF at 113:20–114:17.**[17] This is important because ER 3.8(d), Ariz. R. Prof'l. Cond. specifically requires:

> When a prosecutor knows of new, credible, and material evidence creating a reasonable likelihood that a convicted defendant did not commit an offense of which the defendant was convicted, the prosecutor ***shall***:
>
> (1) ***promptly disclose that evidence*** to the court in which the defendant was convicted and to the corresponding prosecutorial authority, and to defendant's counsel or, ***if defendant is not represented, the defendant and the indigent defense appointing authority in the jurisdiction***…

(emphasis added).

It is not possible for Defendant Lake to have been unaware of the requirements of ER 3.8(d) because she cites the rule in her Protective Order. *See* **Ex. 1 to DSOF at LAKE000558–000560.** Yet, despite her ignorance of Plaintiff's representation status at the time the PSB Report was uncovered, Defendant Lake made no effort to locate Plaintiff or send the PSB Report directly to Plaintiff (or an indigent defense appointing authority such as Maricopa County's Public Defense Services.) *See* **Ex. 2 to PSOF at 114:18–115:17.** So, while Defendant Lake points fingers at MCAO staff and Attorney Doran[18], her failure to even

---

[17] Note that Defendant Lake denied Plaintiff's question on this point in RFA responses, but during her deposition made statements confirming she did not understand the status of Plaintiff's representation at the time she received the PSB Report and filed the Disclosure Motin and Protective Order. (PSOF ¶ 21 & 22).

[18] Attorney Doran denies he received the court's order denying Defendant Lake's protective order. Nevertheless, even if Attorney Doran received the notice (which only would have advised him of new "personal and sensitive material relating to [Defendant Armour]"), it would not obviate Defendant Lake's own failures which caused Plaintiff's harm.

confirm Plaintiff's representation status before filing her motions demonstrate acts/omissions creating an obvious (and unnecessary) risk of violating Plaintiff's rights to *Brady* material under federal law.

  **B.**  **Defendant Lake's violation of Plaintiff's Due Process Rights was clearly established.**

   Plaintiff is perplexed Defendant Lake—a career prosecutor—argues there is no Supreme Court case that clearly establishes a prosecutor must disclose *Brady* material.[19] *Brady v. Maryland*, 373 U.S. 83 (1963); *United States v. Giglio*, 405 U.S. 150 (1972). But, even taking Defendant Lake's argument at face value, she is mistaken only Supreme Court precedent can clearly establish law. To determine whether a right is clearly established this Court should look at whether the contours of the law "were 'sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Mattos v. Agarano*, 661 F.3d 433, 442 (9th Cir. 2011), *quoting Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2083 (2011). The examination should begin by looking "for 'cases of controlling authority ***in [the plaintiff's] jurisdiction*** at the time' or 'a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful.'" *Kramer v. Cullinan*, 878 F.3d 1156, 1163–64 (9th Cir. 2018), *quoting Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (emphasis added). The analysis applies even

---

[19] Defendant Lake's confusion is better understood in light of her limited training on prosecutorial ethics and acknowledgement even County Attorney Allister Adel confused the requirements of *Brady*. (PSOF ¶ 9 & 10).

when the official is dealing with "novel factual circumstances," and much more so in the context of Fourth Amendment cases, "where the constitutional standard—reasonableness—is always a very fact specific inquiry." *Id.*, *quoting Hope v. Pelzer*, 536 U.S. 730, 741 (2002). In some cases, "notwithstanding the absence of direct precedent, the law may be…clearly established." *Deorle v. Rutherford*, 272 F.3d. 1272, 1286 (9th Cir. 2001). And, even "in the absence of binding precedent, a court should look to whatever decisional law is available to ascertain whether the law is clearly established." *Capoeman v. Reed*, 754 F.2d 1512, 1514 (9th Cir. 1985). "Otherwise, [officials] would escape responsibility for the most egregious forms of conduct simply because there was no case on all fours prohibiting that particular manifestation of unconstitutional conduct." *Id.*

Several cases previously cited in the briefing put Defendant Lake on notice failing to adequately disclose *Brady* material could result in a constitutional deprivation.

## V.   Conclusion

Defendant Lake should not enjoy absolute immunity for actions that were "custodial" and non-advocacy in nature. Similarly, Defendant Lake's request for qualified immunity should be denied because the evidence demonstrates she acted indifferently or in reckless disregard to Plaintiff's rights (and in a way that created a realized risk Plaintiff's rights would be violated). Accordingly, Plaintiff respectfully requests Defendant Lake's motion for summary judgment be denied.

/ / /

RESPECTFULLY SUBMITTED this 21st day of February, 2022.


                                    **HONOR LAW GROUP, PLLC**

                              By /s/ *Benjamin L. Rundall*
                                    Benjamin L. Rundall, Esq.
                                    Abbie L. Godles, Esq.
                                    Honor Law Group, PLLC
                                    4450 S. Rural Rd., Suite C-220
                                    Tempe, AZ 85282
                                    *Attorneys for Plaintiff*


                        CERTIFICATE OF SERVICE

        I hereby certify that on February 21, 2022, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and transmittal of a notice of Electronic Filing to the following CM/ECF registrants:

Honorable Susan R. Bolton
United States District Court
Sandra Day O'Connor U.S. Courthouse, Ste. 522
401 W. Washington St., SPC 50
Phoenix, AZ 85003-2153

Honorable Eileen S. Willett
United States District Court
Sandra Day O'Connor U.S. Courthouse, Ste. 325
401 W. Washington St., SPC 13
Phoenix, AZ 85003-2153

Maxine S. Mak, Esq.
Angela Lane, Esq.
Maricopa County Attorney's Office – Civil Division
222 N. Central Ave., Suite 1100
Phoenix, AZ 85004
*Attorneys for Elizabeth Lake*

Lori V. Berke, Esq.
Jody C. Corbett, Esq.
Berke Law Firm, PLLC
1601 N. 7th St., Suite 360
Phoenix, AZ 85006
*Attorneys for City Defendants*

*/s/ ALG*