Lori V. Berke (#015628)
Jody C. Corbett (#019718)
**BERKE LAW FIRM, PLLC**
1601 N. 7th Street, Suite 360
Phoenix, AZ 85006
Phone: (602) 254-8800
Fax: (602) 254-8808
lori@berkelawfirm.com
jody@berkelawfirm.com
Attorneys for Defendants City of Phoenix,
    Chief Jeri Williams, retired Chief Joseph
    Yahner, and Officer Anthony Armour

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Frances Salazar, individually,<br><br>      Plaintiff,<br><br>vs.<br><br>City of Phoenix, et al.,<br><br>      Defendants. | Case No. 2:19-cv-01188-PHX-SRB (ESW)<br><br>**CITY DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>   **(Oral Argument Requested)** |

Defendants City of Phoenix, Chief Jeri Williams, retired Chief Joseph Yahner, and retired Officer Anthony Armour (collectively "City Defendants"), through undersigned counsel, file their Reply in support of their Motion for Summary Judgment on Plaintiff Frances Salazar's ("Plaintiff") claims against them, and urge the Court to grant it.

Rather than providing the Court with any admissible evidence establishing a genuine issue of material fact as required by Fed. R. Civ. P. 56, Plaintiff relies on mostly inadmissible evidence and devotes most of her thirty-six page Response to arguing irrelevant issues and failing to demonstrate with controlling authority that the City Defendants violated her constitutional rights, which is her burden to prove.

1

I.    **PLAINTIFF HAS FAILED TO DEMONSTRATE THE EXISTENCE OF ANY GENUINE ISSUES OF MATERIAL FACT THAT WOULD PRECLUDE SUMMARY JUDGMENT.**

   A.    **Plaintiff Does Not Dispute the Relevant Material Facts with Admissible Evidence.**

   In her Controverting Statement to the City Defendants' Statement of Facts, Plaintiff only purports to dispute, in whole or in part, 36 of the City Defendants' 177 statements of fact.  However, Plaintiff only cites to admissible evidence to dispute 12 of these paragraphs.  (PCSOF ¶¶ 14, 38, 40, 54, 86, 107, 121, 142, 144, 145, 148, 149).  However, the disputes as to those 12 paragraphs are either not material such that they would preclude summary judgment, or the cited evidence does not support Plaintiff's claimed dispute of the fact.  For example, Plaintiff purports to dispute paragraph 14, which is Officer Armour's and Officer Backhaus' version of events during their traffic stop of Plaintiff—they claim Plaintiff did not provide her identification to them.  However, in the very next paragraph (15), the City Defendants state that Plaintiff claims she did provide her identification to the officer.  The City Defendants have provided the Officers' version of events simply for context and agree that the Court must consider the evidence in the light most favorable to Plaintiff.  Thus, this dispute is not material to Plaintiff's claims in this case.  Similarly, the City Defendants provide evidence that is contrary to Plaintiff's deposition testimony that she has been clean from all illicit drugs since 2007, but again this dispute is not material to the claims in this case.  (PCSOF ¶¶ 38-40; see also similar issues with 41-42, 43-35).

   Plaintiff purports to dispute the fact in paragraph 107 that "The Phoenix Police Department relies on the prosecuting agencies to provide it guidance on what information needs to be provided to them for evaluating potential Brady information" by citing to several Operations Orders and the PSB Manual.  (PCSOF ¶ 107).  However, Plaintiff's assertion that the Phoenix Police Department sets its own internal Brady policy and maintains a legal unit as demonstrated in those cited documents does not create a dispute of the fact that the Phoenix Police Department relies on prosecuting agencies to provide it guidance.  Plaintiff also purports to dispute paragraph 121—that the decision regarding whether an officer should be

2

placed on a <u>Brady</u> list is made by prosecutors, not police officials, by citing to the Phoenix Police Department's Brady Flow Chart and policies. However, none of the cited documents establish that the decision whether a police officer should be placed on a <u>Brady</u> list is made by anyone other than the prosecuting agencies. (PCOSF ¶ 121). Plaintiff also purports to dispute paragraphs 123-124 that in early 2020, MCAO "instructed" the Phoenix Police Department to adjust the timing of when it forwarded PSB investigations to MCAO. Plaintiff objects on the grounds of hearsay and claims that letters from MCAO (for which Plaintiff has provided no authentication or foundation) do not contain those "instructions." (PCSOF ¶¶ 123-124). First, the City Defendants do not claim that any letter from MCAO contains an instruction regarding timing. Thus, Plaintiff's argument that the letters from MCAO are not instructions is irrelevant. Assistant Chief Martos states in his Declaration that MCAO instructed the Phoenix Police Department to adjust the timing. Plaintiff's hearsay objection lacks merit because "an instruction to do something is not an assertion and cannot be either true or false" so it is not hearsay. <u>See</u> <u>United States v. Fernandez</u>, 172 F. Supp. 2d 1265, 1275 (C.D. Cal. 2001); Fed. R. Evid. 801(a)(2). Likewise, a statement introduced to show the effect of the statement on the listener is also not hearsay because it is not introduced to prove the truth of the matter asserted. <u>See</u> <u>United States v. Payne</u>, 944 F.2d 1458, 1472 (9th Cir. 1991). Finally, Plaintiff purports to dispute the testimony of prosecutor Elizabeth Lake that she did not believe Anthony Armour testified untruthfully at trial, that if the <u>Brady</u> information had been available before Plaintiff's criminal trial, she still would have proceeded to trial, and that when there are multiple "on the record tellings" of the same set of facts, the likelihood of conviction is reduced. (PCSOF ¶¶ 142-144, 148). To dispute this testimony, Plaintiff cites Elizabeth Lake's testimony that "I think juries often decide whether to believe a witness based on how much they like them. And this Brady file and Officer Armour's sort of history since the Brady incident was -- did not make him very likable." (PCSOF ¶¶ 142-144, 148). This testimony by Elizabeth Lake does not create a dispute as to any of the statements that Plaintiff claims it disputes. Therefore, Plaintiff's attempt to dispute these paragraphs lacks merit and does not demonstrate a genuine issue of material fact.

Importantly, Plaintiff does not dispute the material facts in paragraphs 108-120 regarding the <u>Brady</u> process that was followed by the Phoenix Police Department in 2016. Instead, she claims to "clarify" those paragraphs by stating that Assistant Chief Collins testified at his deposition that "the findings of the PSB Investigation are final facts irrespective of whether the department imposes discipline on an officer" (PCSOF ¶¶ 108-119). That is not what Assistant Chief Collins testified to at his deposition in the cited testimony. Instead, when asked if he ever changed findings of a PSB investigation after it was signed by the Commander, he testified, "I've never done that." (<u>Id.</u>). He did not testify that it could not be done. Plaintiff cites the following testimony of Assistant Chief Collins to support her assertion that "there was no reason an investigation resulting in findings of officer misconduct should not immediately go to prosecuting authorities for review:"

> Q.   And, sure, Chief Collins, you know, I don't – I'm definitely not blaming you personally at all, but I guess I'm wondering why the City of Phoenix Police Department has any other policy once the PSB report is finalized and those become the facts other than to immediately turning it over to the prosecuting authorities who make a determination whether it's Brady material?
>
> **A.   I think they're doing that now.  Things have changed since I left PSB.  The process is different.  When I was there back in 2015, 2017, in that window, I mean that's mostly 18 months.  I mean, it's not like a full two years, but, you know, things were different then, but things have changed now because, obviously, you know, people identified things that we could do better, you know, so they changed the system.**
>
> Q.   Is it possible that based on the old system where information that was determined in a PSB report didn't go immediately out to prosecuting authorities, that that information did get to criminal suspects before criminal trial?
>
> MS. BERKE:  Objection.  Foundation.  Vague.
>
> MS. MAK:  Join.
>
> **THE WITNESS:  That's possible.**

(PCSOF ¶ 120).  In response to a vague question, the knowledge about which Assistant Chief Collins lacked the requisite foundation, he testified that it was "possible" that information in

4

a PSB report about an officer "did" get to criminal suspects before criminal trial. Contrary to Plaintiff's assertion, this testimony does not demonstrate that "there was no reason" an investigation "should not immediately go to prosecuting authorities for review."

**B.**   **Plaintiff's Objections to and Motion to Strike the Witness Declarations Supporting the City Defendants' Statement of Facts Lack Merit.**

Plaintiff asserts a general objection at the beginning of her Controverting Statement of Facts (Doc. 225, p. 2) and "moves to strike" the seven Declarations filed in support of the City Defendants' Statement of Facts claiming they are "sham affidavits." However, Plaintiff fails to cite any legal authority in either her Response to the City Defendants' Motion for Summary Judgment or her Controverting Statement of Facts to demonstrate that these seven Declarations are inadmissible evidence that cannot be considered by the Court. To the contrary, it is clear under Ninth Circuit precedent that these Declarations are proper evidence that should be considered by the Court in deciding the City Defendants' Motion for Summary Judgment. Plaintiff appears to be arguing that the Declarations of the City Defendants' witnesses cannot be considered by the Court to support their Motion for Summary Judgment simply because they are Declarations and not deposition testimony. Contrary to Plaintiff's assertion, Fed. R. Civ. P. 56(c)(1)(A) parties to support asserted facts by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, **affidavits or declarations**, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." (Emphasis added). The likely reason for Plaintiff's attempted invocation of the inapplicable sham affidavit rule is that she is unable to dispute the material facts contained in the Declarations with admissible evidence.

The purpose of the "sham affidavit" rule is to prevent the **non-moving party** from creating an issue of fact by presenting an affidavit to the court contradicting his or her prior deposition testimony. See Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir.1991). The rule does not apply here for several reasons. First, the City Defendants are the moving parties, so the "sham affidavit" rule does not apply to them. Second, even if it did, only three

5

of the witnesses whose Declarations were submitted to support the City Defendants' Motion for Summary Judgment (Defendants Anthony Armour, Chief Jeri Williams, and Elizabeth Lake[1]) were deposed in this case. The other Declarants (Defendant Joseph Yahner, Assistant Chief Steve Martos, Krista Campagna, and Ken Wallentine) were never deposed and the only way to provide their testimony to the Court is through Declarations. Plaintiff's argument that the City Defendants' counsel should have elicited all of the testimony needed during Officer Armour's and Chief Williams' depositions to support their Motion for Summary Judgment lacks merit. Plaintiff cites no authority to support her argument that she should have the opportunity to cross-examine a witness on a statement made in a Declaration. Failure by an opposing party's counsel to elicit testimony from a witness on a certain specific topic during a deposition is not grounds to strike a Declaration in support of a motion for summary judgment. Plaintiff's counsel elected to ask very few questions at Officer Armour's deposition about his traffic stop of Plaintiff. Thus, the only way to provide Officer Armour's testimony about it was through a Declaration. Further, Plaintiff's counsel had the opportunity to take the depositions of the other witnesses, whose anticipated testimony Plaintiff does not contend was not properly and/or timely disclosed, including Assistant Chief Martos, Krista Campagna, retired Chief Yahner, and Ken Wallentine, but elected not to do so. Plaintiff's failure to take depositions of witnesses does not preclude those witnesses from submitting Declarations in support of a motion for summary judgment.

Finally, even if the "sham affidavit" rule could apply to the Declarations of the three parties who were deposed, the Ninth Circuit has held that there are "two important limitations on a district court's discretion to invoke the sham affidavit rule." A declaration that is

---

[1]The Declaration of Defendant Elizabeth Lake that the City Defendants attached to their Statement of Facts is the same one that Defendant Lake attached to the Statement of Facts in support of her own Motion for Summary Judgment. (Doc. 204-1, pp. 48-63). For the same reasons set forth in Defendant Lake's Reply in Support of Motion for Summary Judgment (Doc. 220, pp. 7-9), which the City Defendants incorporate herein by reference, Defendant Lake's Declaration is not a sham affidavit that should be stricken and not considered by the Court.

introduced to explain portions of earlier deposition testimony is not a "sham" unless the Court can make a factual determination that the contradiction is actually a "sham" **and** the inconsistency must also be "clear and unambiguous." Van Asdale v. Int'l Game Tech., 577 F.3d 989, 998–99 (9th Cir. 2009). Plaintiff has failed to demonstrate that any of the statements to which she objects based on the "sham affidavit" rule clearly and unambiguously contradict prior deposition testimony. In the paragraphs to which Plaintiff objects based on "sham affidavits," she cites to her own deposition testimony, other documents, or no other evidence at all to claim the Declarations of Officer Armour, Assistant Chief Martos, Krista Campagna, and Chief Williams are "sham affidavits." (See PCSOF ¶¶ 16, 23, 27-28, 31-33, 36, 59-60, 62-65, 69-70-82, 122, 127, 129, 131, 145, 154-156, 174). Therefore, Plaintiff has failed to demonstrate that any of the Declarations attached to the City Defendants' Statement of Facts are "sham affidavits" that should be stricken by the Court, and the Court should therefore deny this request by Plaintiff.

> ### D. Most of the Facts Contained In Plaintiff's Separate Statement of Facts Are Not Supported by Admissible Evidence or Based on Misrepresented Evidence.

Plaintiff is critical of the City Defendants for attaching "key documents" to the Declarations of witnesses instead of simply attaching them as separate exhibits. However, the purpose of attaching the documents to the Declarations was to make those documents admissible by having a witness lay the requisite foundation for and authenticate the documents—something that Plaintiff utterly failed to do with the documents she attached to her Separate Statement of Facts rendering them inadmissible. Indeed, the only paragraphs of Plaintiff's Separate Statement of Facts that are supported by admissible evidence are the 10 paragraphs that are supported by specific citations to pages of deposition testimony and the 8 paragraphs that cite to public records from her criminal case. (Plaintiff's Separate Statement of Facts ("PSSOF") ¶¶ 5, 6, 7, 16, 18, 33, 35, 41, 43, 47, 53, 55, 58, 59, 60, 61, 62 76). Pursuant to Fed. R. Civ. P. 56(c)(2), the City Defendants have presented their objections to Plaintiff's inadmissible evidence in the City Defendants' Response to Plaintiff's Separate

Statement of Facts ("CDRPSOF"), filed concurrently herewith. For example, Plaintiff cites to her experts' reports as support for some of her asserted facts. However, these reports are inadmissible hearsay because she failed to provide sworn testimony from those experts to make those reports admissible and they do not fall within an exception to the hearsay rule. See Smith v. City of Oakland, 2007 WL 2288328, at *3-4, (N.D. Cal. Aug. 9, 2007) ("Unsworn expert reports prepared in compliance with Rule 26(a)(2) do not qualify as affidavits or otherwise admissible evidence for purpose of Rule 56, and may be disregarded by the court when ruling on a motion for summary judgment."); King Tuna, Inc. v. Anova Food, Inc., 2009 WL 650732, at *1 (C.D.Cal. Mar. 10, 2009) ("In order to be competent summary judgment evidence, an expert report must be sworn to or otherwise verified, usually by a deposition or affidavit."); Escobar v. AirBus Helicopters SAS, 2016 WL 6024441, at *1 (D. Haw. Oct. 4, 2016) (expert reports are inadmissible hearsay unless the proponent meets its burden to prove they fall within an exception to the hearsay rule). Neither of Plaintiff's experts' reports is accompanied by an affidavit or declaration. Plaintiff also attaches numerous other documents including news stories, websites, and non-controlling policies and procedures from other government agencies and organizations without providing any sworn testimony to authenticate or lay foundation for these documents. Many of these documents are also hearsay.

Plaintiff also cites to documents that were not in existence in 2015 and 2016, when the events at issue in this case occurred. These include a version of Phoenix Police Department Operations Order 3.19 that was revised as of 2020 (CDRPSOF ¶¶ 12, 15) and an International Association of Chiefs of Police ("IACP") document that was published in May 2020. (CDRPSOF ¶ 65, 67-69). Further, neither of these documents was authenticated by any sworn testimony and they are not relevant or applicable. The Court must disregard Plaintiff's inadmissible evidence attached to her Controverting and Separate Statement of Facts in ruling on this Motion.

As set forth in detail in the CDRPSOF, even if Plaintiff's evidence was admissible, which it is not, Plaintiff's additional facts do not create a genuine issue of material fact. In

8

fact, 17 of Plaintiff's statements of fact are not supported by the cited evidence and/or fail to cite to specific pages in the record for support.  (CDRPSOF ¶¶ 6, 8, 9, 11, 12, 16, 18, 19, 21, 22, 24, 25, 27, 44, 47, 53, 77).   For example, in paragraphs 11, 25, and 44 of Plaintiff's Separate Statement of Facts, she cites to entire deposition transcripts without providing the pages on which the testimony she claims supports the statements is found.  Under LRCiv. 56.1(a), statements of fact "must refer to a specific admissible portion of the record where the fact finds support."  This Court has ruled that this means that a party cannot simply submit a witness' entire deposition transcript without citing to the specific pages containing the facts she claims it supports.  Williams v. Tempe, City of, 2017 WL 1953459, at *3 (D. Ariz. May 11, 2017); see also Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1030-1031 (9th Cir. 2001) ("The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found."); Jaurequi v. Carter Mfg. Co., 173 F.3d 1076, 1085 (8th Cir. 1999) ("[A] district court is not 'obligated to wade through and search the entire record for some specific facts which might support the nonmoving party's claim.'") (internal citation omitted); United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").  Indeed, Plaintiff improperly relies on the entire deposition transcript of Commander Collins and unauthenticated pages of the PSB manual for her factual statement "During this process [referring to the process of drafting the PSB report], the PSB is responsible for forwarding sustained allegations of officer misconduct to prosecuting authorities for Brady review."[2]  This statement is not supported by the record and more importantly, Plaintiff does not dispute with any admissible evidence the Brady review process described by the City Defendants in paragraphs 105-122 of their Statement of Facts, pursuant to which at the relevant time PSB forwarded reports with sustained findings to prosecuting agencies as soon as the disciplinary process was complete.  (CDSOF ¶¶ 105-122).

_____

[2]In her Response, Plaintiff cites to paragraph 24 of PSSOF to support this paragraph, but it is actually paragraph 25 of PSSOF that contains the stated language.

The remaining facts in Plaintiff's Separate Statement of Facts are either not disputed by the City Defendants or are not material to the Court's determination of whether summary judgment should be granted in favor of the City Defendants. (CDRPSOF ¶¶ 2, 3, 4, 7, 17, 20, 23, 36, 37, 41, 58, 60, 61). Specifically, Plaintiff's reference to prior investigations of Officer Armour that did not result in any findings of misconduct using inadmissible evidence are immaterial to the claims in this case. (CDRPSOF ¶¶ 48-52). Plaintiff's reference to the allegations of JeAnna Anderson are particularly egregious since a jury rendered its verdict in favor of Officer Armour and against Ms. Anderson, and specifically found in special interrogatories that Officer Armour did not touch her inappropriately during a traffic stop. (CDRPSOF ¶¶ 48, 52). Therefore, the facts set forth in Plaintiffs' Separate Statement of Fact are insufficient to create a genuine issue of material fact to preclude summary judgment.

## II.  PLAINTIFF HAS FAILED TO DEMONSTRATE THAT OFFICER ARMOUR VIOLATED HER DUE PROCESS RIGHTS.

Plaintiff relies exclusively on the case of Tennison v. City & Cty. of San Francisco, 570 F.3d 1078, 1088 (9th Cir. 2009), to support her argument that the PSB report was material Brady evidence which "conclusively secured Plaintiff's relief from prison" thereby establishing that the failure to disclose it prior to Plaintiff's criminal trial violated her constitutional rights. Plaintiff's argument is without merit. The facts in Tennison are easily distinguishable from this case. In Tennison, the Brady material at issue was a taped confession of an individual who confessed to a crime one month after the plaintiffs had been tried and convicted of that crime. 570 F.3d at 1084. The taped confession was not provided to the plaintiff's criminal defense lawyer until the second to last day of the hearing on his motion for new trial. Id. at 1093. In the civil case that ensued, the Ninth Circuit Court of Appeals held that the defendant detectives had a duty under Brady to disclose the taped confession to the prosecutor as soon as they obtained it because at that time they were "still involved in the new trial and post-conviction proceedings" for the plaintiffs. Id. at 1094. The Tennison court held that the taped confession (along with two other evidentiary items that were not disclosed to the plaintiffs) were material to the plaintiffs' convictions such that the

10

failure to disclose them violated the plaintiffs' constitutional rights.  Id. at 1090-1095.  Regarding the materiality of the taped confession, the court stated, "a Mirandized confession by someone who had been named by a reliable witness, known to the officers, who recounted events surrounding the murder in detail, and whose account contradicted that of the prosecution's witnesses . . . certainly 'undermines confidence in the outcome of the trial.'"  Id. at 1094.  In contrast, the Brady material at issue in this case does not clearly undermine Plaintiff's conviction.  Rather than being concrete evidence that Plaintiff did not commit the crime for which she was prosecuted, the PSB report is one piece of impeachment evidence that might have been allowed to be used at trial to attempt to undermine Officer Armour's credibility.  There is no certainty that if the PSB report had been disclosed prior to Plaintiff's trial, the criminal court would have allowed all or some of the information in the report to be used at trial.  Prosecutor Elizabeth Lake testified at her deposition that had the PSB Investigation been provided to her prior to trial, she would have moved *in limine* to prevent some or all of it from being used at trial to impeach Officer Armour.  (CDSOF ¶ 144).  Likewise, had Officer Armour been questioned about it at trial, he would have explained that he disputed PSB's findings of untruthfulness and that he reasonably believed he had probable cause to enter the apartment and arrest the two occupants.  (CDSOF ¶ 145).  Therefore, unlike the taped confession in Tennison, there is not a "reasonable probability" that had the withheld evidence been disclosed, it would have led to a different result at the plaintiff's criminal trial.  United States v. Olsen, 704 F.3d 1172, 1184–85 (9th Cir. 2013); see also Barker v. Fleming, 423 F.3d 1085, 1099 (9th Cir. 2005) ("The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense.").

To support her argument that the PSB report was material to her conviction, Plaintiff relies only on the opinion of her criminal defense attorney (CDRPSOF ¶ 64), mischaracterization of a memorandum drafted by prosecutor Elizabeth Lake (CDRPSOF ¶

63), and one out of context statement from Officer Amour's deposition testimony.[3] Elizabeth Lake testified at her deposition that what she meant in her memorandum regarding Officer Armour's "credibility problems" and her decision not to re-try Plaintiff is that at a new trial there would have been even more statements that could be used to impeach Officer Armour (including his testimony from the first criminal trial), and that when there are multiple on the record "tellings" of the same set of facts, it becomes more likely that there will be minor inconsistencies with which a witness can be impeached. (CDRPSOF ¶ 63).

Based on Operations Order 2.9, Officer Armour reasonably believed that he had no obligation to disclose the findings of PSB to anyone until and unless he was notified that he was being considered for placement on a prosecutor's <u>Brady</u> list. That is because prior to that time, the Phoenix Police Department was aware of the allegations, and therefore if there was any obligation to make a disclosure, that obligation belonged to someone other than Officer Armour. (CDRPSOF ¶¶ 36, 39). This testimony is consistent with the out of context quotation from Plaintiff's Response that criminal defendants are "entitled to it at some point." (Doc. 227, p. 20).

Further, Plaintiff's vague argument that this Court must "infer" that Officer Armour committed misconduct that amounts to a due process violation because of past unsustained allegations of sexual misconduct made by other women lacks merit. Not only is the evidence Plaintiff cites to support these allegations inadmissible, the argument is also irrelevant to the Court's consideration of whether Plaintiff's due process rights were violated in this case.

In her Response, Plaintiff ignores the admissible evidence cited by Defendants demonstrating that Officer Amour's failure to inform the prosecutor in Plaintiff's criminal

---

[3]Plaintiff fails to follow the procedure set forth by the Court in LRCiv. 56.1(e) in several places in her Response and instead of citing to the specific paragraph of her Separate Statement of Facts that supports her assertions, she cites directly to exhibits. This is not only confusing, but has made it difficult for the City Defendants to provide their objections to Plaintiff's evidence to the Court because they have had to devote previous space in this Reply to refuting evidence when it would have been easier as well as proper procedure to make the objections in their Response to Plaintiff's Separate Statement of Facts.

case about the PSB Investigation and/or the sustained findings of misconduct before he testified at Plaintiff's criminal trial did not constitute a due process violation. Plaintiff either does not dispute this evidence or fails to dispute it with any admissible evidence. It is clear from this evidence that there was no due process violation: (1) the prosecutor did not ask Officer Armour if he had any pending investigations or any sustained allegations of misconduct (PCSOF ¶ 152); the disciplinary process for the PSB Investigation was not yet complete at the time Officer Armour testified at Plaintiff's criminal trial (PCSOF ¶¶ 48, 92-96, 100); consistent with directions from prosecuting agencies, it was the practice of the Phoenix Police Department to conduct its preliminary Brady review of sustained findings of officer misconduct once the disciplinary process was complete, and to provide information about officer misconduct believed to constitute Brady material to MCAO for Brady review at that time. (PCSOF ¶¶ 114-122, 173-174); and except in some specific situations that do not apply here, the Phoenix Police Department assigned the responsibility for informing the prosecuting agencies of Brady material related to officer misconduct to the Professional Standards Bureau (and specifically the Commander of PSB), which is constitutionally permissible. (PCSOF ¶¶ 106, 153-156).

There was no constitutional requirement for Officer Armour to disclose the PSB report at issue in this case and/or the sustained findings of misconduct contained therein to prosecutor Lake. Whenever the obligation to disclose that information arose in this case, it was the responsibility of the Commander of the Professional Standards Bureau (who Plaintiff elected not to name as a defendant) to make that disclosure. As is clear from the testimony of Commander Collins and Assistant Chief Martos, based on the Phoenix Police Department's policies, except in certain specific circumstances not applicable here, it is the Commander of PSB who is responsible for submitting to the prosecuting agencies sustained findings of officer misconduct required to be disclosed in accordance with Brady. (CDSOF ¶ 120). There are no cases that would suggest this delegation of responsibility is constitutionally impermissible. Indeed, it is common practice for law enforcement agencies to designate a department within the agency to forward potential Brady information to

prosecuting agencies. (DSOF ¶¶ 161, 175-176). There is no evidence to establish that Officer Armour violated Plaintiff's due process rights by not personally making this disclosure. Moreover, if the timing of the disclosure of the PSB report and/or the sustained findings of misconduct contained therein did not comport with constitutional requirements, Officer Armour had no role in that. The evidence irrefutably shows that Officer Armour did not violate Plaintiff's due process rights. Therefore, Officer Amour is entitled to summary judgment on Plaintiff's claim against him in Count One.

### III. PLAINTIFF HAS FAILED TO DEMONSTRATE THAT OFFICER ARMOUR VIOLATED HER CLEARLY ESTABLISHED CONSTITUTIONAL RIGHTS.

Plaintiff fails in her Response to demonstrate that the law was clearly established in 2016 that Officer Armour's failure to inform the prosecutor or Plaintiff of the PSB Investigation and/or the sustained allegations of misconduct violated Plaintiff's due process rights. Plaintiff argues that the City Defendants ignore well-settled precedent and "too narrowly construe the right at issue." (Doc. 227, p. 21). In making this argument, Plaintiff ignores United States Supreme Court and Ninth Circuit precedent which makes clear that for a right to be clearly established, there must be controlling authority—a United States Supreme Court or Ninth Circuit case—directly addressing "the violative nature of [the defendant's] particular conduct . . . in light of the specific context of the case." Rico v. Ducart, 980 F.3d 1292, 1298 (9th Cir. 2020), quoting Hamby v. Hammond, 821 F.3d 1085, 1091 (9th Cir. 2016); see also Rivas-Villegas v. Cortesluna, __ U.S. __, 142 S. Ct. 4, 7 (2021) (constitutional rights can only be clearly established with on-point Supreme Court precedent); D.C. v. Wesby, ___ U.S. ___, 138 S. Ct. 577, 590 (2018) ("The 'clearly established' standard also requires . . . [t]he rule's contours [to] be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted' and [t]his requires a high 'degree of specificity.'") (internal citations omitted); Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (to be clearly established "'[t]he contours of [a] right [must be] sufficiently clear' that **every** 'reasonable official would [have understood] that what he is doing violates that right.'") (emphasis added). None of the cases cited by Plaintiff show that the law was clearly

14

established in 2016 that Officer Armour was personally required to inform the prosecutor or Plaintiff of the PSB Investigation and/or the sustained allegations of misconduct (as opposed to leaving it to PSB to make that disclosure) and/or that such disclosure needed to be made earlier than it was made. Instead, all of the cases Plaintiff cites are all factually distinguishable from this case (most significantly none of them involve impeachment evidence regarding a police officer) and thus they **<u>do not</u>** show that the law was clearly established.

In <u>Carrillo v. Cty. of Los Angeles</u>, 798 F.3d 1210, 1225 (9th Cir. 2015), the <u>Brady</u> evidence at issue was handwritten notes made by the investigating officers detailing what occurred during three eyewitnesses' identifications of the plaintiff (that took place well before the plaintiff's criminal trial) which were indicia of unreliability of the eyewitnesses' statements, having nothing to do with the witnesses' character for truthfulness. <u>Id.</u> <u>Carrillo</u> does not clearly establish the disclosure requirements of the <u>Brady</u> material at issue in this case, as the notes in Carrillo were created as part of the criminal investigation and would have been part of the investigation file at the time of trial, whereas the <u>Brady</u> material at issue in this case was from an administrative determination of sustained findings of officer misconduct that was not part of the criminal investigation file for which the disciplinary proceedings were ongoing and there was a written policy of the Phoenix Police Department that expressly provided that Officer Armour was not responsible for disclosing the PSB Report and/or the PSB Investigation and/or the sustained findings of misconduct to the prosecutor. (CDSOF ¶¶ 106, 154).

As set forth above, the <u>Brady</u> evidence in <u>Tennison</u> was a taped confession of another individual, not impeachment evidence of a witness. 570 F.3d. at 1092-94. Additionally, at the time the detectives obtained the taped confession, they were actively involved in investigating the allegations in the plaintiff's motion for new trial. <u>Id.</u> <u>Tennison</u> also cannot demonstrate with sufficient specificity that the law was clearly established regarding the <u>Brady</u> material at issue in this case because the taped confession was part of the criminal investigation, not a finding of officer misconduct in a separate administrative investigation

15

of alleged employee misconduct where the responsibility of disclosure to the prosecutor was delegated to others within the police department. Therefore, <u>Tennison</u> does not demonstrate that the law was clearly established that Officer Armour was constitutionally required to disclose the PSB report, the PSB investigation and/or the sustained findings of misconduct to the prosecutor at any point in time, and specifically in advance of Plaintiff's criminal trial.

In the case of <u>United States v. Butler</u>, 567 F.2d 885, 891 (9th Cir. 1978)—a criminal case not a civil case—the <u>Brady</u> material at issue was assurances made to a witness prior to trial by government agents in return for the witness' testimony. In <u>Jackson v. Brown</u>, 513 F.3d 1057, 1074 (9th Cir. 2008), the <u>Brady</u> material at issue was promises made to a witness such as reduced sentences and the location of the prison where the sentence would be served in exchange for his testimony that were not disclosed to the prosecutor or defendant. In <u>United States v. Blanco</u>, 392 F.3d 382, 388 (9th Cir. 2004), the prosecution violated <u>Brady</u> by failing to disclose evidence regarding the special immigration treatment the witness received in exchange for his testimony. In <u>United States v. Gerard</u>, 491 F.2d 1300, 1302 (9th Cir. 1974), the <u>Brady</u> material at issue was the prosecutor's promise to the witness that he would recommend probation in exchange for the witness' testimony. In <u>Barker v. Fleming</u>, 423 F.3d 1085, 1095 (9th Cir. 2005), the <u>Brady</u> material at issue was prior convictions of a prosecution witness. However, the court found that this non-disclosed information was not material because there was other evidence of his character for lying which the defense could use to impeach him. <u>Id.</u> Finally, in <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82 (1999), the <u>Brady</u> material at issue was notes taken during interviews with a prosecution witness and letters the witness wrote to the detective that case doubt on the witness' substantive testimony (not her character for truthfulness), but the United States Supreme Court held that the petitioner likely would have still been convicted even if the witness had been impeached so the non-disclosure was not material. Again, none of these cases demonstrate with sufficient specificity that the law was clearly established that Officer Armour had a constitutional obligation to disclose what he believed was a still pending investigation about which he disputed some of the allegations. In fact, the <u>Brady</u> material in this case was disclosed to the

prosecutor consistent with the process that had been followed by the Phoenix Police Department for many years, and the prosecutor disclosed it to Plaintiff's criminal defense attorney. (CDSOF ¶¶ 114-137). Therefore, Plaintiff has failed to demonstrate that Officer Armour violated clearly established law.

Plaintiff has also failed to provide the Court with any authority holding that any delay by a police officer (or a police department for that matter) in disclosing to a prosecutor potential <u>Brady</u> material consisting of sustained findings of officer misconduct occasioned by waiting until the disciplinary process for the internal investigation is complete to make the disclosure, violates due process.[4] Indeed, Plaintiff does not cite to any cases in her Response to demonstrate that the delay in disclosure (as opposed to a failure to disclose) violated clearly established law. Therefore, Plaintiff has not demonstrated that her claimed delay in the disclosure was a violation of clearly established law.

Plaintiff's attempt to point to a "robust consensus of persuasive authority" also falls flat. The United States Supreme Court defined a robust consensus of persuasive authority as "a robust 'consensus of **cases** of persuasive authority.'" <u>D.C. v. Wesby</u>, 138 S. Ct. at 589–90 (emphasis added). However, Plaintiff seems to think she can show a robust consensus of persuasive authority by citing to inadmissible policy documents from the International Association of Chiefs of Police ("IACP") and the Department of Justice ("DOJ"), which the Court cannot even consider. (CDRPSOF ¶¶ 65, 67-71). The inadmissible hearsay opinions in these policies do not demonstrate that the law was clearly established that Officer Armour was required to disclose what he reasonably understood to be a pending PSB investigation to the prosecutor before he testified at Plaintiff's criminal trial and where there was a policy which provided that he only had an obligation to disclose potential exculpatory information if the Phoenix Police Department was not aware of it. (CDSOF ¶ 106, 154-156).

_____

[4] In this case, the PSB report was disclosed on December 28, 2016—just a month after the disciplinary process was complete. (CDSOF ¶¶ 100, 125-127). Thus, there was not a significant delay in disclosure.

17

Contrary to Plaintiff's argument, the City Defendants provided the Court with the sworn testimony of their expert witness, Ken Wallentine (who is the chief of the West Jordan, Utah Police Department), to demonstrate the reasonableness of Officer Armour's belief that he did not need to disclose what he believed was a still-pending investigation to the prosecutor. The City Defendants rely on the lack of case law with the same set of specific facts to demonstrate that the law was not clearly established. Plaintiff's reference to the inadmissible policies of Chief Wallentine's department and her characterization of them should be disregarded by the Court. Plaintiff fails to provide any authentication or foundation for the document she claims is the West Jordan Police Department policy and she cannot use it to support her claims because she failed to disclose it in her MIDP Responses before the final disclosure deadline.

Finally, in her Response, Plaintiff does not dispute, and therefore concedes, that federal courts have held that police officers and police departments are not obligated under Brady to disclose exculpatory evidence directly to criminal defendants. See D'Ambrosio v. Marino, 747 F.3d 378, 389 (6th Cir. 2014) (holding that "the role that a police officer plays in carrying out the prosecution's Brady obligations is distinct from that of a prosecutor . . . . Brady obliges a police officer to disclose material exculpatory evidence only to the prosecutor rather than directly to the defense"); Cannon v. Polk Cnty/Polk Cnty Sheriff, 68 F.Supp.3d 1267, 1279 (D. Or. 2014) ("The requirement that police disclose evidence known only to the police merely imposes a duty on prosecutors to learn of exculpatory evidence from the police. It does not require the police officer to disclose any sort of information—even information known only to the officer—directly to the defense."). For all of these reasons, Plaintiff has failed to present the Court with any clearly established law that Officer Armour was required to advise the prosecutor or Plaintiff's criminal attorney of what he reasonably understood to be a still pending PSB Investigation before he testified at Plaintiff's criminal trial. Therefore, Officer Armour is entitled to qualified immunity. . . .

## IV. <u>CHIEF WILLIAMS AND RETIRED CHIEF YAHNER SHOULD BE DISMISSED AS REDUNDANT DEFENDANTS.</u>

Plaintiff's Response on this issue is inconsistent. In the heading preceding the paragraph regarding this argument Plaintiff states, "Plaintiff agrees that Chief Williams and Chief Yahner should be dismissed." She also states that she "does not dispute" that an official capacity suit against a municipal officer is equivalent to a suit against the entity. However, in direct contradiction to the heading, she then argues that since the Court "may" dismiss redundant municipal officers, Chief Williams and retired Chief Yahner should be kept as defendants. Her only basis for arguing that they should not be dismissed is that Plaintiff's <u>Monell</u> claim involves "executive oversight" and the City Defendants could have moved to dismiss Chief Williams and retired Chief Yahner when Plaintiff amended her Complaint, but they did not do so. Plaintiff does not cite any authority to support leaving either of these alleged reasons for leaving Chief Williams and retired Chief Yahner in the case as defendants, and her argument lacks merit. Numerous district courts in the Ninth Circuit have dismissed municipal officials sued in their official capacity as redundant defendants, some even at the summary judgment stage of a case. <u>See</u> <u>e.g.</u> <u>Hofschneider v. City of Vancouver</u>, 182 F. Supp. 3d 1145, 1150 (W.D. Wash. 2016) (ruling on judgment on the pleadings that keeping the individual defendants named in their official capacity as defendants would be redundant because the entities themselves were already named defendants); <u>Williams v. Las Vegas Metro. Police Dep't</u>, 2014 WL 979943, at *2–3 (D. Nev. Mar. 11, 2014) (ruling on a motion to dismiss that the plaintiff's claims against the individual officer in his official capacity were duplicative of the plaintiff's claims against the entity and that the claims against the officer should therefore be dismissed); <u>Hernandez v. City of Napa</u>, 781 F. Supp. 2d 975, 1001 (N.D. Cal. 2011) (ruling on summary judgment that the plaintiff's claims against the chief of police must be dismissed because the plaintiff had not demonstrated that the claims were **not** redundant with the claims against the city). Further, in the Eleventh Circuit case cited by the Ninth Circuit in <u>Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles County Sheriff Dept.</u>, 533 F.3d 780, 799 (9th Cir. 2008), the Eleventh Circuit court stated in its ruling on the parties'

19

various motions to dismiss and for summary judgment, "To keep both the City and the officers sued in their official capacity as defendants in this case would have been redundant and possibly confusing to the jury." Busby v. City of Orlando, 931 F.2d 764, 776 (11ᵗʰ Cir. 1991). In this case, leaving Chief Williams and retired Chief Yahner as defendants would be confusing to the jury and Plaintiff has not cited to any authority that would support keeping them in the case as redundant defendants. Therefore, if this Court does not grant the City Defendants' Motion for Summary Judgment on Plaintiff's Monell claim against the City in its entirety, Chief Williams and retired Chief Yahner should be dismissed as redundant defendants.

**V.    PLAINTIFF HAS FAILED TO DEMONSTRATE THAT THERE IS EVIDENCE IN THE RECORD SHOWING DELIBERATE INDIFFERENCE BY THE CITY OF PHOENIX.**

In the Court's Order ruling on the City Defendants' Motion to Dismiss (Doc. 36), the Court ruled that in her Amended Complaint Plaintiff only asserted a claim for failure to train and supervise under Monell against the City of Phoenix and Chief Williams and retired Chief Yahner in their official capacities and that she did **not** assert a claim for an unconstitutional policy, practice or custom. (Doc. 36, pp. 24-27). In her Second Amended Complaint, the only allegations Plaintiff added against the City Defendants were in paragraphs 147 and 148, in which she alleges that the City of Phoenix failed to disclose Brady material on at least one prior occasion and in which she claimed only "upon information and belief" that the City of Phoenix has a "policy or practice of not supplying all Brady material to the County Attorney's office until a case is designated for trial." (Doc. 37. ¶¶ 147-148).⁵ Therefore, Plaintiff's only claim against the City Defendants under Monell is for failure to train and supervise.

---

⁵The reason the City Defendants addressed in their Motion for Summary Judgment the four cases cited in paragraph 147 of Plaintiff's Second Amended Complaint that Plaintiff asserted show a pattern of prior Brady violations is because it is unclear whether the allegation about the cases was added to support Plaintiff's claims against Maricopa County or the City Defendants. Contrary to Plaintiff's argument, the City Defendants did not address the cases to set up a "straw man fallacy."

To prove a claim brought pursuant to <u>Monell</u> against a municipality or government official in his or her official capacity for failure to adequately train or supervise its employees regarding their legal duty to avoid violating citizens' rights, a plaintiff must prove that the municipality had "notice that a course of training is deficient in a particular respect," because without such notice, a municipality "can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." <u>Connick v. Thompson</u>, 563 U.S. 51, 62 (2011). The plaintiff then must prove either that the inadequacy in this area of training was so obvious that the defendant municipality should have known that unlawful conduct by its officers was predictable or there was a pattern of similar constitutional violations by untrained employees. <u>Connick</u>, 563 U.S. at 62; <u>see also</u> <u>Board of County Com'rs of Bryan County, Okl. v. Brown</u>, 520 U.S. 397, 409 (1997); <u>Cannon v. City of Petaluma</u>, 2012 WL 1183732, at *19 (N.D. Cal. 2012) (ruling that the plaintiff's allegations relating "solely to his own, isolated experiences" were insufficient). Finally, Plaintiff must prove that the failure to train actually caused her injury. <u>See</u> <u>City of Canton v. Harris</u>, 489 U.S. 378 390 (1989); <u>Long v. County of L.A.</u>, 442 F.3d 1178, 1190 (9th Cir. 2006). In her Response, Plaintiff has failed to demonstrate a failure to train by the City of Phoenix that caused a violation of her due process rights with any admissible evidence or citations to authority.

### A. Plaintiff Fails to Demonstrate that the Phoenix Police Department's Alleged Failure to Train Regarding *Brady* Was So Obvious That it Amounts to Deliberate Indifference.

Plaintiff first argues that the need for <u>Brady</u> training was "obvious" because the Court stated in its Order ruling on the City's Motion to Dismiss that "most police officers do not go to law school, thus, absent specific training there would be no way for police officers" to know about <u>Brady</u>. (Doc. 36, p. 28). However, in ruling on the Motion to Dismiss, the Court was relying solely on the allegations in Plaintiff's Complaint. To defeat a Motion for Summary Judgment, Plaintiff must demonstrate with admissible evidence that the training the City of Phoenix provided to its police officers regarding <u>Brady</u> disclosure was obviously deficient.

The admissible evidence provided to the Court in this case demonstrates that the City of Phoenix has a clear policy in Operations Order 2.9 regarding <u>Brady</u> disclosure, it trains its officers regarding <u>Brady</u> disclosure, and that except in certain defined situations that do not apply here, the Phoenix Police Department, and specifically its Professional Standards Bureau, has been tasked with the responsibility for disclosing sustained allegations of officer misconduct to prosecutors. (CDSOF ¶¶ 106, 154-156). The Phoenix Police Department developed its procedure and trained its officers in accordance with the timing that, prior to 2020, was known by and approved by MCAO. (CDSOF ¶¶ 114-127). Commander John Collins and Chief Williams both testified that they look to the prosecuting agency to instruct them on how and when it wants to be informed about potential <u>Brady</u> material based on officer misconduct. (CDSOF ¶¶ 173-174). Indeed, pursuant to United States Supreme Court authority, it is the prosecuting agency that ultimately decides whether an internal investigation such as a PSB investigation or other document is <u>Brady</u> material that needs to be disclosed to a criminal defendant. <u>See</u> <u>Pennsylvania v. Ritchie</u>, 480 U.S. 39, 59 (1987).

Plaintiff fails to cite any case holding that a delay by a police department in disclosing to a prosecutor potential <u>Brady</u> material consisting of sustained findings of misconduct by a police officer until the disciplinary process for an internal investigation is complete amounts to deliberate indifference. The case on which Plaintiff relies in her Response, <u>Wilson v. City of Los Angeles</u>, 2021 WL192014 (C.D. Cal. Jan 8, 2021), is clearly distinguishable from this case. In <u>Wilson</u>, the district court ruled that there was a genuine issue of material fact regarding whether the city had failed to adequately train its police detectives that suggestive eyewitness identification techniques were prohibited and whether that failure to train caused a violation of the plaintiff's constitutional rights. <u>Id.</u> at *34. The <u>Wilson</u> court's ruling that there was sufficient evidence of a failure to train to submit the issue to the jury was based on the admissible testimony by numerous witnesses, including the defendant detectives and a 30(b)(6) witness for the city, that the city **<u>did not</u>** have a policy in 1984-1986 that prohibited detectives from making a suspect photo array stand out to a witness. <u>Id.</u> Indeed, the police officer defendants specifically testified that they were not trained that they were not supposed

22

to point on specific suspects in a photo array and ask witnesses questions about them.  See id. at *34.

In this case, by contrast, Plaintiff fails to point to any admissible evidence that creates a genuine issue of material fact.  She relies solely on her own argument that because there is no entry for "Brady" in the current Table of Contents for the Phoenix Police Department Operations Orders, Phoenix police officers must not be able to find it and they do not know about it.  She also argues that the policy is "confusing."  However, Plaintiff has presented is no admissible evidence on that issue, including lay witness or expert witness testimony, including any police officers to substantiate Plaintiff's claim that officers are unable to find the policy and/or find it confusing.  In fact, both Officer Armour and Commander Collins testified extensively at their depositions regarding their knowledge and understanding of Operations Order 2.9, and their testimony demonstrates that they were not confused by the policy.  Specifically, Officer Armour testified that he was aware he had an obligation to notify the prosecutor immediately if (1) he had been notified that material from his file had been sent to a prosecutor for a determination regarding whether he should be added to the Brady list or (2) he was aware of potential exculpatory information of which the Department was not.  (CDRPSOF ¶ 40).  However, he testified that at the time of Plaintiff's criminal trial, he had (1) not been notified that any investigation had been forwarded to a prosecutor for a determination regarding whether he should be added to the Brady list and (2) the Phoenix Police Department was clearly aware of the allegations against him in the PSB Report at issue in this case because PSB had conducted an investigation.  (Id.).  Therefore, he had no obligation to personally disclose any information to the prosecutor and he reasonably relied on the Phoenix Police Department to do so if it was appropriate.  It makes sense for Operations Order 2.9 to require police officers to notify prosecutors if the Police Department or Maricopa County Attorney's Office have notified him or her that they have had material from the employee's file sent over for review as to whether their names should be added to the Law Enforcement Integrity Database (LEID) because there can be a lag between when material identified by the Phoenix Police Department as potential Brady material is sent over

for review and when individual prosecutors are made aware that an officer has been added to the <u>Brady</u> list. (CDSOF ¶¶ 126-128, 131-132).

Also, contrary to Plaintiff's argument, Commander Collins' testimony does not demonstrate any "confusion" by him as to what was required by the policy. Commander Collins simply testified in response to Plaintiff's counsel's unclear questions that the policy itself could be "cleaned up" to be more clear as to when disclosure by an officer to a prosecutor was required, especially when the admonition to officers not to talk about the investigation that is contained in a Notice of Investigation ("NOI") during a pending investigation is in place. Plaintiff incorrectly represents to the Court that Commander Collins' testimony that there could be a perceived "conflict" between the NOI admonition and Operations Order 2.9 means Commander Collins is "confused" about an officer's <u>Brady</u> disclosure obligation. It is clear from the cited testimony that Commander Collins simply testified that the policy could be more clear. Plaintiff fails to quote for the Court Commander Collins' additional testimony which clarifies his understanding of the interplay between the NOI admonition and Operations Order 2.9 and clearly states that there is no conflict between them. He testified:

> Q. Chief, where an officer is contending that he was truthful, and in an incident -- and has been served with a notice of investigation containing allegations that he was not truthful, but there has been no determination by the professional standards bureau investigators that he was, in fact, untruthful, there would be no Brady material to provide to the prosecutor; correct?
>
> **A. It wouldn't be determined until the end of the investigation when the notice of finding was served. Because a notice of finding would say that you have sustained allegations for misconduct. And, in this case, it would be the truthfulness and the honesty piece.**
>
> Q. Right.
>
> **A. So it would be based on the date of the NOF, and up until then until it's finalized, it's not a final document and there's not a conclusion at that point.**
>
> Q. And at that point, the admonition is lifted; correct.

**A.    Well, the NOF, notice of finding, is served, yes, the admonition would be lifted.**

Q.    Right.  So the admonition then isn't inconsistent with Brady; correct?

**A.    Well, it's not final until we get to a final conclusion reference sustained allegations.**

Q.    And at that point, the admonition is lifted, you testified?

**A.    Yes.**

Q.    And so at the time the admonition is in effect, there's no obligation to disclose anything under Brady, especially in a case where the officer believes he was truthful, contends he was truthful, and believes the outcome of the investigation is going to show he was truthful; correct?

**A.    Based on that statement, yes, if the officer believes he's truthful and there's no misconduct.  But once we put the conclusion out and say there's misconduct, then I think things change.**

Q.    Right.  But then the admonition is lifted?

**A.    Right.**

Q.    Okay.  So what I'm asking you is, during the period that the admonition remains in effect, is that inconsistent at all with Brady?

**A.    No, because it's not a finalized investigation.**

(CDRPSOF ¶ 40).  Plaintiff's references to Officer Armour's and Chief Collins' deposition testimony does not demonstrate an obvious failure to train officers about required <u>Brady</u> disclosures.  Therefore, Plaintiff has failed to provide the Court with any admissible evidence or legal authority to support her claim that the City of Phoenix Police Department's "obvious" failure to train caused a violation of her constitutional rights.

. . .

. . .

**B.** **Plaintiff Does Not Cite Any Legal Authority to Support Her Argument that Chief Williams' Alleged "Confusion" About Brady Amounts to Deliberate Indifference.**

Plaintiff also attempts to use Chief Williams' deposition testimony to show an "obvious" failure to train. Plaintiff argues, without citing any legal authority or admissible evidence other than the Chief's deposition, that because the police chief gave a confusing answer about <u>Brady</u> in response to an off the cuff media question during an interview and the police chief could not provide a detailed legal analysis of case law flowing from <u>Brady</u> at her deposition, there is an "obvious" failure to train. The portions of Chief Williams' deposition testimony Plaintiff cites to are also incomplete. In the testimony cited in Plaintiff's Response and in paragraph 76 of PSSOF, Plaintiff's counsel is questioning Chief Williams about a Department of Justice manual that Plaintiff admits is not binding on the City of Phoenix Police Department and at no point in her testimony does Chief Williams "blame" MCAO for "deficient policies" on <u>Brady</u>. Instead, in the cited testimony, she is being asked about <u>Brady</u> lists and she testifies that it is MCAO that maintains a <u>Brady</u> list and MCAO makes the determination who to place on the list. (CDRPSOF ¶ 76). Additionally, Chief Williams testified at her deposition that she relies on the Professional Standards Bureau to monitor and track information provided to MCAO and who is on the <u>Brady</u> list. (CDRPSOF ¶ 76). Plaintiff fails to provide the objections of other counsel in his quotation of the deposition testimony. She also fails to provide the Court with the clear testimony Chief Williams gave later in her deposition about Operations Order 2.9 in which she clearly testified that if an officer knows he is being considered for inclusion on or has been placed on a prosecutor's <u>Brady</u> list he is responsible to notify the prosecutor. (CDRPSOF ¶ 76). She also testified that if an officer is aware of potential exculpatory information that the Department is not, the officer has a responsibility to report it to the prosecutor, but if the department is aware of the potential exculpatory information, then it is the department's responsibility to report it to the prosecutor. (CDRPSOF ¶ 76). Plaintiff's incomplete recitation of Chief Williams' deposition testimony does not demonstrate that the City of Phoenix has an obvious failure to train its officers regarding disclosure under <u>Brady</u>. Instead, her complete testimony

26

demonstrates that she has a clear understanding of Operations Order 2.9, just as Officer Armour and Commander Collins do.

### C. Plaintiff's Statistics Expert's Unsworn Report is Inadmissible and Insufficient to Demonstrate a Pattern of Unconstitutional Conduct.

Finally, Plaintiff argues that based solely on her statistics expert Melissa Kovacs' unsworn, inadmissible expert report, there is a pattern of unconstitutional failure to disclose Brady material that amounts to deliberate indifference. First, Ms. Kovacs' report is not admissible and thus cannot be considered by the Court because it is hearsay, and is not accompanied by a sworn affidavit or declaration. See Smith v. City of Oakland, 2007 WL 2288328 at *3-4; King Tuna, Inc. v. Anova Food, Inc. Even if Ms. Kovacs' report was admissible, courts in the Ninth Circuit have held that an expert witness' speculative opinion that previous constitutional violations have occurred based on the expert's review of incomplete records regarding other instances of claimed constitutional violations is irrelevant, unreliable, and insufficient to preclude summary judgment on a Monell claims. See Hernandez v. City of Napa, 781 F. Supp. 2d 975, 1002–03 (N.D. Cal. 2011) (granting the city's motion for summary judgment on the plaintiff's Monell claim on the basis that there was no evidence to demonstrate a pattern of failing to investigate citizen complaints); Clouthier v. County of Contra Costa, 591 F.3d 1232, 1252 (9th Cir. 2010), overruled on other grounds by Castro v. Cnty. of Los Angeles, 833 F.3d 1060, 1069 (9th Cir. 2016) (affirming the district court's grant of summary judgment to the county on the basis that the plaintiff's expert's conclusory declaration failed to demonstrate deliberate indifference by the county to support a Monell claim); Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (holding that "[c]onclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment"). In Clouthier, the Ninth Circuit held that it was insufficient to defeat summary judgment for an expert to opine that based on the entity's practices, constitutional violations "could" occur. 591 F.3d at 1252. Indeed, the court held that the plaintiffs' failure to present "evidence of even a single other suicide resulting from the improper transfer of an inmate from an observation cell into the

general population" was fatal to their <u>Monell</u> claim. <u>Id.</u> The same is true in this case. All that Melissa Kovacs states in her inadmissible hearsay report is that her statistical analysis of certain unidentified data provided to her by Plaintiff concluded that the "average" time between the "date the PSB report was created" and the PSB report being disclosed to prosecuting agencies was 200 days. (CDRPSOF ¶ 45). Ms. Kovacs does not attach the "data" she relied on to her report and she does not define what she means by the "date the PSB report was created." (<u>Id.</u>). Thus, it is unclear whether Ms. Kovacs is referring to the date of the draft PSB report or the date of the final PSB report that is signed by the PSB Commander. (In the case of the PSB report regarding Officer Armour, 77 days passed between the date of the draft PSB report (April 27, 2016), and the date the PSB report because final (July 13, 2016). (CDSOF ¶¶ 84, 90)). Thus, using those two different dates could provide markedly different average time periods. In this respect, even if they were relevant, the findings of Ms. Kovacs are speculative and unreliable because even under the current process followed by PSB for disclosing PSB reports to prosecutors, draft reports are not disclosed to prosecutors, only reports that have gone through the entire PSB process and are signed by the PSB commander. (CDSOF ¶¶ 114-124). Finally, Plaintiff's argument that the Phoenix Police Department's "current" practice results in the speculative conclusion that there are "at least 6 Brady List cases in the pipeline not yet disclosed during any 200-day period of time" is not supported by a citation to the record, is inadmissible, and is speculative. (CDRPSOF ¶ 47).

Even if Ms. Kovacs' report was admissible, neither she nor Plaintiff provide the Court with any evidence of a single instance of another police officer witness' sustained allegations of misconduct not being provided to a prosecutor in a timely manner thereby impeding the prosecutor's ability to disclose the material to a criminal defendant before his or her trial, resulting in a criminal conviction. Ms. Kovacs' report does not demonstrate a pattern of constitutional violations, or even a single constitutional violation. It simply purports to analyze time periods. There is nothing in Ms. Kovacs' inadmissible hearsay report suggesting that any other criminal defendants' constitutional rights were violated as a result of the length of time it took for the Phoenix Police Department to disclose information about sustained

28

findings of officer misconduct to prosecutors. Therefore, Plaintiff has failed to demonstrate a pattern of similar constitutional violations by untrained employees using Ms. Kovacs' inadmissible hearsay expert report.

Finally, Plaintiff's out-of-context quotations of several questions asked of Officer Armour at his deposition are not only an incomplete description of Officer Armour's testimony, they are insufficient to demonstrate a pattern of similar constitutional violations by untrained employees. Officer Armour was questioned extensively at his deposition regarding Operations Order 2.9 and his obligations pursuant to that policy and he demonstrated his clear understanding that he had an obligation to notify the prosecutor immediately if (1) he had been notified that material from his file had been sent to a prosecutor for a determination regarding whether he should be added to the <u>Brady</u> list or (2) he was aware of potential exculpatory information of which the Department was not. (CDRPSOF ¶ 40). As he testified, at the time of Plaintiff's criminal trial, he had (1) not been notified that any investigation had been forwarded to a prosecutor for a determination regarding whether he should be added to the <u>Brady</u> list and (2) the Phoenix Police Department was aware of the allegations of misconduct and the results of the investigation, because PSB had conducted an investigation. (<u>Id</u>.). Therefore, Officer Armour had clearly been trained about and was aware of his <u>Brady</u> disclosure obligations. Again, Plaintiff has failed to provide the Court with any admissible evidence that the Phoenix Police Department has engaged in a pattern of similar constitutional violations to support her <u>Monell</u> claim against the City of Phoenix.

## VI.     CONCLUSION.

For the reasons set forth in the City Defendants' Motion for Summary Judgment, Statement of Facts, Response to Plaintiff's Separate Statement of Facts, and above, the City Defendants are entitled to summary judgment on all of Plaintiff's claims against them.

. . .

. . .

. . .

DATED this 16th day of May, 2022.

                                        BERKE LAW FIRM, PLLC


                                        By   s/ Lori V. Berke
                                          Lori V. Berke
                                          Jody C. Corbett
                                          Attorneys for Defendants City of
                                            Phoenix, Chief Jeri Williams, retired
                                            Chief Joseph Yahner, and Officer
                                            Anthony Armour

**CERTIFICATE OF SERVICE**

I hereby certify that on May 16, 2022, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Benjamin L. Rundall
Abbie Godles
HONOR LAW GROUP, PLLC
4450 S. Rural Road, Suite C-220
Tempe, Arizona  85252
rundall@honorlawgroup.com
godles@honorlawgroup.com

Maxine S. Mak
Angela Lane
Maricopa County Attorney's Office
Civil Services Division
Security Center Building
222 N. Central Avenue, Suite 1100
Phoenix, Arizona  85004
makm@mcao.maricopa.gov
lane01@mcao.maricopa.gov

I further certify that on May 17, 2022, a copy was hand-delivered to:

Hon. Susan R. Bolton
United States District Court
Sandra Day O'Connor U.S. Courthouse, Ste. 522
401 W. Washington St., SPC 50
Phoenix, AZ 85003-2153

Hon. Eileen S. Willett
Magistrate Judge
United States District Court
401 W. Washington St., SPC 13
Phoenix, AZ 85003-2153

    s/ Laine M. Roberts